Carolyn H. Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
Michelle S. Lim (SBN 315691)
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105

Attorneys for Plaintiff and the Putative Class
and Collective

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL VILLAFAN, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>BROADSPECTRUM DOWNSTREAM SERVICES, INC., d/b/a BROADSPECTRUM AMERICAS, INC., d/b/a TRANSFIELD SERVICES, formerly TIMEC COMPANY, INC.,<br><br>     Defendants. | Case No. _____<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**(1) Violations of the Fair Labor Standards Act (29 U.S.C. §§ 201 *et seq.*)**<br>**(2) Failure to Pay for All Hours Worked (Cal. Labor Code § 204);**<br>**(3) Failure to Pay Minimum Wage and Liquidated Damages (Labor Code §§ 1182.11, 1182.12, 1194,1197, and 1197.1)**<br>**(4) Failure to Pay Overtime Wages (Cal. Labor Code § 510);**<br>**(5) Failure to Authorize and Permit and/or Make Available Meal and Rest Periods (Cal. Labor Code §§ 226.7 and 512);**<br>**(6) Failure to Reimburse for Necessary Business Expenditures (Cal. Labor Code § 2802);**<br>**(7) Failure to Provide Timely and Accurate Itemized Wage Statements (Cal. Labor Code § 226);**<br>**(8) Waiting Time Penalties (Cal. Labor Code §§ 201-203);**<br>**(9) Unlawful Business Practices (Cal. Bus. & Prof. Code §§ 17200 *et seq.*);**<br><br>**DEMAND FOR JURY TRIAL** |

### CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Angel Villafan, on behalf of herself and all others similarly situated ("Plaintiff"), complains and alleges as follows:

### INTRODUCTION

1. Plaintiff brings this class and collective action on behalf of herself and other similarly situated individuals who have worked for Broadspectrum Downstream Services, Inc., (d/b/a Broadspectrum Americas, Inc., d/b/a Transfield Services, formerly known as Timec Company, Inc.) ("Broadspectrum" or "Defendant") as non-exempt, hourly employees, including but not limited to Safety Attendants, to challenge Broadspectrum's violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and California wage and hour laws.

2. This is a class action against Broadspectrum to challenge its policies and practices of: (1) failing to compensate Plaintiff and putative Class and Collective members for all hours worked; (2) failing to pay Plaintiff and putative Class and Collective members minimum wage for all hours worked; (3) failing to pay Plaintiff and putative Class and Collective members overtime and double time wages; (4) failing to authorize and permit Plaintiff and the putative Class members to take meal and rest breaks to which they are entitled by law and pay premium compensation for missed breaks; (5) failing to reimburse Plaintiff and putative Class and Collective members for necessary business expenditures; (6) failing to provide Plaintiff and putative Class members accurate itemized wage statements; and (7) failing to timely pay Plaintiff and putative Class members wages upon the termination of employment.

3. Broadspectrum provides skilled safety personnel to its clients operating oil drilling platforms. Plaintiff and members of the putative Class and Collective are current and former employees who worked for Broadspectrum as non-exempt hourly employees throughout the United States, including in California. These employees provide support for drilling operations of Defendant's clients. Among other tasks, Plaintiff and putative Class and Collective members are responsible for identifying, mitigating, and reporting potential safety hazards at oil refinery sites operated by Broadspectrum's clients.

4.     Plaintiff and putative Class and Collective members work long hours.  For example, Plaintiff is regularly scheduled to work, and in fact works, ten or twelve hour shifts for seven or more consecutive days.  Beyond the scheduled hours for which Plaintiff and putative Class and Collective members are scheduled to work, Plaintiff and putative Class and Collective members are also required to work before and after scheduled shifts, without compensation.

5.     Defendants assign Plaintiff and putative Class and Collective members to work at specific refineries for periods up to several months. Before putative Class and Collective members may report to an assigned work site, Broadspectrum requires Plaintiff and putative Class and Collective members to attend training, and complete certifications and physical examinations, as arranged by Broadspectrum.  Plaintiff and putative Class and Collective members are not compensated for their time spent in these pre-assignment trainings, certifications, and examinations, nor for their time traveling to these sites.

6.     Following pre-assignment training, certifications, and examinations, Plaintiffs and putative Class and Collective members travel to work locations at the designated refinery, often far from home and out of state, without adequate reimbursement.

7.     Once Plaintiff and putative Class and Collective members report to and begin their work assignments, Plaintiff and putative Class and Collective members are not paid minimum wage for all hours worked, overtime rates or double time rates, as appropriate, for all hours worked above eight per day and forty per week.  In spite of their long shifts, Plaintiff and putative Class and Collective members are also routinely denied meal and rest periods.

8.     Plaintiff and putative Class and Collective members do not receive accurate, itemized wage statements reflecting the hours they actually work and the amount of wages and overtime to which they are entitled and for which they should be compensated.  Nor are Plaintiff and putative Class and Collective members paid all amounts owed following voluntary or involuntary termination of employment.

9.     Plaintiff and putative Class and Collective members must also pay work expenses out of pocket, without adequate reimbursement.  For example, Plaintiff and the putative Class and

1    Collective are not reimbursed for tools and protective gear necessary to safely complete their jobs.

2    While Plaintiff and putative Class and Collective members may receive a per diem to mitigate the

3    cost of lodging and other work related expenses when working at refinery sites far from home, the

4    amount allocated is regularly insufficient to cover all these expenses.

5         10.    As a result of these violations, Plaintiff seeks full compensation on behalf of herself

6    and all others similarly situated for all damages, penalties, and interest to the full extent permitted

7    by the FLSA, the California Labor Code, and Industrial Welfare Commission ("IWC") Wage

8    Orders.

9         11.    Plaintiff seeks full compensation on behalf of herself and all others similarly situated

10   for all unpaid wages, including overtime and double time, all denied meal and rest periods,

11   unreimbursed business expenses, inaccurate wage statement penalties, and waiting time penalties.

12        12.    Broadspectrum is also liable for various other penalties under the Labor Code, and

13   for violation the Unfair Competition Law, Business and Professions Code §§ 17200 *et seq*.

14   ("UCL").

15        13.    Plaintiff also seeks declaratory, equitable, and injunctive relief, including restitution.

16        14.    Finally, Plaintiff seeks reasonable attorneys' fees and costs under the FLSA, the

17   Labor Code, and California Code of Civil Procedure § 1021.5.

18                                    **PARTIES**

19        15.    Plaintiff and the putative Class and Collective members are current and former

20   hourly, non-exempt employees who work for Broadspectrum as Safety Attendants, among other

21   positions, throughout the United States including in California.

22        16.    Plaintiff is an individual over the age of eighteen, and at all times mentioned in this

23   Complaint was a resident of the State of California.

24        17.    Plaintiff has been employed by Broadspectrum for various projects as a Safety

25   Attendant and Safety Foreman from approximately 2011 to the present. Plaintiff is terminated after

26   each project, then rehired for subsequent projects.  Plaintiff has worked for Broadspectrum in,

27   among other places, California, Montana, and Utah.

28

18.     Plaintiff is informed, believes, and alleges that Broadspectrum is an American company that provides skilled safety personnel to clients operating oil drilling platforms. Broadspectrum provides services to clients with oil refineries throughout California and throughout the United States.  Broadspectrum maintains its headquarters in Vallejo, California, and does business throughout California.  Plaintiff is further informed, believes, and thereon alleges that Broadspectrum employs hourly, non-exempt employees throughout the United States, including in California.

19.     At all relevant times, Broadspectrum has done business under the laws of the United States, including California, including in this judicial district, and has employed Class and Collective members in this judicial district.  At all relevant times, Broadspectrum has been Plaintiff's "employer" within the meaning of the FLSA and California law.

## JURISDICTION AND VENUE

20.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 and Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

21.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.  A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

22.     Broadspectrum serves the oil drilling industry by providing clients operating oil refineries with skilled personnel who specialize in planning, implementing, and executing safety protocols for oil refinery operations.  Broadspectrum provides services throughout the United States, including in California.

23.     To conduct its operations, Broadspectrum maintains a corporate structure in which there are various groups that handle specific subsets of tasks within the company.  The groups and departments are largely staffed by hourly, non-exempt employees that handle a variety of tasks. This operation structure is uniform and standardized throughout Broadspectrum's operations.  The

employment conditions for the non-exempt, hourly employees are substantially similar, if not identical, at Broadspectrum work locations throughout United States, including in California.

24.     Plaintiff worked for Broadspectrum as a Safety Attendant from 2011 to November 2017.[1]  Plaintiff's primary duties include, but are not limited to: monitoring and recording air pressure to ensure that oxygen levels are safe for other workers at the drilling site; cleaning and organizing the drilling site; monitoring and recording the amount of employees entering and exiting the work site; and supervising hot work to prevent combustion near drilling sites.

25.     Plaintiff is classified as an hourly, non-exempt employee and is paid an hourly rate for her services.  Plaintiff works at various work sites operated by clients of Broadspectrum in California as well as throughout the United States, including but not limited to Montana and Utah.

26.     Broadspectrum dispatches Safety Attendants to various client locations throughout the United States, including in California.  For each assignment, Broadspectrum determines the hourly rate to be paid and the duration of the project.

27.     Plaintiff and Class and Collective members are typically scheduled to work ten or twelve hour shifts for thirteen consecutive days, followed by one day off, and then another thirteen consecutive days of ten or twelve-hour shifts.  Additionally, because Broadspectrum expects employees to stay on-site until the job is complete, Plaintiff and putative Class and Collective members regularly work seven or more consecutive days.  Despite this demanding work schedule, Plaintiff and putative Class and Collective members are often denied compensation for all hours worked, including overtime for work in excess of eight hours per day and forty hours per week. Plaintiff and putative Class and Collective members are also routinely denied double time for work over twelve hours in one day and over eight hours on the seventh consecutive day of work.

28.     Safety Attendants generally work one of two twelve-hour shifts in a twenty-four hour period.  For example, one group of Safety Attendants may be scheduled to work from, for example, 7:00 a.m. to 7:00 p.m., and another group of Safety Attendants is scheduled to work from 7:00 p.m.

---

[1] Plaintiff anticipates to be hired for further assignments from Broadspectrum.  For ease of reading, allegations are presented in the present tense for Plaintiff.

to 7:00 a.m. But regardless of which shift Safety Attendants work, the job duties and responsibilities are the same, as is the process for reporting to work, beginning the workday, taking meal and rest breaks, and ending the workday.

29.     Broadspectrum requires Plaintiff and putative Class and Collective members to perform substantial work off-the-clock and without compensation.  Broadspectrum requires Plaintiff and putative Class and Collective members to clock in and out of work using a company-issued identification badge.  Broadspectrum requires that Plaintiff and putative Class and Collective members use personal protection equipment. Broadspectrum instructs Safety Attendants to clock in only after they have donned personal protection equipment and gather their tools, which takes up to thirty minutes. Similarly, Broadspectrum requires employees to clock out before taking off their personal protection equipment and storing their tools and equipment at the end of their shifts. This protective gear uniformly includes fire-retardant coveralls or fire-retardant jacket and pants, steel-toe boots, hard hat, safety glasses, and gloves.  Once they have donned their protective gear, Safety Attendants must wait for shuttles that transport them to the facility's security gate.  When the parking lot is on site, Safety Attendants must park and observe the same donning process; however, instead of taking a shuttle to the security gate, Safety Attendants must traverse a large parking lot on foot, after donning their protective gear, to the security gate. At the security gate, Safety Attendants are required to wait in line while security inspects bags and ensures Safety Attendants are wearing all required protective equipment.  After Safety Attendants pass through security, they swipe a badge that confirms their right to access to the facility and electronically documents the time in which they passed through security. Safety Attendants report that to comply with Defendant's scheduling and pre-shift activity requirements, they must have passed through the security gate and badged in at least thirty minutes before their scheduled start times. As a result of these policies, Plaintiff and the putative Class and Collective members are not adequately compensated for all hours worked at their regular rate or at the applicable overtime rates.

30.     Once Safety Attendants swipe in to access the facility, they are required to either walk or take a shuttle to another location at the facility which typically has a lunch tent or trailer, as well

as a supervisor's trailer. Once at this location, Safety Attendants drop off their lunches, obtain and begin to fill out paperwork relating to their workday, gather equipment, and receive their job assignments for the day. Often, the equipment Safety Attendants need for the day is not at that particular location, and they will have to walk to a different part of the facility to obtain the necessary equipment. Following these pre-shift activities, Safety Attendants either walk or take a shuttle to another part of the refinery, to their assigned workstation. Despite all of this pre-shift activity, employees are required to arrive at their assigned workstation by their scheduled start time, and are only compensated, for time worked *after* they arrive at their assigned workstation. At some point during the day (but not necessarily when Safety Attendants first report to their supervisors for the day), their supervisors document **a** start time on Technicians' time sheets – either by writing down that start time themselves, or by directing Safety Attendants to write down a specific start time, regardless of what time Safety Attendants *in fact* began working, and indeed, regardless of what time it actually is when the start time is created. Instead, Safety Attendants are instructed to write down their scheduled start time, which does not account of any of the above-described pre-shift activity, but denotes the time at which Safety Attendants were scheduled to start working and expected to be at their post performing their assigned safety duties. As a result of these policies, Plaintiff and the putative Class and Collective members are not adequately compensated for all hours worked at their regular rate or at the applicable overtime rates.

31.     Broadspectrum required Plaintiff and other Safety Attendants to travel to and attend pre-assignment activities in order to begin work as Safety Attendants for Broadspectrum. Broadspectrum arranges for and requires its Safety Attendants to undergo mandatory training, certifications, and physical examinations. These pre-assignment trainings provide information on specific Broadspectrum policies and procedures and typically take no more than one day of eight hours. Safety Attendants are also required to regularly update their certifications for the various safety duties they perform for Broadspectrum. These certifications are typically completed every two years, for approximately two days totaling 16 hours. Broadspectrum also requires Safety Attendants to complete physical examinations at a location arranged by Broadspectrum, taking

approximately one to five hours a year.  As a matter of policy, none of this time spent on training, certifications, or physical examinations is compensated, nor are Safety Attendants reimbursed for any expenses relating to these mandatory pre-assignment activities.

32.     Broadspectrum also requires Plaintiff and putative Class and Collective members to complete additional training at the refinery locations during assignments.  This time is not compensated.

33.     Broadspectrum does not require employees to clock out for lunch breaks.  Instead, Broadspectrum attributes thirty minutes per workday for an unpaid meal period, even when work is too demanding to allow Plaintiff to take a full, legally compliant thirty-minute meal period.  Putative Class members, including Plaintiff, are also not provided with premium pay for these missed meal breaks.

34.     When Plaintiff and putative Class members work more than ten hours per day, a second full, legally compliant meal period is not made available to them.  Putative Class members, including Plaintiff, are not provided with premium pay for these missed meal breaks.

35.     When Plaintiff and putative Class and Collective members receive a meal break, these meal breaks are often less than thirty minutes.  For example, Broadspectrum often includes the time it takes to travel from the refinery worksite to the lunch location when allocating a thirty minute break to its employees.  The time traveling to and from the lunch location can be up to fifteen minutes.  Broadspectrum includes this time as part of the lunch break, despite the fact that employees are not relieved of their work obligations until they have arrived at the lunch location.  Furthermore, even when Plaintiff and putative Class and Collective members are provided with a thirty minute lunch break, supervisors often interrupt these meal breaks to discuss work-related topics.  Putative Class members, including Plaintiff, are not provided with premium pay for these non-compliant meal breaks.

36.     Broadspectrum further required Plaintiff and putative Class and Collective members to attend daily safety meetings, or "all hands meetings."  These mandatory meetings would be held for ten to fifteen minutes during the Safety Attendants' unpaid lunch periods.  Broadspectrum

included the time spent during these meetings into Safety Attendants' lunch periods.  As a result, Plaintiff and other Safety Attendants were not adequately compensated for all hours worked at their regular rate or at the applicable overtime rates, nor for premium pay for these non-compliant meal breaks.

37.     Moreover, the pace of the work is too demanding to allow Plaintiff and putative Class members to take full, timely, legally compliant rest breaks.  Even when Plaintiff and putative Class members are provided with a rest break, supervisors often interrupt these breaks.  Putative Class members, including Plaintiff, are not provided with premium pay for missed rest breaks.

38.     Defendant is aware that non-exempt, hourly employees do not receive timely and compliant meal and rest periods to which they are entitled and that it has, and continues, to deprive its hourly, non-exempt employees of compensation for all time worked.  As a result of Broadspectrum's policies, Plaintiff and putative Class and Collective members are denied minimum wage for all hours worked.

39.     Broadspectrum also routinely denies reimbursement for work-related travel costs to putative Class and Collective members, including Plaintiff.  Broadspectrum dispatches Plaintiff and putative Class and Collective members to various client locations throughout the United States, including in California, typically with the expectation that they stay on-site for the duration of the project, which can be anywhere between a few weeks to several months.  However, Plaintiff and putative Class and Collective members are required to pay for their own expenses when traveling to and from these work locations without reimbursement.  Additionally, although Plaintiff and putative Class and Collective members may receive a per diem to mitigate the cost of lodging and other work related expenses when working at drilling sites far from home, the amount allocated is regularly insufficient to cover all these expenses.

40.     Broadspectrum requires putative Class and Collective members, including Plaintiff, to pay for other necessary work-related expenses.  For example, Plaintiff and putative Class and Collective members are expected to provide some of their own personal protection equipment, including but not limited to fire retardant pants, jackets, coveralls, and gloves, boots, and glasses

when working on drilling platforms.  Plaintiff and putative Class and Collective members must also pay out-of-pocket expenses to wash personal protection equipment between shifts.

41.     Broadspectrum also does not provide putative Class members, including Plaintiff, accurate itemized wage statements as required by California law.  The wage statements that they are provided are not accurate because they do not reflect the actual hours worked by Plaintiff and putative Class members.  The wage statements do not contain off-the-clock work and contain a reduction of pay for meal periods that are not taken.  Further, the wage statements are inaccurate because they do not include minimum wage for all hours worked, premium pay for missed breaks, overtime, and double time for all hours worked.

42.     Broadspectrum does not provide putative Class members with full payment of all wages owed at the end of employment.  As these workers are owed for off-the-clock work, unpaid overtime, and premium pay when their employment ends, and these amounts remain unpaid under Broadspectrum's policies and practices, Broadspectrum fails to pay all wages due upon termination.  As a consequence, Broadspectrum is subject to waiting time penalties.

43.     Plaintiff worked at several drilling sites in California, and throughout the United States, including but not limited to in Montana and Utah, and her experience with regards to hours worked, off-the-clock work, meal and rest breaks, and unreimbursed business expenses was substantially the same in each instance.

44.     Plaintiff is informed, believes, and thereon alleges that Broadspectrum's policies and practices have at all relevant times been substantially the same for non-exempt, hourly employees, regardless of the location within the United States, including in California.

45.     Broadspectrum's unlawful conduct has been widespread, repeated, and consistent throughout its work locations in the United States, including in California.  Broadspectrum knew or should have known that its policies and practices have been unlawful and unfair.

46.     Broadspectrum's conduct was willful, carried out in bad faith, and caused significant damages to non-exempt hourly employees in an amount to be determined at trial.

## **COLLECTIVE ALLEGATIONS UNDER THE FLSA**

47.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

48.     Plaintiff brings her FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b) as to claims for failing to pay Plaintiff and Collective members for all hours worked, including minimum wage, wages at the agreed rate, and overtime compensation for all hours worked over 40 hours per week, liquidated damages, and attorneys' fees and costs under the FLSA.  The FLSA Collective that Plaintiff seeks to represent is defined as follows:

> All current and former hourly, non-exempt employees of Broadspectrum, Inc. in the United States during the time period three years prior to the filing of this Complaint until the resolution of this action.

49.     Plaintiff's claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 216(b) of the FLSA because Plaintiff's FLSA claims are similar to the claims of the Collective members.

50.     The Collective members are similarly situated, as they have substantially similar job duties and requirements and are subject to a common policy, practice, or plan that required them to perform work without compensation and required them to perform work at an unlawfully reduced payment rate, in violation of the FLSA.

51.     Plaintiff is representative of the Collective members and is acting on behalf of their interests, as well as Plaintiff's own interests, in bringing this action.

52.     Plaintiff will fairly and adequately represent and protect the interests of Collective members.  Plaintiff has retained counsel competent and experienced in employment class action and collective action litigation.

53.     The similarly situated Collective members are known to Broadspectrum, are readily identifiable, and may be located through Broadspectrum's records.  These similarly situated employees may readily be notified of this action, and allowed to "opt-in" to this case pursuant to

29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

### CLASS ALLEGATIONS UNDER CALIFORNIA LAW

54.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

55.     Plaintiff brings this case as a class action on behalf of herself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23.  The putative Class that Plaintiff seeks to represent is defined as follows:

> All current and former hourly, non-exempt employees of Broadspectrum, Inc. in California during the time period four years prior to the filing of this Complaint until the resolution of this action.

56.     This action has been brought and may properly be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the putative class is easily ascertainable.

a.     **Numerosity**: The potential members of the putative Class as defined are so numerous that joinder of all the members of the putative Class is impracticable.

b.     **Commonality**: There are questions of law and fact common to Plaintiff and the putative Class that predominate over any questions affecting only individual members of the putative Class.  These common questions of law and fact include, but are not limited to:

i.     Whether Defendant fails to compensate putative Class members for all hours worked, including at minimum wage and as overtime compensation, in violation of the Labor Code and Wage Orders;

ii.     Whether Defendant has a policy and/or practice of requiring putative Class members to be in the control of, spend time primarily for the benefit of, and work for Defendant off-the-clock and without compensation;

iii. Whether Defendant fails to pay putative Class members minimum wage for all hours worked, in violation of the Labor Code and Wage Orders;

iv. Whether Defendant fails to properly pay overtime compensation, at either one and one-half times or double the regular rate of pay, to putative Class members in violation of the Labor Code and Wage Orders;

v. Whether Defendant fails to authorize and permit, make available, and/or provide putative Class members with timely meal and rest periods to which they are entitled in violation of the Labor Code and Wage Orders;

vi. Whether Defendant fails to reimburse Class members for reasonable and necessary business expenses in violation of the Labor Code;

vii. Whether Defendant fails to provide putative Class members with timely, accurate itemized wage statements in violation of the Labor Code and Wage Orders;

viii. Whether Defendant fails to timely pay putative Class members for all wages owed upon termination of employment in violation of the Labor Code;

ix. Whether Defendant violates Business and Professions Code §§ 17200 *et seq.*, by:

(a.) failing to compensate putative Class members for all hours worked, including at minimum wage and as overtime compensation;

(b.) failing to pay putative Class members minimum wage for all hours worked;

(c.) failing to properly pay overtime compensation, at either one and one-half times or double the regular rate of pay, to putative Class members;

(d.)  failing to authorize and permit, make available, and/or provide putative Class members with timely meal and rest periods to which they are entitled;

(e.)  failing to reimburse Class members for reasonable and necessary business expenses;

(f.)  failing to provide putative Class members with timely, accurate itemized wage; and

(g.)  failing to timely pay putative Class members for all wages owed upon termination of employment; and

x.  The proper formula for calculating restitution, damages, and penalties owed to Plaintiff and the Class as alleged herein.

c.  **Typicality**: Plaintiff's claims are typical of the claims of the Class.  Defendant's common course of conduct in violation of law as alleged herein has caused Plaintiff and putative Class members to sustain the same or similar injuries and damages. Plaintiff's claims are thereby representative of and co-extensive with the claims of the Class.

d.  **Adequacy of Representation**: Plaintiff is a member of the Class, does not have any conflicts of interest with other putative Class members, and will prosecute the case vigorously on behalf of the Class.  Counsel representing Plaintiff is competent and experienced in litigating large employment class actions, including wage and hour classes.  Plaintiff will fairly and adequately represent and protect the interests of the Class members.

e.  **Superiority of Class Action**: A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all putative Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each putative Class member has been damaged and is entitled to recovery by

reason of Defendant's illegal policies and/or practices.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.   In the alternative, the Class may be certified because the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class, and, in turn, would establish incompatible standards of conduct for Defendants.

## FIRST CAUSE OF ACTION
### Violation of the Fair Labor Standards Act
### 29 U.S.C. §§ 201, *et seq.*
### (On Behalf of the Collective)

57.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

58.     The FLSA requires that covered employees receive compensation for all hours worked and overtime compensation not less than one and one-half times the regular rate of pay for all hours worked in excess of forty hours in a work week.  29 U.S.C. § 207(a)(1).

59.     At all times material herein, Plaintiff and the Collective are covered employees entitled to the rights, protections, and benefits provided under the FLSA. 29 U.S.C. §§ 203(e) and 207(a).

60.     Defendant is a covered employer required to comply with the FLSA's mandates.

61.     Defendant has violated the FLSA with respect to Plaintiff and the Collective, by, *inter alia,* failing to compensate Plaintiff and the Collective for all hours worked and, with respect to such hours, failing to pay the legally mandated overtime premium for such work and/or minimum wage.

62.     Defendant has also violated the FLSA by failing to keep required, accurate records of all hours worked by Plaintiff and the Collective.  29 U.S.C. § 211(c).

63.     Plaintiff and the Collective are victims of a uniform and company-wide compensation policy. This uniform policy, in violation of the FLSA, has been applied to current and former non-

exempt, hourly employees of Defendant, working throughout the United States.

64.     Plaintiff and the Collective are entitled to damages equal to the mandated pay, including minimum wage, straight time, and overtime premium pay within the three years preceding the filing of the complaint, plus periods of equitable tolling, because Defendant has acted willfully and knew or showed reckless disregard for whether the alleged conduct was prohibited by the FLSA.

65.     Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and the Collective are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay and/or prejudgment interest at the applicable rate.  29 U.S.C. § 216(b).

66.     As a result of the aforesaid violations of the FLSA's provisions, pay, including minimum wage, straight time, and overtime compensation, has been unlawfully withheld by Defendant from Plaintiff and the Collective.  Accordingly, Defendant is liable for unpaid wages, together with an amount equal as liquidated damages, attorneys' fees, and costs of this action.

67.     Wherefore, Plaintiff and the Collective request relief as hereinafter provided.

## SECOND CAUSE OF ACTION
### Failure to Pay for All Hours Worked Pursuant to Labor Code § 204
### (On Behalf of the Class)

68.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

69.     Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."

70.     Labor Code §§ 201 and 202 require an employer to pay all wages earned but unpaid immediately upon the involuntary discharge of an employee or within seventy-two (72) hours of an employee's voluntary termination of employment.

71.     Labor Code § 204 provides that employers must compensate employees for all hours worked "twice during each calendar month, on days designated in advance by the employer as the regular paydays."

72.     Labor Code §§ 221-223 prohibit employers from withholding and deducting wages, or otherwise artificially lowering the wage scale of an employee.

73.     Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

74.     Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Orders.

75.     IWC Wage Order 16-2001(2)(J) defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

76.     Broadspectrum willfully engaged in and continues to engage in a policy and practice of not compensating Plaintiff and putative Class members for all hours worked or spent in its control.

77.     Broadspectrum regularly schedules Plaintiff and the putative Class members to work twelve hours shifts.  However, Broadspectrum intentionally and willfully requires Plaintiff and the putative Class members to complete additional work off-the-clock, in excess of twelve hours per day.  For example, Broadspectrum instructs Safety Attendants to clock in only after they donned the required personal protection equipment and to clock out before taking off their personal protection equipment.  Broadspectrum does not compensate Plaintiff and Class members for this time.  Moreover, Broadspectrum deducts thirty minutes of work for a meal period.  However, Plaintiff and putative Class members routinely work through this meal period and are not

1  compensated for that work.  As a result, Broadspectrum fails to pay Plaintiff and the putative Class
2  members for all hours worked and fails to track their actual hours worked.

3  78.    Broadspectrum requires Plaintiff and the Class to work off-the-clock without
4  compensation.  In other words, Plaintiff and the Class are forced to perform work for the benefit of
5  Defendant without compensation.

6  79.    In violation of California law, Broadspectrum knowingly and willfully refuses to
7  perform its obligations to provide Plaintiff and the putative Class with compensation for all time
8  worked.  Broadspectrum regularly fails to track the time Plaintiff and the putative Class actually
9  work or to compensate them for hours worked.   Therefore, Broadspectrum committed, and
10  continues to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of
11  the Plaintiff and the putative Class members' rights.  Plaintiff and the putative Class are thus entitled
12  to recover nominal, actual, and compensatory damages, plus interest, attorneys' fees, expenses, and
13  costs of suit.

14  80.    As a proximate result of the aforementioned violations, Plaintiff and the putative
15  Class have been damaged in an amount according to proof at time of trial.

16  81.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

### THIRD CAUSE OF ACTION
**Failure to Pay Minimum Wages Pursuant to California Labor Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1**
**(On Behalf of the Class)**

20  82.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth
21  herein.

22  83.    During the applicable statutory period, California Labor Code §§, 1182.12 and 1197,
23  and the Minimum Wage Order were in full force and effect and required that Broadspectrum's
24  hourly employees receive the minimum wage for all hours worked irrespective of whether
25  nominally paid on a piece rate, or any other bases, at the rate of ten dollars and fifty cents ($10.50)
26  per hour commencing January 1, 2017.

27  84.    California Labor Code §1194 states:

28

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

85.     IWC Wage Order 16-2001(2)(J) defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

86.     Labor Code §1194.2 provides that, in any action under Section 1194 to recover wages because of the payment of a wage less than minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

87.     Broadspectrum has maintained policies and procedures which creates a working environment where hourly employees are routinely compensated at a rate that is less than the statutory minimum wage.  Plaintiffs and members of the putative Class frequently work time off-the-clock during rest and meal breaks and go uncompensated for this time.  In addition, Safety Attendants are regularly uncompensated for time spent donning and doffing safety equipment.

88.     As a direct and proximate result of the unlawful acts and/or omissions of Broadspectrum, Plaintiff and putative Class members have been deprived of minimum wages in an amount to be determined at trial, and are entitled to a recovery of such amount, plus liquidated damages, plus interest thereon, attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194, 1194.2 and 1197.1.

### FOURTH CAUSE OF ACTION
**Failure to Pay Overtime Wages Pursuant to Labor Code § 510**
**(On Behalf of the Class)**

89.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

90.     Broadspectrum does not compensate Plaintiff and putative Class members with the appropriate overtime rate, including time and a half and double time, as required by California law.

For example, Broadspectrum does not consider bonuses when determining what the overtime and double time rates should be for Plaintiff and putative Class members.

91.     Labor Code § 510 provides as follows:

> Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

92.     The IWC Wage Order 16-2001(3)(A)(1) states:

> The following overtime provisions are applicable … employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1 ½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than: . . . One and one-half (1 ½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and … [d]ouble the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

93.     Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

94.     Labor Code § 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."   All such wages are subject to California's overtime requirements, including those set forth above.

95.     Broadspectrum regularly requires Plaintiff and putative Class members to work in excess of eight hours per day and forty hours per week, but does not compensate them at an overtime rate for this work.   Furthermore, Broadspectrum regularly does not compensate Plaintiff and the putative Class members at a double time rate for hours worked in excess of twelve hours each day or after eight hours on the seventh consecutive day of work.

96.     Plaintiff and putative Class members have worked overtime hours for Broadspectrum without being paid overtime premiums in violation of the Labor Code, applicable IWC Wage Orders, and other applicable law.

97.     Broadspectrum has knowingly and willfully refused to perform its obligation to compensate Plaintiff and the putative Class members for all premium wages for overtime work.   As a proximate result of the aforementioned violations, Broadspectrum has damaged Plaintiff and the putative Class members in amounts to be determined according to proof at time of trial.

98.     Broadspectrum is liable to Plaintiff and the Class alleged herein for the unpaid overtime and civil penalties, with interest thereon.   Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

99.     Wherefore, Plaintiff and the Class request relief as hereinafter provided.

**FIFTH CAUSE OF ACTION**
**Failure to Authorize and Permit and/or Make Available Meal and Rest Periods**
**Pursuant to Labor Code §§ 226.7 and 512**
**(On Behalf of the Class)**

100.     Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

101.     Broadspectrum routinely does not make meal periods available to Plaintiff and putative Class members.   Despite long work days regularly lasting in excess of twelve hours,

1  Plaintiff and putative Class members are often unable to take a meal break, are often prevented

2  from timely taking a meal break, and are frequently interrupted during their meal breaks.  When

3  Plaintiff and putative Class members work more than ten hours in a day, Broadspectrum often does

4  not make a second meal period available to them.

5      102.    Plaintiff and putative Class members are not paid one hour of premium pay for the

6  missed breaks.  Rather, Broadspectrum deducts thirty minutes of pay on a daily basis for meal

7  periods, even though Plaintiff and putative Class members are routinely denied compliant meal

8  periods.

9      103.    Similar to meal periods, Broadspectrum regularly fails to make rest periods available

10 to Plaintiff and putative Class members.  Plaintiff's and putative Class members' schedules

11 regularly prevent them from taking rest periods throughout the day.  When available, if ever, they

12 are often not compliant.  Instead, they are generally untimely or short.  Plaintiff and putative Class

13 members do not receive premium pay for their missed breaks as required by California law.

14     104.    Labor Code §§ 226.7 and 512 and the applicable Wage Orders require Defendant to

15 authorize and permit meal and rest periods to its employees.  Labor Code §§ 226.7 and 512 and the

16 Wage Orders prohibit employers from employing an employee for more than five hours without a

17 meal period of not less than thirty minutes, and from employing an employee more than ten hours

18 per day without providing the employee with a second meal period of not less than thirty minutes.

19 Labor Code § 226.7 and the applicable Wage Orders also require employers to authorize and permit

20 employees to take ten minutes of net rest time per four hours or major fraction thereof of work, and

21 to pay employees their full wages during those rest periods.  Unless the employee is relieved of all

22 duty during the thirty-minute meal period and ten-minute rest period, the employee is considered

23 "on duty" and the meal or rest period is counted as time worked under the applicable Wage Orders.

24     105.    Under Labor Code § 226.7(b) and the applicable Wage Orders, an employer who fails

25 to authorize, permit, and/or make available a required meal period must, as compensation, pay the

26 employee one hour of pay at the employee's regular rate of compensation for each workday that

27 the meal period was not authorized and permitted.  Similarly, an employer must pay an employee

28

denied a required rest period one hour of pay at the employee's regular rate of compensation for each workday that the rest period was not authorized and permitted and/or not made available.

106.   Despite these requirements, Broadspectrum has knowingly and willfully refused to perform its obligations to authorize and permit and/or make available to Plaintiff and the Class the ability to take the off-duty meal and rest periods to which they are entitled.  Broadspectrum has also failed to pay Plaintiff and the Class one hour of pay for each off-duty meal and/or rest periods that they are denied.  Broadspectrum's conduct described herein violates Labor Code §§ 226.7 and 512. Therefore, pursuant to Labor Code § 226.7(b), Plaintiff and the putative Class are entitled to compensation for the failure to authorize and permit and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

107.   As a proximate result of the aforementioned violations, Plaintiff and the putative Class have been damaged in an amount according to proof at time of trial.

108.   Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## SIXTH CAUSE OF ACTION
**Failure to Reimburse for Necessary Business Expenditures Pursuant to Labor Code § 2802
(On Behalf of the Class)**

109.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

110.   Broadspectrum does not reimburse Plaintiff and putative Class members for necessary business expenditures.

111.   Labor Code § 2802 provides, in relevant part:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, … For the purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

112.   Broadspectrum regularly requires Plaintiff and putative Class members to pay out-of-pocket expenses for transportation, lodging, and food when traveling to assigned work sites.

Even when Broadspectrum provides Plaintiff and Class members a per diem, the amount given is often insufficient to cover the total cost of travel.

113.    Furthermore, Broadspectrum regularly requires Plaintiff and putative Class members to pay out-of-pocket expenses for required personal protective equipment, including but not limited to boots, and for the cost of washing this equipment.  Broadspectrum does not reimburse Plaintiff and the putative Class members for these expenditures.

114.    Broadspectrum is liable to Plaintiff and the putative Class members for the unreimbursed expenses and civil penalties, with interest thereon.  Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below.

115.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## SEVENTH CAUSE OF ACTION
### Failure to Provide Accurate Itemized Wage Statements Pursuant to Labor Code § 226
### (On Behalf of the Class)

116.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

117.    Broadspectrum does not provide Plaintiff and putative Class members with accurate itemized wage statements as required by California law.

118.    Labor Code § 226(a) provides:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours

worked at each hourly rate by the employee.  The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least four years at the place of employment or at a central location within the State of California.

119.   The IWC Wage Orders also establishes this requirement.  (See IWC Wage Order 16-2001(6).)

120.   Labor Code § 226(e) provides:

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Plaintiff seeks to recover actual damages, costs and attorneys' fees under this section.

121.   Broadspectrum does not provide timely, accurate itemized wage statements to Plaintiff and putative Class members in accordance with Labor Code § 226(a) and the IWC Wage Orders.  The wage statements Broadspectrum provides its employees, including Plaintiff and putative Class members, do not accurately reflect the actual hours worked, actual gross wages earned, or actual net wages earned.

122.   Broadspectrum is liable to Plaintiff and the putative Class alleged herein for the amounts described above in addition to the civil penalties set forth below, with interest thereon.  Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below, pursuant to Labor Code § 226(e).

123.   Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

### EIGHTH CAUSE OF ACTION
**Waiting Time Penalties Pursuant to Labor Code §§ 201-203**
**(On Behalf of the Class)**

124.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

25

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Villafan, et al. v. Broadspectrum Downstream Services, Inc.*

125.     Broadspectrum does not provide putative Class members with their wages when due under California law after their employment with Broadspectrum ends.

126.     Labor Code § 201 provides:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

127.     Labor Code § 202 provides:

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

128.     Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

129.     Some of the putative Class members left their employment with Broadspectrum during the statutory period, at which time Broadspectrum owed them unpaid wages.  These earned, but unpaid, wages derive from time spent working for the benefit of Broadspectrum, which went unrecorded and/or uncompensated.

130.     Broadspectrum willfully refused and continues to refuse to pay putative Class members all the wages that were due and owing to them, in the form of uncompensated off-the-clock time, minimum wage, overtime, meal and rest period premium pay, and reimbursement for necessary business expenditures upon the end of their employment as a result of Broadspectrum's willful failure to provide Plaintiff and the putative Class members with payment for all hours worked, overtime, and meal and rest breaks.  As a result of Broadspectrum's actions, Plaintiff and

putative Class members have suffered and continue to suffer substantial losses, including lost earnings, and interest.

131.    Broadspectrum's willful failure to pay Plaintiff and putative Class members the wages due and owing them constitutes a violation of Labor Code §§ 201-202.  As a result, Broadspectrum is liable to Plaintiff and proposed Class members for all penalties owing pursuant to Labor Code §§ 201-203.

132.    In addition, Labor Code § 203 provides that an employee's wages will continue as a penalty up to thirty days from the time the wages were due.  Therefore, the Plaintiff and putative Class members are entitled to penalties pursuant to Labor Code § 203, plus interest.

133.    Wherefore, Plaintiff and the Class request relief as hereinafter provided.

## NINTH CAUSE OF ACTION
**Violation of California Business and Professions Code §§ 17200 *et seq.***
**(On Behalf of the Class)**

134.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

135.    The UCL prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

136.    Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

137.    Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

138.    Beginning at an exact date unknown to Plaintiff, but at least since the date four years prior to the filing of this suit, Broadspectrum has committed acts of unfair competition as defined by the UCL, by engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to:

    a.     violations of Labor Code § 1194 and IWC Wage Order 16-2001 pertaining to payment of wages, including minimum wage, for all hours worked;

    b.     violations of Labor Code § 510 and Wage Order 16-2001 pertaining to overtime;

    c.     violations of Labor Code §§ 226.7 and 512 and Wage Order 16-2001 pertaining to meal and rest breaks;

    d.     violations of Labor Code § 226 regarding accurate, timely itemized wage statements;

    e.     violations of Labor Code § 2802 regarding indemnification for necessary business expenditures; and

    f.     violations of Labor Code §§ 201-203.

139.    The violations of these laws and regulations, as well as of the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200 et seq.

140.    The acts and practices described above constitute unfair, unlawful, and fraudulent business practices, and unfair competition, within the meaning of Business and Professions Code §§ 17200 et seq.  Among other things, the acts and practices have taken from Plaintiff and the Class wages rightfully earned by them, while enabling Defendant to gain an unfair competitive advantage over law-abiding employers and competitors.

141.    Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.  Injunctive relief is necessary and appropriate to prevent Defendant from repeating the unlawful, unfair, and fraudulent business acts and practices alleged above.

142.    As a direct and proximate result of the aforementioned acts and practices, Plaintiff and the Class members have suffered a loss of money and property, in the form of unpaid wages, which are due and payable to them.

28

CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Villafan, et al. v. Broadspectrum Downstream Services, Inc.*

143.    Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.  Plaintiff and the Class are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from employees during the four-year period prior to the filing of this Complaint.  Plaintiff's success in this action will enforce important rights affecting the public interest and in that regard Plaintiff sues on behalf of herself as well as others similarly situated.  Plaintiff and putative Class members seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

144.    Plaintiff herein takes upon herself enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiff by forcing him to pay attorneys' fees from the recovery in this action.  Attorneys' fees are appropriate pursuant to Code of Civil Procedure §1021.5 and otherwise.

145.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a.    Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by the FLSA, California Labor Code, and California Business and Professions Code;

b.    For a declaratory judgment that Broadspectrum has violated the FLSA and California Labor Code and public policy as alleged herein;

c.    For a declaratory judgment that Broadspectrum has violated California Business and Professions Code §§ 17200 *et seq.*, as a result of the aforementioned violations of the California Labor Code and of California public policy protecting wages;

d.    For preliminary, permanent, and mandatory injunctive relief prohibiting Broadspectrum,  its officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

1    e.    For an equitable accounting to identify, locate, and restore to all current and former

2        employees the wages they are due, with interest thereon;

3    f.    For an order awarding Plaintiff and the Class and Collective members compensatory

4        damages, including lost wages, earnings, liquidated damages, and other employee

5        benefits, restitution, recovery of all money, actual damages, punitive damages, and

6        all other sums of money owed to Plaintiff and Class members, together with interest

7        on these amounts, according to proof;

8    g.    For an order awarding Plaintiff and the Class members civil penalties pursuant to the

9        FLSA and California Labor Code provisions cited herein, with interest thereon;

10    h.    For an award of reasonable attorneys' fees as provided by the California Labor Code;

11        California Code of Civil Procedure § 1021.5; the FLSA; and/or other applicable law;

12    i.    For all costs of suit;

13    j.    For interest on any damages and/or penalties awarded, as provided by applicable law;

14        and

15    k.    For such other and further relief as this Court deems just and proper.

Dated: November 6, 2018        Respectfully submitted,

*/s/ Carolyn H. Cottrell*
Carolyn H. Cottrell
Ori Edelstein
Michelle S. Lim
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP

Attorneys for Plaintiff and the Putative Class
and Collective

1

## DEMAND FOR JURY TRIAL

2
      Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff is entitled to

3
a jury.

4
Dated: November 6, 2018           Respectfully submitted,

5
                          */s/ Carolyn H. Cottrell*

6
                          Carolyn H. Cottrell
Ori Edelstein

7
                          Michelle S. Lim
SCHNEIDER WALLACE

8
                          COTTRELL KONECKY
WOTKYNS LLP

9

10
                          Attorneys for Plaintiff and the Putative Class
and Collective

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28