Carolyn H. Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
Michelle S. Lim (SBN 315691)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Attorneys for Plaintiff and the Putative Class,
Collective, Aggrieved Employees, and
State of California

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

ANGEL VILLAFAN, individually and on
behalf of all others similarly situated,

     Plaintiff,

vs.

BROADSPECTRUM DOWNSTREAM
SERVICES, INC., d/b/a
BROADSPECTRUM AMERICAS, INC.,
d/b/a TRANSFIELD SERVICES, formerly
TIMEC COMPANY, INC.; and T.R.S.C.,
INC.,

     Defendants.

Case No. 3:18-cv-06741-LB

**PLAINTIFF'S NOTICE OF MOTION
AND MOTION FOR PRELIMINARY
APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT**

Date: November 19, 2020
Time: 9:30 a.m.
Courtroom: B, 15th Floor
Judge: Hon. Laurel Beeler

Complaint Filed:   11/06/2018
Trial Date:        None

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on November 19, 2020, at 9:30 a.m. in Courtroom B, 15th Floor, before Hon. Laurel Beeler of the United States District Court, Northern District of California, Plaintiff Angel Villafan ("Plaintiff") moves the Court for preliminary approval of the Stipulation of Class, Collective, and Representative Action Settlement (the "Settlement Agreement" or the "Settlement," attached as **Exhibit 1** to the accompanying Declaration of Carolyn Hunt Cottrell) as to the California Class, and approval of the Settlement as to the Collective. The Settlement globally resolves all of the claims in these actions on a class and collective basis. In particular, Plaintiff moves for orders:

### *As to the California Class:*

(1)    Granting preliminary approval of the Settlement Agreement as to the Class;

(2)    Conditionally certifying the Class for settlement purposes;

(3)    Approving the proposed schedule and procedure for completing the final approval process for the Settlement as to the Class, including setting the Final Approval Hearing;

(4)    Approving the Notice of Settlement ("Class/Collective Notice") as they pertain to the Class (attached as **Exhibit A** to the Settlement Agreement);

(5)    Preliminarily appointing and approving Schneider Wallace Cottrell Konecky LLP as Counsel for the Class;

(6)    Preliminarily approving Class Counsel's request for attorneys' fees and costs;

(7)    Preliminarily appointing and approving Plaintiff Villafan as Class Representative for the Class;

(8)    Preliminarily appointing and approving JND Legal Administration as the Settlement Administrator for the Class; and

(9)    Authorizing the Settlement Administrator to mail and email the approved Class Notice and Class/Collective Notice to the Class.

### *As to the Collective:*

(1)    Granting approval of the Settlement Agreement as to the Collective;

(2)    Approving the Notice of Settlement ("Class/Collective Notice") as they pertain to the

Collective (attached as **Exhibit A** to the Settlement Agreement);

(3)    Approving the proposed schedule for completing the settlement process as to the Collective;

(4)    Approving and appointing Schneider Wallace Cottrell Konecky LLP as Counsel for the Collective for purposes of the Settlement;

(5)    Appointing and approving the Plaintiff Villafan as the Collective Representative for the Collective for purposes of the Settlement;

(6)    Appointing and approving JND Legal Administration as the Settlement Administrator for the Collective; and

(7)    Authorizing the Settlement Administrator to mail and email the approved Collective Notice and the Class/Collective Notice to the Collective as set forth in the Settlement Agreement.

Plaintiff brings this Motion pursuant to Federal Rules of Civil Procedure 23(e) and long-established precedent requiring Court approval for Fair Labor Standards Act settlements.[1] The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Carolyn Hunt Cottrell, and all other records, pleadings, and papers on file in the consolidated and related actions and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiff also submits a Proposed Order Granting Preliminary Approval of Class and Collective Action Settlement with their moving papers.

---

[1] *See, e.g., Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.*, Case No. 3:18-cv-06741-LB

Date: October 9, 2020

Respectfully submitted,

*/s/ Carolyn Hunt Cottrell*
Carolyn Hunt Cottrell
Ori Edelstein
Michelle S. Lim
SCHNEIDER WALLACE
COTTRELL KONECKY LLP

Attorneys for Plaintiff and the Putative Class, Collective, Aggrieved Employees, and State of California

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.*, Case No. 3:18-cv-06741-LB

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. vi

I.     INTRODUCTION ........................................................................................................ 1

       A.     Factual Background ............................................................................................ 1

       B.     Procedural History ............................................................................................ 3

              1.     The Pleadings ........................................................................................... 3

              2.     Plaintiff's Class Claims............................................................................ 3

              3.     FLSA Conditional Certification............................................................... 4

              4.     Discovery         .............................................................................................. 4

              5.     Mediation and Settlement ........................................................................ 5

II.    TERMS OF THE SETTLEMENT ............................................................................. 6

       A.     Basic Terms and Value of the Settlement.......................................................... 6

       B.     Class and Collective Definitions....................................................................... 10

       C.     Allocation and Awards ..................................................................................... 10

       D.     Scope of Release ............................................................................................... 12

       E.     Settlement Administration ................................................................................ 13

III.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
       SETTLEMENT AS TO THE CALIFORNIA CLASS AND APPROVAL OF THE
       SETTLEMENT AS TO THE COLLECTIVE .......................................................... 14

       A.     The Court Should Grant Preliminary Approval of the Settlement as to the
              California Class................................................................................................. 14

       B.     The California Class Meets the Requirements for Class Certification. ................ 14

              1.     The Class is numerous and ascertainable................................................. 15

              2.     Plaintiff's claims raise common issues of fact or law............................... 15

              3.     Plaintiff's claims are typical of the claims of the Class............................ 16

              4.     Plaintiff and Class Counsel will adequately represent the Classes............. 17

              5.     The Rule 23(b)(3) requirements for class certification are also met. .......... 17

       C.     Plaintiff and the Collective Members are Similarly Situated .............................. 18

D.    The Settlement Should Be Preliminarily Approved as to the Class and Approved as to the Collective Because It Is Fair, Reasonable, and Adequate. .................... 20

    1.    The terms of the Settlement are fair, reasonable, and adequate.................20

    2.    The Parties have agreed to a fair distribution of the settlement proceeds that is tailored to the Class and Collective and their respective claims. ..............21

    3.    The extensive discovery enabled the Parties to make informed decisions regarding settlement.................................................................................22

    4.    Litigating the Actions not only would delay recovery, but would be expensive, time consuming, and involve substantial risk. ...........................23

    5.    The Settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel. ...................................24

E.    The Class Representative Enhancement Payment Is Reasonable. ........................ 25

F.    The Requested Attorneys' Fees and Costs are Reasonable. ................................. 26

G.    The Proposed Notices of Settlement and Claims Process Are Reasonable. ......... 28

H.    The Court Should Approve the Proposed Schedule. ............................................. 31

IV.    CONCLUSION ............................................................................................. 32

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor*
  521 U.S. 591 (1997)...................................................................................................18

*Balderas v. Massage Envy Franchising, LLP*,
  2014 WL 3610945 (N.D. Cal. July 21, 2014)...........................................................20

*Benton v. Telecom Network Specialists, Inc.*
  220 Cal.App.4th 701 (Cal. Ct. App. 2014)................................................................17

*Boyd v. Bechtel Corp.*
  485 F.Supp. 610 (N.D. Cal. 1979).............................................................................22

*Carter v. Anderson Merchandisers, LP*
  No. EDCV 08-0025-VAP OPX, 2010 WL 1946784 (C.D. Cal. May 11, 2010).........24

*Castellanos v. The Pepsi Bottling Group*
  No. RG07332684 (Alameda Super Ct., Mar. 11, 2010) .............................................26

*Caudle v. Sprint/United Mgmt. Co.*
  No. C 17-06874 WHA, 2018 WL 6618280 (N.D. Cal. Dec. 18, 2018) ......................15

*Chavez v. IBP, Inc.*
  No. CV-01-5093-RHW, 2005 WL 6304840 (E.D. Wash. May 16, 2005) ..................15

*Chu v. Wells Fargo Investments, LLC*,
  Nos. C 05–4526 MHP, C 06–7924 MHP, 2011 WL 672645 (N. D. Cal. Feb.16,2011) ..............26

*Churchill Village, LLC. v. Gen. Elec.*
  361 F.3d 566 (9th Cir. 2004) ..............................................................................20, 28

*Contreras v. Bank of America*
  No. CGC-07-467749 (San Francisco Super. Ct., Sept. 3, 2010) ................................26

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*
  No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016).......................18

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*,

  No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016)............................................2

*Eisen v. Carlisle & Jacquelin*

  417 U.S. 156 (1974) ........................................................................................................................28

*Fry v. Hayt, Hayt & Landau*

  198 F.R.D. 461 (E.D. Pa. 2000) ..........................................................................................15, 16, 17

*Guifi Li v. A Perfect Day Franchise Inc.*,

  2012 WL 2236752 (N.D. Cal. 2012) ................................................................................................9

*Guilbaud v. Sprint/United Management Co.*, Inc.

  2014 WL 10676582 (N.D. Cal. 2014) ............................................................................................19

*Guilbaud v. Sprint/United Management Co., Inc.*,

  No. 3:13-cv-04357-VC, Dkt. No. 181 (N.D. Cal. Apr. 15, 2016) ..................................................25

*Hanlon v. Chrysler Corp.*

  150 F.3d 1011 (9th Cir. 1998) ..............................................................................................passim

*Haro v. City of Los Angeles*,

  745 F.3d 1249 (9th Cir. 2014) ..........................................................................................................9

*Hasty v. Elec. Arts, Inc.*

  No. CIV 444821 (San Mateo Super. Ct., Sept. 22, 2006)..............................................................26

*Holmes v. Continental Can Co.*

  706 F.2d 1144 (11th Cir. 1983) ......................................................................................................22

*Ikonen v. Hartz Mountain Corp.*

  122 F.R.D. 258 (S.D. Cal. 1988) ....................................................................................................15

*In re Activision Sec. Litig.*

  723 F.Supp. 1373 (N.D. Cal. 1989) ................................................................................................26

*In re AT & T Mobility Wireless Data Services Sales Tax Litigation*

  789 F.Supp.2d 935 (N.D. Ill. 2011) ................................................................................................22

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.*, Case No. 3:18-cv-06741-LB

*In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*,

   289 F.R.D. 526, 539 (N.D. Cal. 2012), aff'd, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4,

   2019) ................................................................................23

*In re Mego Fin. Corp. Sec. Litig.*

   213 F.3d 454 (9th Cir. 2000) ................................................................20

*In re Syncor ERISA Litig.*

   516 F.3d 1095 (9th Cir. 2008) ..............................................................20

*Jones, et al. v. CertifiedSafety, et al.,*

   3:2017-cv-02229, ECF 232 (N.D. Cal. June 1, 2020) (Chen, J.)................................11

*Jones, et al. v. CertifiedSafety, Inc., et al.,*

   Case No. 3:17-cv-02229-EMC, ECF 232 (N.D. Cal. June 1, 2020)................................27

*Kevin Woodruff v. Broadspectrum Downstream Services, Inc.,*

   United States District Court Case Number 3:14-cv-04105-EMC................................10

*Kilbourne v. Coca-Cola Co.*,

   No. 14CV984-MMA BGS, 2015 WL 5117080 (S.D. Cal. July 29, 2015)................................23

*Kirkpatrick v. Ironwood Commc'ns, Inc.*

   No. C05-1428JLR, 2006 WL 2381797 (W.D. Wash. Aug. 16, 2006) ................................15

*Knight v. Red Door Salons, Inc.*

   2009 WL 248367 (N.D. Cal. 2009) ..........................................................26

*Lewis v. Starbucks Corp.*,

   No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ........................22

*Lynn's Food Stores, Inc. v. United States*

   679 F.2d 1350 (11th Cir. 1982) ........................................................2, 19

*Ma v. Covidien Holding, Inc.*,

   2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ..................................................20

*Meewes v. ICI Dulux Paints*

   No. BC265880 (Los Angeles Super. Ct. Sept. 19, 2003) ......................................26

viii

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.,* Case No. 3:18-cv-06741-LB

*Monterrubio v. Best Buy Stores, L.P.*
  291 F.R.D. 443 (E.D. Cal. 2013) .................................................................................22

*Mousai v. E-Loan, Inc.*
  No. C 06-01993 SI (N.D. Cal. May 30, 2007) ..........................................................26

*Mullane v. Cent. Hanover Bank & Trust Co.*
  339 U.S. 306, 314 (1950) .........................................................................................28

*Novak v. Retail Brand Alliance, Inc.*
  No. RG 05-223254 (Alameda Super. Ct., Sept. 22, 2009) .........................................26

*Noyes v. Kelly Servs., Inc.*
  2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008) ....................27

*Officers for Justice v. Civil Serv. Comm'n*
  688 F.2d 615 (9th Cir. 1982) ........................................................................19, 20, 21

*Otey v. CrowdFlower, Inc.*
  No. 12-CV-05524-JST, 2015 WL 6091741 (N.D. Cal. Oct. 16, 2015) .........2, 18, 19, 20

*Phillips Petroleum Co. v. Shutts*
  472 U.S. 797 (1985) ..................................................................................................28

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*
  No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) ...........................27

*Romero v. Producers Dairy Foods, Inc.*
  235 F.R.D. 474 (E.D. Cal. 2006) ...............................................................................15

*Shaw v. AMN Healthcare, Inc.*
  326 F.R.D. 247 (N.D. Cal. 2018) ...............................................................................15

*Silber v. Mabon*
  18 F.3d 1449 (9th Cir. 1994) .....................................................................................28

*Soto, et al. v. O.C. Communications, Inc., et al.*
  Case No. 3:17-cv-00251-VC (N.D. Cal. Oct. 23, 2019) ...............................11, 25, 27

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.*, Case No. 3:18-cv-06741-LB

*Staton v. Boeing Co.*

   327 F.3d 938 (9th Cir. 2003) ...................................................................................25, 26

*Stovall-Gusman v. W.W. Granger, Inc.*,

   2015 WL 3776765 (N.D. Cal. June 17, 2015) .....................................................................20

*Thurman v. Bayshore Transit Mgmt., Inc.*,

   203 Cal.App.4th 1112 (Cal. App. Ct. 2012) ...........................................................................9

*Van Liew v. North Star Emergency Services, Inc., et al.*

   No. RG17876878 (Alameda Cty. Super. Ct., Dec. 11, 2018)...........................................26

*Van Vranken v. Atl. Richfield Co.*

   901 F. Supp. 294 (N.D. Cal. 1995) .......................................................................................25

*Vasquez v. Coast Valley Roofing*

   266 F.R.D. 482 (E.D. Cal. 2010) ...........................................................................................26

*Viceral v. Mistras Grp., Inc.*,

   Case No. 15-cv-2198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) (Chen, J.)................20

*Vizcaino v. Microsoft Corp.*

   290 F. 3d 1043 (9th Cir. 2002) ...............................................................................................26

*Wang v. Chinese Daily News, Inc.*

   737 F.3d 538 (9th Cir. 2013) ...........................................................................................15, 17

*Wren v. RGIS Inventory Specialists*

   No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................................20, 24, 27

*Yokoyama v. Midland Nat. Life Ins. Co*.

   594 F.3d 1087 (9th Cir. 2010) ...............................................................................................17

*York v. Starbucks Corp.*,

   No. CV 08-07919 GAF PJWX, 2011 WL 8199987 (C.D. Cal. Nov. 23, 2011) ..........................23

**Statutes**

28 U.S.C. § 1715 .....................................................................................................................10

29 U.S.C. § 216 ...................................................................................................................9, 18

x

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.,* Case No. 3:18-cv-06741-LB

29 U.S.C. § 255(a) ................................................................................................................ 9

**Rules**

Federal Rules of Civil Procedure 23(e) ........................................................................ passim

Federal Rules of Civil Procedure 30(b)(6) ........................................................................ 4

**Other Authorites**

Conte, Newberg on Class Actions

§ 8.21 (3rd Ed. 1992) ...................................................................................................... 29

Conte, Newberg on Class Actions

§ 8.39 (3rd Ed. 1992) ...................................................................................................... 29

Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*

§ 21.61 (4th ed. 2004) .................................................................................................... 14

Manual for Complex Litigation, Settlement Notice

§ 21.312 (4th ed. 2004) .................................................................................................. 29

Posner, Economic Analysis of the Law (4th ed. 1992) .......................................................... 27

**California Labor Codes**

Cal. Lab. Code § 203 ..................................................................................................... 8, 9

Cal. Lab. Code § 226 ..................................................................................................... 8, 9

Cal. Lab. Code § 1194 ...................................................................................................... 9

Cal. Lab. Code § 2699 ...................................................................................................... 9

## I.  INTRODUCTION

This class and collective action (the "Action") is brought on behalf of Defendants'[2] current and former non-exempt employees who provide safety and support services at the oil refinery locations of Defendants' clients throughout the United States, including in California. The Action is based on Defendant's alleged violations of federal and California labor laws. After nearly two years of intensive litigation, including amendments to the complaints, conditional certification, mediation and exhaustive pre-mediation discovery and outreach, and extensive arm's-length negotiations between counsel, the Parties have reached a global settlement of the Actions, memorialized in the proposed Class Action Settlement Agreement and Release ("Settlement"). Plaintiff now seeks preliminary approval of the Settlement as to the California Class and approval of the Settlement as to the Collective.[3]

The Parties have resolved the claims of approximately 1,912 Safety Attendants and similarly situated non-exempt employees, for a total non-reversionary settlement of $5,000,000, plus interest. With this proposed Settlement, the Parties are resolving numerous wage and hour claims unlikely to have been prosecuted as individual actions. The Settlement provides an excellent benefit to the Class and Collective and an efficient outcome in the face of expanding litigation. The Settlement is fair, reasonable, and adequate in all respects, and Plaintiff respectfully requests that the Court grant the requested approval.

### A.  Factual Background

Defendants serve the oil refinery industry, providing its clients, oil refinery operators throughout the United States, with personnel who specialize in planning, implementing, and executing safety protocols at refinery operations. Cottrell Decl., ¶ 8. The proposed Class and Collective members, who are classified as non-exempt employees, carry out these safety duties at refinery operations throughout the United States, including in California, Washington, Minnesota,

---

[2] Defendants Broadspectrum Downstream Services, Inc. dba Broadspectrum Americas, Inc., dba Transfield Services, formerly Timec Company, Inc. ("Broadspectrum") and T.R.S.C., Inc. ("TRSC") (collectively, "Defendants").

[3] The Settlement is attached as **Exhibit 1** to the accompanying Declaration of Carolyn Hunt Cottrell in Support of Plaintiff's Motion for Preliminary Approval of Class and Collective Action Settlement ("Cottrell Decl.").

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.,* Case No. 3:18-cv-06741-LB

Illinois, Ohio, Alaska, and numerous other states.[4] *Id*., ¶ 9. They provide support for the refinery companies' operations and protocols, including identifying, mitigating, and reporting potential safety hazards at their assigned worksites. *Id*.

Plaintiff alleges that Class Members—who work long and difficult hours, including shifts of 12 hours or more, up to seven days per week, often far away from their homes—experience wage and hour violations in their work with Defendants. *Id*., ¶ 10. In particular, Plaintiff alleges that the Class Members experience significant amounts of pre- and post-shift off-the-clock work, including unpaid, on-duty time traveling to the actual work location through the massive refinery complexes, donning and doffing protective gear, undergoing security inspections, filling out paperwork, attending safety meetings, and retrieving required equipment. *Id*., ¶ 11. Plaintiff also alleges that Class Members are required to undergo unpaid training sessions in California in order to begin working for Defendants. *Id*. Plaintiff further alleges that the Class Members cannot take timely, full, off-duty meal and rest periods, due to a lack of break relief and the need to traverse the refinery to get to designated break locations. *Id*. Moreover, Plaintiff alleges that the Class Members regularly travel to refineries around the country for multi-week assignments, but are not adequately reimbursed for travel and lodging expenses, and are required to pay out-of-pocket for equipment including fire-protective gear, gloves, and steel-toed boots. *Id*.

As a result of these alleged violations, Plaintiff alleges that Defendants systematically violate the Fair Labor Standards Act, as well as California labor law. *Id*., ¶ 12. Plaintiff alleges that throughout the relevant time period, Defendants eschewed their obligations to Plaintiff and Class Members by: (1) not paying Class Members proper minimum and overtime wages for work performed off-the-clock on a daily basis, as well as uncompensated training days; (2) failing to provide Class Members with a reasonable opportunity to take meal and rest periods, and failing to compensate Class Members when such meal and rest periods are not taken; (3) failing to reimburse necessarily-incurred expenses; and (4) failing to issue accurate, itemized wage statements.

Defendants have at all times denied, and continue to deny, all of these allegations, including

---

[4] Plaintiff and members of the proposed Class and Collective are referred to hereafter as "Class Members" or "Safety Attendants" for ease of reading.

1   any liability for alleged failure to pay overtime compensation or any alleged wage payment, wage

2   and hour or similar violation. Settlement, ¶ 9.  Defendants further deny that Plaintiff's allegations are

3   appropriate for class/collective and/or representative treatment for any purpose other than for

4   settlement purposes only.  Cottrell Decl., ¶ 13.

5       **B.   Procedural History**

6           **1.   The Pleadings**

7       Plaintiff initiated this action against Defendant Broadspectrum on November 6, 2018, and

8   filed an Amended Complaint on February 1, 2019.  ECF 1, 15-16.  Broadspectrum filed its Answer

9   to the Complaint on January 1, 2019 and to the Amended Complaint on February 19, 2019.  ECF 8,

10  17.  Plaintiff alleges that Broadspectrum violated the Fair Labor Standards Act ("FLSA") and the

11  wage and hour laws of California by failing to pay non-exempt employees their earned wages,

12  failing to provide legally compliant meal and rest periods, and failing to reimburse for work-related

13  expenditures. On this basis, Plaintiff brings claims against Broadspectrum on behalf of a putative

14  FLSA collective and a putative California class, and for civil penalties under the California Labor

15  Code Private Attorneys General Act ("PAGA").

16      As a result of the Settlement, the Parties agree that Plaintiff would amend the operative

17  complaint to add Defendant TRSC as a Named Defendant. *See* Settlement, ¶ 12.  On September 29,

18  2020, pursuant to the parties' stipulation, Plaintiff filed a motion for leave to file her Second Amended

19  Complaint to add Defendant TRSC as a Named Defendant, which was granted by the Court on

20  September 30, 2020. ECF 121-124.

21          **2.   Plaintiff's Class Claims**

22      Plaintiff asserts claims on behalf of a California class, defined as: "All current and former

23  hourly, non-exempt employees of Broadspectrum Downstream Services, Inc. in California during the

24  time period four years prior to the filing of this Complaint until the resolution of this action." ECF

25  16, at p. 12. Pursuant to the Settlement, Defendant stipulated to certification of the California Class

26  for settlement purposes only. *See* Settlement, ¶ 11.

27

28

### 3. FLSA Conditional Certification

The Parties stipulated to conditional certification of the FLSA Collective, which was granted on June 11, 2019. ECF 26. Plaintiff asserts claims on behalf a nationwide Collective, defined as: "All current and former hourly, non-exempt employees of Broadspectrum, Downstream Services, Inc. in the United States during the time period three years prior to the filing of this Complaint until the resolution of this action, excluding any office staff, other administrative employees, and maintenance workers." ECF 26, at p. 7. To date, 842 Safety Attendants filed opt-in forms in this action. *See* ECF 114.

### 4. Discovery

Plaintiff propounded formal discovery requests on Broadspectrum, consisting of 130 requests for production of documents and 14 special interrogatories, on April 5, 2019. Cottrell Decl., ¶ 14. The Parties subsequently agreed to engage in mediation, and Plaintiff agreed to withdraw her formal discovery requests in lieu of an informal discovery process for purposes of mediation. *Id.*

The Parties engaged in extensive informal discovery leading up to mediation, including a deposition. On October 4, 2019, Plaintiff took a Rule 30(b)(6) deposition of David Dwight Matthews, Broadspectrum's corporate representative and the President of Broadspectrum's parent company, Ferrovial Oil Services Oil & Gas North America. *Id.*, ¶ 15. The deposition addressed topics including Broadspectrum's corporate organization and decision-making responsibilities; its policies, practices, procedures, and systems for wage and hour issues, compensation, timekeeping, and scheduling; relevant investigations and reports; and the Class Members' job duties and responsibilities, the tools, equipment and gear that they use, and any work that they perform outside of their scheduled shifts. *Id.* Mr. Mathews testified that Ferrovial is responsible for developing the compensation policies and practices for Refinery Workers employed by both Broadspectrum and Ferrovial's other subsidiary, TRSC, another company that employs Safety Attendants. *Id.*

Plaintiff's counsel have additionally completed extensive outreach with Class and Collective Members, including over 160 in-depth intakes. *Id.*, ¶ 16. The intakes covered topics including dates and locations of work, hours of work, pre-shift and post-shift off-the-clock work, meal and rest

breaks, and reimbursement of work-related expenses. *Id*. Through the outreach process, Plaintiff garnered substantial factual background regarding the alleged violations and the joint employer claims, which Plaintiff's counsel utilized to build their case and to assess Defendants' potential exposure in this action. *Id*., ¶ 17. Multiple Class and Collective Members that completed intakes also provided additional documents to Plaintiff's counsel. *Id*.

Defendants additionally produced over 1,140 documents, including its general policies as well as time records, payroll records, and job assignment documents applicable to Plaintiff Villafan. *Id*., ¶ 18. Defendants also provided class-wide figures, including the total number of class members, average hourly rates, and additional data points, ahead the mediation, to enable Plaintiff's counsel to evaluate damages on a Class and Collective basis. *Id*. This discovery was produced on an informal basis to facilitate mediation. *Id*. Plaintiff's counsel completed an exhaustive review of such documents, and used the information and data from them to prepare for mediation. *Id*.

### 5.  Mediation and Settlement

Plaintiff and Defendants first mediated this dispute on October 21, 2019 before Jeff Ross, a respected and experienced wage and hour mediator. Cottrell Decl., ¶ 19. This initial mediation was unsuccessful, and the parties continued to engage in numerous arm's-length negotiations facilitated by Mr. Ross. *Id*. On January 31, 2020, the Parties ultimately accepted a mediator's proposal issued by Mr. Ross, and executed a memorandum of understanding on February 21, 2020, which contained the essential terms of the instant Settlement, including an agreement that Defendants would pay an all-in, non-reversionary gross settlement amount of $5,500,000.00. *Id*., ¶ 20.

Throughout the mediation process, the Parties engaged in serious and arm's-length negotiations, culminating in the mediator's proposal. *Id.,* ¶ 21. After the mediation, counsel for the Parties worked to finalize the proposed long-form settlement agreement and corresponding notice documents, subject to the Court's approval, and finalized said documents without execution by March 23, 2020. *Id*.

On April 3, 2020, however, Defendant represented to Plaintiff a need to delay the settlement by approximately sixty days to allow sufficient time to fund the settlement in light of the COVID-19

outbreak. *Id.,* ¶ 22; ECF 108. Given the unprecedented impact of the COVID-19 crisis, the Parties extensively met and conferred over how to clear any obstacles presented by the pandemic, including deferred payment, stay of this action, and structured funding, but were unable to do so for several months. Cottrell Decl., ¶ 22; ECF 112, 115.  In July 2020, Defendants represented that the COVID-19 pandemic caused severe impact on its business conditions, including its ability to borrow to fund continued business operations, and proposed reducing the gross settlement amount to a mere fraction of the initially agreed-upon amount. Cottrell Decl*.,* ¶ 22. Ultimately, following further exhaustive meet and confer efforts, the Parties agreed that Defendants would fund an all-in, non-reversionary gross settlement amount of settlement of $5,000,000.00, including all interest earned.[5] *Id.,* ¶ 23.

As the Settlement is complex, involving hybrid Rule 23 and FLSA claims, numerous Defendants, and multiple negotiations, the drafting process was lengthy. After an initial draft was completed, multiple sets of subsequent edits were required to arrive at an agreement that was acceptable to all Parties and counsel, along with a separate drafting and revision process for the Notice of Settlement, as well as the escrow agreement. *Id.,* ¶ 24.

Counsel for the Parties advised the Court of the status of the drafting process, culminating in a stipulation that set finalized deadlines for the completion of the Settlement Agreement and filing the instant motion. *See* ECF 98, 108, 112, 115. The Settlement Agreement was fully executed on September 22, 2020. Cottrell Decl*.,* ¶ 25.

## II.  TERMS OF THE SETTLEMENT

### A.  Basic Terms and Value of the Settlement

Defendants have agreed to pay a non-reversionary Gross Settlement Amount of $5,000,000 plus interest to settle all aspects of the case. Cottrell Decl., ¶ 26. Defendants will pay $5,000,000 into an interest-bearing escrow account ten (10) business days following the execution of the Settlement. *Id.* The Parties have agreed to use Citibank as the escrow agent.  *Id.* Pursuant to the Settlement, neither Plaintiff nor Defendants may remove any portion of the Gross Settlement Amount once it has been

---

[5] The funds are to be deposited in an interest-bearing escrow account within 10 business days of execution of the Settlement. Settlement, ¶ 26.a.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.,* Case No. 3:18-cv-06741-LB

1   deposited into the interest-bearing account. *Id.* Once the Court issues an order granting final approval

2   of the Settlement, the escrow administrator will transfer all funds, including all interest earned, into

3   the Settlement Administrator's Qualified Settlement Fund, from which all distributions will be made.

4   *Id.*

5       The Net Settlement Amount, which is the amount available to pay settlement awards to the

6   Class Members, is defined as the Gross Settlement Amount less: the payment made to the California

7   Labor & Workforce Development Agency ("LWDA") pursuant to PAGA ($31,500.00)[6]; any

8   enhancement payments awarded to the Class Representatives (up to $15,000.00 for Plaintiff

9   Villafan); the Settlement Administrator's fees and costs (estimated at $30,130.00);[7] and any

10  attorneys' fees and costs awarded to Plaintiff's counsel (fees of up to one third of the Gross Settlement

11  Amount, or approximately $1,666,666.66, plus costs not to exceed $40,000). *Id.,* ¶ 27.

12      The Gross Settlement Amount is a negotiated amount that resulted from substantial arm's-

13  length negotiations and significant investigation and analysis by Plaintiff's counsel. *Id.,* ¶ 28.

14  Plaintiff's counsel based their damages analysis and settlement negotiations on informal discovery,

15  including the payroll and timekeeping data, deposition, and over 160 interviews with Class Members.

16  *Id.* Plaintiff's counsel obtained average rates of pay for Safety Attendants, which were then used in

17  conjunction with amounts of unpaid time to determine estimated damages for off-the-clock and

18  overtime violations. *Id.,* ¶ 29. Based on outreach analysis, Plaintiff applied a high-end damage

19  assumption of 10 minutes of off-the-clock time per day, along with each Safety Attendant missing

20  25% of their meal and rest periods. *Id.*

21      Using these assumptions and further assuming that Plaintiff and the Class Members would

22  certify all of their claims and prevail at trial, Plaintiff's counsel calculated the total potential

23  substantive exposure if Plaintiff fully prevailed on all of their claims at approximately $23 million.

24  *Id.,* ¶ 30. The total amount of damages is broken down as follows:

---

25  [6] The Parties agree to allocate $42,000.00 of the Gross Settlement Amount to the settlement of the
    PAGA claims, which the Parties believe in good faith is a fair and reasonable apportionment.

26  Settlement, ¶ 27.c. The Settlement Administrator shall pay 75%, or $31,500.00, of this amount to the
    LWDA, and 25%, or $10,500.00, the "Net PAGA Amount," shall remain as part of the Net Settlement

27  Amount. Settlement, ¶¶ 2.p, 27.c.
    [7] A more recent estimate of the settlement administration costs is $30,152.00. Cottrell Decl., ¶ 54.

28

---

Plaintiff calculated that unpaid wages owed, based on the assumption of 10 minutes of off-the-clock work in each workday and inclusive of overtime and double time, as well as overtime and double time on seventh day of work, would total approximately $12.1 million for all Class Members. *Id.*, ¶ 31.

Class Members are able to recover for meal and rest break violations. Based on the assumption that 25% of their meal and rest periods are missed or otherwise non-compliant, Class Members are owed approximately $10.3 million under the premium pay provisions of the California Labor Code, taking into account 203 premium pay hours paid by Defendants. *Id.*, ¶ 32. Class Members are also able to recover directly for unreimbursed business expenses under California Labor Code § 2802, which Plaintiff estimates at less than $600,000. *Id.*, ¶ 33.

Totaling the estimated damages for substantive (non-derivative) violations under California law and the FLSA, as applicable, for unpaid off-the-clock work, meal and rest period violations, and unreimbursed business expenses, Plaintiff estimates that the total substantive damages are approximately $23 million. *Id.*, ¶ 34. This amount includes liquidated damages where applicable, but does not include derivative claims (e.g., waiting time penalties, wage statement claims) and penalty claims (e.g., PAGA claims). *Id.*

For derivate and penalty claims, Plaintiff estimates the waiting time penalty claim for California Class Members under California Labor Code § 203 at approximately $14.5 million[8] and the wage statement penalty under California Labor Code § 226 at approximately $1.1 million. *Id.*, ¶ 35. Plaintiff estimates the PAGA penalties for applicable Safety Attendants at approximately $2.6 million. *Id.*, ¶ 36. Totaling the estimated damages for derivative and penalty claims violations, Plaintiff estimates that the total derivative and penalty damages are approximately $18.3 million. *Id.*, ¶ 37.

Plaintiff calculated the total potential exposure—inclusive of derivative claims, penalty

---

[8] Based on Defendants' data and Plaintiff's investigation, this amount, and other figures for unpaid wages upon termination, assume that each Class Member was terminated and rehired at least 4.37 during their tenure with Defendants. Cottrell Decl., ¶ 35, n. 3.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.,* Case No. 3:18-cv-06741-LB

claims,[9] claims for liquidated damages from willful or bad faith conduct,[10] and interest—at approximately $48.6 million. *Id.*, ¶ 38.

The negotiated non-reversionary Gross Settlement Amount of $5,000,000 represents approximately 22% of the approximately $23 million that Plaintiff calculated for the core unpaid wages claims. *Id.*, ¶ 39. When adding meal and rest break, derivative claims, and potential penalties, the $5,000,000 million settlement amount represents approximately 10.2% of Defendants' total potential exposure of $48.6 million. *Id.* Again, these figures are based on Plaintiff's assessment of a best-case-scenario and does not account for any interest gained on the initial funding of the settlement. To have obtained such a result at trial, Plaintiff would have to prove that all Class Members experienced the violations at the levels described above for every shift and every assignment, and that Defendants acted knowingly or in bad faith. *Id.*

Plaintiff and her counsel considered the significant risks of continued litigation, described hereinafter, when considering the proposed Settlement. *Id.*, ¶ 40. These risks were front and center, particularly given the nature of the off-the-clock work, that the Safety Attendants work in numerous and varying refinery locations, and the numerous and varying job titles each Safety Attendants were assigned, which could invariably complicate certification efforts and proving the claims on the merits. *Id.* In contrast, the Settlement will result in immediate and certain payment to Class Members of meaningful amounts. *Id.*, ¶ 41. The average recovery is $1,682.38 per Class Member (this amount divides the *net* recovery by total number of Class Members), or approximately $97.65 per

---

[9] The damages figure includes Defendants' additional exposure to PAGA penalties. But note, because Labor Code §§ 1194.2, 203, and 226 already incorporate their own penalty provisions, an award of additional PAGA penalties – or an award of the maximum penalty amount provided by PAGA – is uncertain. *See* Cal. Lab. Code § 2699(f); *see also Guifi Li v. A Perfect Day Franchise Inc.*, 2012 WL 2236752 at *17 (N.D. Cal. 2012). Moreover, even assuming Plaintiff's remaining claims qualify for PAGA penalties, any such award is not automatic. Cal. Lab. Code § 2699(e)(2); *see* also *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112, 1135-36 (Cal. App. Ct. 2012). This figure also includes treble damages for Washington Class Members under the Washington Consumer Protection Act, which are discretionary and capped at $25,000 per person. *See* RCW 19.86.020, 19.86.090.

[10] This figure includes liquidated damages for unpaid overtime under the FLSA. 29 U.S.C. § 216(b) (liquidated damages for unpaid overtime is in an amount equal to the unpaid overtime); *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014). If an employer's conduct constitutes a "knowing violation" of the statute, the FLSA's standard two-year statute of limitations may be extended to three years. 29 U.S.C. § 255(a). Damages for unpaid overtime are not liquidated under California law.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.*, Case No. 3:18-cv-06741-LB

Workweek.[11] *Id.* This amount provides significant compensation to the Class Members, and the Settlement provides an excellent recovery in the face of expanding and uncertain litigation. In light of all of the risks, the settlement amount is fair, reasonable, and adequate. *Id.*

### B. Class and Collective Definitions

An individual is eligible to share in the proposed Settlement if he or she belongs to any of the following[12]:

▪ The "**California Rule 23 Class**" means all current or former hourly, non-exempt employees of Broadspectrum or TRSC who performed work in California between November 6, 2014 through the date of Preliminary Approval, excluding (i) any staff, other administrative employees, and maintenance workers, and (ii) employees who have previously released all of their claims pursuant to the settlement agreement in *Kevin Woodruff v. Broadspectrum Downstream Services, Inc.,* United States District Court Case Number 3:14-cv-04105-EMC.[13]

▪ **Opt-In Plaintiffs** are all individuals who are or were employed by Broadspectrum or TRSC and on whose behalf Plaintiff's counsel has filed a consent to join the FLSA collective in the Action at any time from and including November 6, 2015 through and including the date of Preliminary Approval.

### C. Allocation and Awards

The Net Settlement Amount to be paid to Class Members is approximately $3,216,720, excluding any interest gained on the Gross Settlement Amount. Cottrell Decl., ¶ 43. Class Members

---

[11] The net recovery per workweek and per Class Member do not incorporate any interest gained on the Gross Settlement Amount. *See* Settlement, ¶ 2.o. The net recovery per workweek also does not incorporate the workweek weightings that reflect the increased value of state law claims and differing average rates of pay by state, set forth in Section IV.C, below.
[12] The class definitions slightly differ from those presented in the operative complaint. *See* Settlement, ¶¶ 2.b, 2.f.; Cottrell Decl., ¶ 42. They are to be certified for settlement purposes only under Federal Rule of Civil Procedure 23. Settlement, ¶ 11.
[13] Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, Defendants will also be required to serve upon the appropriate state official of each state in which a class member resides and the appropriate federal official, a notice of the proposed settlement within 10 days after the Settlement is filed. *See* Procedural Guidance for Class Action Settlements (updated Dec. 5, 2018).

1  will each receive a settlement award check without the need to submit a claim form.[14] *Id.*, ¶ 44. Each

2  Class Member's settlement share will be determined based on the total number of weeks that the

3  respective Class Member worked for Defendants during the applicable limitations period(s). *Id.*, ¶¶

4  44-46. Specifically, each Class Member will be credited for the number of weeks that he or she

5  worked for Defendants at any time (1) from November 6, 2014 to the date of Preliminary Approval

6  for California Class Members; and (2) if the Participating Individual is an Opt-In Plaintiff, in all

7  states other than California, from November 6, 2015 or three years preceding the date that Plaintiff's

8  counsel filed a Consent to Join form on behalf of the Opt-In Plaintiff to the date of Preliminary

9  Approval, whichever is earliest. Settlement, ¶ 31.a, Ex. A. Participating Individuals who also worked

10 for Defendants at any time from November 6, 2017 in California through the date of Preliminary

11 Approval will also receive an equal portion of the Net PAGA Amount. *Id.*, ¶ 31.b.

12     Each workweek will be equal to one settlement share, but to reflect the increased value of

13 state law claims and differing average rates of pay by state, workweek during which work was

14 performed in California will be weighted more heavily. Cottrell Decl., ¶ 46. Specifically, workweek

15 during which work was performed in California will be equal to three settlement shares and

16 workweek during which an Opt-In Plaintiff performed work in any state other than California will

17 be equal to one settlement share.[15] Settlement, ¶ 31.a.ii.  In the event that a Rule 23 Class Member,

18 who is also an Opt-In Plaintiff, opts out of the Rule 23 component of the Settlement, he or she will

19 receive credit under the Settlement for all of his or her Workweeks nationwide from the three years

20 preceding the date that Plaintiff's counsel filed his or her Opt-In Form to the date of Preliminary

21

22 [14] Class Members are not required to submit an Opt-In Form to receive payment under the Settlement
   for their work in California during the relevant time periods. However, only Opt-In Plaintiffs will be
23 credited for work in other states, as the damages for work in those states are attributable to FLSA
   claims only. Class Members may opt out of the Rule 23 component of the Settlement, but those who
24 are Opt-In Plaintiffs may not opt out of the FLSA component of the Settlement. Settlement, ¶ 23.
   [15] Plaintiff performed an in-depth analysis of Workweek weightings and the underlying state law
25 provisions to develop the weightings. Cottrell Decl., ¶ 46.  Additionally, courts in this district recently
   granted final approval of a hybrid FLSA/Rule 23 wage and hour settlement that incorporated a
26 workweek weighting of three for California state law claims and a workweek weighting of one for
   FLSA-only Workweeks. *See Jones, et al. v. CertifiedSafety, et al.,* 3:2017-cv-02229, ECF 232 (N.D.
27 Cal. June 1, 2020) (Chen, J.); *Soto, et al. v. O.C. Communications, Inc., et al.,* Case No. 3:17-cv-
   00251-VC, ECF 299 at 10:11-14, 305 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.).

28

1    Approval. In this circumstance, none of the Workweeks will be subject to any weighting (i.e., all

2    Workweeks will be equal to one settlement share on an FLSA basis), even for work in California.

3    *See id.*, ¶¶ 29-31.

4            The total number of settlement shares (as weighted) for all Participating Individuals will be

5    added together and the Net Settlement Amount will be divided by that total to reach a per share

6    dollar figure. *Id*, ¶ 31.a.iii. The resulting per share dollar figure will then be multiplied by each

7    Participating Individual's number of settlement shares (as weighted) to determine his or her

8    Individual Settlement Payment. *Id*. The Class/Collective Notice will provide the estimated

9    Individual Settlement Payment and number of Workweeks for each Class Member, assuming full

10   participation in the Settlement. *Id.*, at Ex. A. Settlement Award and eligibility determinations will

11   be based on employee workweek information that Defendants will provide to the Settlement

12   Administrator; however Class Members will be able to dispute their workweeks by submitting

13   evidence that they worked more workweeks than shown by Defendants' records. *Id*, ¶¶ 21, 33.

14           Settlement Awards will be paid to Class Members by the Settlement Administrator within 30

15   days after the occurrence of the "Effective Date." *Id.*, ¶ 37. Settlement Award checks will remain

16   valid for 180 days from the date of their issuance. *Id.*, ¶ 38. Any funds from checks that are returned

17   as undeliverable or are not negotiated within 180 calendar days after issuance will either: (a) if less

18   than $75,000.00, revert to the Parties' agreed-upon *cy pres* beneficiary, Legal Aid at Work, or (b);

19   if $75,000.00 or greater, be redistributed to the Participating Individuals who negotiated their checks

20   on a *pro rata* basis. *Id.*, ¶ 39; Cottrell Decl., ¶¶ 47-50. Upon completion of administration of the

21   Settlement, the Settlement Administrator will provide a Post-Distribution Accounting in

22   accordance with the Northern District's Procedural Guidance. *See* Settlement, ¶ 39.c.

23           **D.  Scope of Release**

24           The releases contemplated by the proposed Settlement are dependent upon whether the

25   Participating Individual is an Opt-In Plaintiff and/or a Rule 23 Class Member, and are tethered to the

26   factual allegations. Opt-In Plaintiffs will release any and all claims under the FLSA based on or

27   arising out of the same factual predicates of the Actions. *Id.*, ¶ 15.a. Rule 23 Class Members will

28

release any and all claims under California law, based on or arising out of the same factual predicates of the Actions, the Complaints, and/or the allegations in the Complaints, including all claims that were or could have been raised in the Actions and any other wage and hour claims for damages, premiums, penalties, interest, attorneys' fees, and equitable relief. *Id.*, ¶ 15.b. As to Rule 23 Class Members who are not Opt-In Plaintiffs, those who negotiate their Rule 23 Settlement Checks will also release any and all claims under the FLSA arising from or related to their work for Defendants in the applicable Rule 23 state(s), based on these same factual predicates. *Id.*, ¶ 15.c. If such a Rule 23 Class Member does not deposit his or her check, he or she will not release any claims under the FLSA. *Id.*, ¶ 15.d.

The releases are effective upon final approval of the Settlement. *Id.*, ¶ 15. The release timing extends through the date of preliminary approval, and the Released Parties are Defendants and their related persons and entities. *Id.*, ¶¶ 15-16, 2.w. The Class Representative also agrees to a general release. *Id.*, ¶ 18.

### E. Settlement Administration

The Parties have agreed to use JND Legal Administration to administer the Settlement, for total fees and costs currently estimated at $30,152. *See* Cottrell Decl., ¶ 54, 55-56 (describing settlement administration process consistent with the Northern District's Procedural Guidance for Class Action Settlements). The Settlement Administrator will distribute the Notice of Settlement via mail and email, calculate individual settlement payments, calculate all applicable payroll taxes, withholdings and deductions, and prepare and issue all disbursements to Class Members, the LWDA, the Class Representatives, Plaintiff's counsel, and applicable state, and federal tax authorities. *Id.*; Settlement, ¶¶ 20.b-g. The Settlement Administrator is also responsible for the timely preparation and filing of all tax returns and reporting, and will make timely and accurate payment of any and all necessary taxes and withholdings. *Id.*, ¶ 34. The Settlement Administrator will establish a settlement website that will allow Class Members to view the Class, Collective, and Class/Collective Notices (in generic form), the Settlement Agreement, and all papers filed by Class Counsel to obtain preliminary and final approval of the Settlement. *Id.*, ¶ 20.b. The Settlement Administrator will also

1  establish a toll-free call center for telephone inquiries from Class Members. *Id*.

2  **III. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT AS TO THE CALIFORNIA CLASS AND APPROVAL OF THE SETTLEMENT AS TO THE COLLECTIVE**

4  **A.  The Court Should Grant Preliminary Approval of the Settlement as to the California Class**

6  A certified class action may only be settled with Court approval. *See* Fed. R. Civ. P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which objecting class members may be heard, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

15  Rule 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified; and (2) that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(a), (e)(2); *Hanlon*, 150 F.3d at 1020. As discussed below, this class action settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable, and adequate in accordance with Rule 23(e)(2). Cottrell Decl., ¶ 61. Accordingly, the Court should preliminarily approve the Settlement as to the Class.[16]

22  **B.  The California Class Meets the Requirements for Class Certification.**

23  A class may be certified under Rule 23 if (1) the class is so numerous that joinder of all members individually is "impracticable"; (2) questions of law or fact are common to the class; (3)

---

[16] Plaintiff acknowledges that, in the event that the Settlement is not approved by the Court, class and collective certification would be contested by Defendants, and Defendants fully reserve and do not waive any arguments and challenges regarding the propriety of class and collective action certification.

1   the claims or defenses of the class representative are typical of the claims or defenses of the class;

2   and (4) the person representing the class is able to fairly and adequately protect the interests of all

3   members of the class. Fed. R. Civ. P. 23(a). Furthermore, Rule 23(b)(3) provides that a class action

4   seeking monetary relief may only be maintained if "the court finds that the questions of law or fact

5   common to class members predominate over any questions affecting only individual members, and

6   that a class action is superior to other available methods for fairly and efficiently adjudicating the

7   controversy." Fed. R. Civ. P. 23(b)(3). Applying this standard, numerous cases similar to this case

8   have certified classes of employees who have suffered wage and hour violations under the wage and

9   hour laws of these states.[17] Likewise, the California Class meets all of these requirements.

### 1. The Class is numerous and ascertainable.

11      The numerosity prerequisite demands that a class be large enough that joinder of all members

12  would be impracticable. Fed. R. Civ. P. 23(a)(1). While there is no exact numerical cut-off, courts

13  have routinely found numerosity satisfied with classes of at least forty members. *See, e.g., Ikonen v.*

14  *Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy Foods,*

15  *Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). The approximately 1,862 members of the California Class

16  render the class so large as to make joinder impracticable. Cottrell Decl., ¶ 62. The Class Members

17  may be readily identified from Defendants' payroll records. *Id.*

### 2. Plaintiff's claims raise common issues of fact or law.

19      The commonality requirement of Rule 23(a)(2) "is met if there is at least one common

20  question or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Rule

21  23(a)(2) has been construed permissively. *Hanlon*, 150 F.3d at 1019. Plaintiff "need not show that

---

[17] *See, e.g., Caudle v. Sprint/United Mgmt. Co.,* No. C 17-06874 WHA, 2018 WL 6618280, at *7 (N.D. Cal. Dec. 18, 2018) (certifying California Rule 23 class in a case asserting policy-driven wage violations); *Shaw v. AMN Healthcare, Inc.*, 326 F.R.D. 247, 275 (N.D. Cal. 2018) (certifying California Rule 23 class in a case asserting policy-driven off-the-clock, overtime, and meal and rest break violations, in joint employment context); *Kirkpatrick v. Ironwood Commc'ns, Inc.*, No. C05-1428JLR, 2006 WL 2381797, at *14 (W.D. Wash. Aug. 16, 2006) (certifying Washington Rule 23 class in a case involving off-the-clock, overtime, and meal break violations under Washington law); *Chavez v. IBP, Inc.*, No. CV-01-5093-RHW, 2005 WL 6304840, at *2 (E.D. Wash. May 16, 2005) (denying motion to decertify FLSA and Rule 23 classes of employees asserting federal and Washington law claims for wage and hour violations).

1  every question in the case, or even a preponderance of questions, is capable of classwide resolution."

2  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common

3  question" can satisfy the commonality requirement of Rule 23(a)(2). *Id.*

4       Common questions of law and fact predominate here, satisfying paragraphs (a)(2) and (b)(3)

5  of Rule 23, as alleged in the operative complaints. Cottrell Decl., ¶ 63. Defendants have uniform

6  policies applicable to all Safety Attendants. *Id.*, ¶ 64. Specifically, Plaintiff alleges that Safety

7  Attendants all perform essentially the same job duties—performing safety duties pursuant to

8  Defendants' standards and requirements. *Id.* Plaintiff alleges that the wage and hour violations are in

9  large measure borne of Defendants' standardized policies, practices, and procedures, creating

10  pervasive issues of fact and law that are amenable to resolution on a class-wide basis. In particular,

11  Safety Attendants are subject to the same: hiring and training process; timekeeping, payroll, and

12  compensation policies; meal and rest period policies and practices; and reimbursement policies. *Id.*

13  Plaintiff's other derivative claims will rise or fall with the primary claims. *Id.* Because these questions

14  can be resolved at the same juncture, Plaintiff contends the commonality requirement is satisfied for

15  the Class. *Id.*

16                **3.  Plaintiff's claims are typical of the claims of the Class.**

17       "Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the

18  members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, a

19  representative's claims are 'typical' if they are reasonably coextensive with those of absent class

20  members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiff's

21  claims are typical of those of all other Class Members. Cottrell Decl., ¶ 65. They were subject to the

22  alleged illegal policies and practices that form the basis of the claims asserted in this case. *Id.*

23  Interviews with Class Members and review of timekeeping and payroll data confirm that the

24  employees throughout the United States were subjected to the same alleged illegal policies and

25  practices to which Plaintiff was subjected. *Id.*, ¶ 66. Thus, the typicality requirement is also satisfied.

26  *Id.*

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.,* Case No. 3:18-cv-06741-LB

### 4.  Plaintiff and Class Counsel will adequately represent the Classes.

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiff's claims are in line with the claims of the Class, and Plaintiff's claims are not antagonistic to the claims of Class Members. Cottrell Decl., ¶ 67. Plaintiff has prosecuted this case with the interests of the Class Members in mind. *Id.* Moreover, Class Counsel has extensive experience in class action and employment litigation, including wage and hour class actions, and do not have any conflict with the classes. *Id.,* ¶¶ 5-7, 68, 86.

### 5.  The Rule 23(b)(3) requirements for class certification are also met.

Under Rule 23(b)(3), Plaintiff must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." "'The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang,* 737 F.3d at 545.

Here, Plaintiff contends the common questions raised in this action predominate over any individualized questions concerning the California Class. Cottrell Decl., ¶ 69. The Class is entirely cohesive because resolution of Plaintiff's claims hinge on the uniform policies and practices of Defendants, rather than the treatment the Class Members experienced on an individual level. *Id.* As a result, the resolution of these alleged class claims would be achieved through the use of common forms of proof, such as Defendants' uniform policies, and would not require inquiries specific to individual class members.[18] *Id.*

---

[18] Although the amount of time worked off-the-clock and number of missed meal and rest periods may vary, these are damages questions and should not impact class certification. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). The fact that individual inquiry might be necessary to determine whether individual employees were able to take breaks despite the

1    Further, Plaintiff contends the class action mechanism is a superior method of adjudication

2  compared to a multitude of individual suits. *Id.*, ¶ 70. To determine whether the class approach is

3  superior, courts are to consider: (A) the class members' interests in individually controlling the

4  prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the

5  controversy already begun by or against class members; (C) the desirability or undesirability of

6  concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in

7  managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

8    Here, the Class Members do not have a strong interest in controlling their individual claims.

9  Cottrell Decl., ¶ 71. The action involves thousands of workers with very similar, but relatively small,

10  claims for monetary injury. *Id.* If the Class Members proceeded on their claims as individuals, their

11  many individual suits would require duplicative discovery and duplicative litigation, and each Class

12  Member would have to personally participate in the litigation effort to an extent that would never be

13  required in a class proceeding. *Id.* Thus, the class action mechanism would efficiently resolve

14  numerous substantially identical claims at the same time while avoiding a waste of judicial resources

15  and eliminating the possibility of conflicting decisions from repetitious litigation and arbitrations. *Id.*

16    The issues raised by the present case are much better handled collectively by way of a

17  settlement. *Id.*, ¶ 72. Manageability is not a concern in the settlement context. *Amchem Prod., Inc. v.*

18  *Windsor*, 521 U.S. 591, 593 (1997). The Settlement presented by the Parties provides finality, ensures

19  that workers receive redress for their relatively modest claims, and avoids clogging the legal system

20  with numerous cases. Cottrell Decl., ¶ 72. Accordingly, class treatment is efficient and warranted,

21  and the Court should conditionally certify the California Class for settlement purposes. *Id.*

22           **C. Plaintiff and the Collective Members are Similarly Situated**

23    In the FLSA context, court approval is required for FLSA collective settlements, but the Ninth

24  Circuit has not established the criteria that a district court must consider in determining whether an

25  FLSA settlement warrants approval. *See, e.g., Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-

26  _____

27  Defendants' allegedly unlawful policy is not a proper basis for denying certification. *Benton v.*
   *Telecom Network Specialists, Inc.*, 220 Cal.App.4th 701 (Cal. Ct. App. 2014).

28

1    CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Otey v. CrowdFlower, Inc.*, No.

2    12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015). Most courts in this Circuit,

3    however, first consider whether the named plaintiffs are "similarly situated" to the putative class

4    members within the meaning of 29 U.S.C. § 216(b), and then evaluate the settlement under the

5    standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d

6    1350, 1355 (11th Cir. 1982), which requires the settlement to constitute "a fair and reasonable

7    resolution of a bona fide dispute over FLSA provisions." *Otey*, 2015 WL 6091741, at *4. "If a

8    settlement in an employee FLSA suit does reflect a reasonable compromise over issues...that are

9    actually in dispute," the district court may "approve the settlement in order to promote the policy of

10   encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354; *Otey*, 2015 WL 6091741,

11   at *4.

12          The Court has already conditionally certified a collective under § 216(b) for Plaintiff's

13   FLSA claims, making an initial determination that the Safety Attendants are similarly situated. The

14   Conditional certification motion called on the Court to "decid[e] whether a collective action should

15   be certified for the purpose of sending notice of the action to potential class members." *Guilbaud v.*

16   *Sprint/United Management Co.*, Inc., 2014 WL 10676582, at *1 (N.D. Cal. 2014). The Court

17   concluded that Plaintiff has satisfied her burden of making substantial allegations and a modest

18   factual showing Safety Attendants were subject to a common practice or policy that violated the

19   FLSA. ECF 26, p. 6. Because Defendants maintain various common policies and practices as to

20   what work they compensate and what work they do not compensate, and apply these policies and

21   practices to the Safety Attendants, Plaintiff contends that there are no individual defenses available

22   to Defendants. Cottrell Decl., ¶ 73.

23          During the course of the litigation, 842 Safety Attendants have filed opt-in. *See* ECF 114;

24   Cottrell Decl., ¶ 74. Defendants have not moved for decertification of the FLSA claim, and have

25   stipulated as part of the Settlement that the Collective Members are similarly situated to Plaintiff.

26   *Id.*, ¶ 75. The Court should find that Plaintiff and the Collective Members are similarly situated.

27

28

### D.  The Settlement Should Be Preliminarily Approved as to the Class and Approved as to the Collective Because It Is Fair, Reasonable, and Adequate.

In deciding whether to approve a proposed class or collective settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Lynn's Food Stores*, 679 F.2d at 1354-55; *Otey*, 2015 WL 6091741, at *4. Included in this analysis are considerations of: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Importantly, courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the proposed settlement is fair, reasonable, and adequate.

### 1.  The terms of the Settlement are fair, reasonable, and adequate.

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir.2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g.*, *Officers for Justice*, 688 F.2d at 623; *Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-2198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (Chen, J.) (approving wage and hour settlement which represented 8.1% of the total verdict value).[19]

_____

[19] *See also Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("10% gross and 7.3% net figures are 'within the range of reasonableness'"); *Balderas v. Massage Envy Franchising, LLP*, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (gross settlement amount of 8% of maximum recovery and net settlement amount of 5%); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the action" is within the range of reasonableness).

A review of the Settlement Agreement reveals the fairness, reasonableness, and adequacy of its terms. Cottrell Decl., ¶¶ 76-77. The Gross Settlement Amount of $5,000,000, which represents approximately 22% of the approximate $23 million that Plaintiff calculated in unpaid wages that would have been owed to all Class Members if each had been able to prove that he or she worked 10 minutes off-the-clock in every workday during the relevant time period. *Id.*, ¶ 78.[20]

Again, these figures are based on Plaintiff's assessment of a best-case-scenario. To have obtained such a result at trial(s), Plaintiff would have had to prove that each Class Member worked off-the-clock for 10 minutes in each workday (1.19 hours per week) and that Defendants acted knowingly or in bad faith. *Id.* These figures would of course be disputed and hotly contested. *Id.* The result is well within the reasonable standard when considering the difficulty and risks presented by pursuing further litigation. *Id.* The final settlement amount takes into account the substantial risks inherent in any class action wage-and hour case, as well as the procedural posture of the Actions and the specific defenses asserted by Defendants, many of which are unique to this case. *Id.*, ¶ 78; *see Officers for Justice*, 688 F.2d at 623.

### 2. The Parties have agreed to a fair distribution of the settlement proceeds that is tailored to the Class and Collective and their respective claims.

In an effort to ensure fairness, the Parties have agreed to allocate the settlement proceeds amongst Class and Collective Members in a manner that recognizes that amount of time that the particular Class or Collective Member worked for Defendants in the applicable limitations period. The allocation method, which is based on the number of Workweeks, will ensure that longer-tenured workers receive a greater recovery. Moreover, the allocation tracks the differences in substantive law and penalty claims by weighting the Workweek shares more heavily for work performed in

---

[20] The terms of the original settlement agreement from March 2020 (for a gross settlement amount of $5,500,000) were likewise fair, reasonable, and adequate at the time the parties initially agreed to them. Given the adverse effect of the COVID-19 pandemic on Defendants' financial conditions, *see supra*, Section I.B.5, the terms of the Settlement are even more fair, reasonable, and adequate. The Parties have exhaustively negotiated the terms of the Settlement, and Class Counsel has ensured the protection of the Class and Collective's interest by securing the settlement fund into escrow to avoid any potential further impact by the current economic downturn. Cottrell Decl., ¶ 78.

1    California. Cottrell Decl., ¶ 79. The allocation was made based on Class Counsel's assessment to

2    ensure that employees are compensated accordingly and in the most equitable manner. *Id*. To the

3    extent that any Class Member is *both* a FLSA Opt In Plaintiff and a member of a Rule 23 Class, these

4    workers will only receive a recovery based on their workweeks as a Rule 23 Class Member for their

5    work in California. *Id*. Such workers will not receive a "double recovery." *Id*., ¶ 80.

6        A class action settlement need not benefit all class members equally. *Holmes v. Continental*

7    *Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983); *In re AT & T Mobility Wireless Data Services Sales*

8    *Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42 (N.D. Ill. 2011). Rather,

9    although disparities in the treatment of class and collective members may raise an inference of

10   unfairness and/or inadequate representation, this inference can be rebutted by showing that the

11   unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT & T,*

12   789 F.Supp.2d at 979–80, 2011 WL 2204584, at *42. Plaintiff provides rational and legitimate bases

13   for the allocation method here, and the Parties submit that it should be approved by the Court.

### 3.   The extensive discovery enabled the Parties to make informed decisions regarding settlement.

14

15       The amount of discovery completed prior to reaching a settlement is important because it

16   bears on whether the Parties and the Court have sufficient information before them to assess the

17   merits of the claims. *See, e.g.*, *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal. 1979);

18   *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept.

19   11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of the strengths

20   and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal.

21   2013).

22       The Parties engaged in extensive informal discovery, including deposition, and class outreach

23   that have enabled both sides to assess the claims and potential defenses in this action. Cottrell Decl.,

24   ¶ 81. The Parties were able to accurately assess the legal and factual issues that would arise if the

25   cases proceeded to trial(s). *Id*. In addition, in reaching this Settlement, Plaintiff's counsel relied on

26   their substantial litigation experience in similar wage and hour class and collective actions. *Id*., ¶ 82.

27   Plaintiff's counsel's liability and damages evaluation was premised on a careful and extensive

28

1   analysis of the effects of Defendants' compensation policies and practices on Class Members' pay.

2   *Id.*, ¶ 83. Ultimately, facilitated by mediator Jeff Ross, the Parties used this information and discovery

3   to fairly resolve the litigation. *Id.*, ¶ 84.

### 4.   Litigating the Actions not only would delay recovery, but would be expensive, time consuming, and involve substantial risk.

The monetary value of the proposed Settlement represents a fair compromise given the risks

and uncertainties posed by continued litigation. Cottrell Decl., ¶ 85. If the Actions were to go to

trial(s) as class and collective actions (which Defendants would vigorously oppose if this Settlement

Agreement were not approved), Class Counsel estimates that fees and costs would exceed

$5,000,000.00. *Id.*, ¶ 87. Litigating the class and collective action claims would require substantial

additional preparation and discovery. *Id.* It would require depositions of experts, the presentation of

percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of

voluminous documentary evidence and the preparation and analysis of expert reports. *Id.*

Moreover, given the deleterious impact of the COVID-19 pandemic on Defendants' business

conditions, it is unlikely if not impossible for Defendants to be in a financial position to pay any more

than the proposed Settlement following further litigation. *Id.,* ¶ 88.

Recovery of the damages and penalties previously referenced would also require complete

success and certification of all of Plaintiff's claims, a questionable feat in light of developments in

wage and hour and class and collective action law as well as the legal and factual grounds that

Defendants have asserted to defend this action. *Id.,* ¶ 89. Off-the-clock claims are difficult to certify

for class treatment, given that the nature, cause, and amount of the off-the-clock work may vary based

on the individualized circumstances of the worker. *See, e.g., In re AutoZone, Inc., Wage & Hour*

*Employment Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), aff'd, No. 17-17533, 2019 WL

4898684 (9th Cir. Oct. 4, 2019); *Kilbourne v. Coca-Cola Co.*, No. 14CV984-MMA BGS, 2015 WL

5117080, at *14 (S.D. Cal. July 29, 2015); *York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWX,

2011 WL 8199987, at *30 (C.D. Cal. Nov. 23, 2011). While Plaintiff is confident that she would

establish that common policies and practices give rise to the off-the-clock work for Safety Attendants,

1   Plaintiff acknowledged that the work was performed by hourly employees holding various job titles

2   with various collective bargaining agreements at play at dozens of different locations around the

3   country, which were operated by numerous different oil companies. Cottrell Decl., ¶ 89. With refinery

4   policies and practices, the physical layout, and the nature of the work varying by location, Plaintiff

5   recognized that obtaining class certification would present a significant obstacle, with the risk that

6   the Safety Attendants could only pursue individual actions in the event that certification was denied.

7   *Id.,* ¶ 90. Certification of off-the-clock work claims is complicated by the lack of documentary

8   evidence and reliance on employee testimony, and Plaintiff would likely face motions for

9   decertification as the case progressed. *Id.* Given that the substantive damages are largely driven by

10  the alleged off-the-clock work, and that the derivative and penalty claims are tethered to off-the-clock

11  claims, Plaintiff's counsel was required to significantly discount the hypothetical value of the claims

12  when assessing the mediator's proposal for Settlement. *Id.,* ¶ 91.

13          Plaintiff would also encounter difficulties in moving for certification and proving their claims

14  on the merits in part due to the fact that key Class Member timekeeping documents were kept in paper

15  format. *Id.*, ¶ 92. For example, Class Member timesheets that tracked the services performed were

16  largely written by hand. *Id.* Plaintiff would face fundamental logistical difficulties in reviewing and

17  analyzing the massive amounts of hard copy records. *Id.*

18          In contrast to litigating this suit, resolving this case by means of the Settlement will yield a

19  prompt, certain, and very substantial recovery for the Class Members. *Id.*, ¶ 93. Such a result will

20  benefit the Parties and the court system. *Id.* It will bring finality to over two years of arduous litigation

21  and will foreclose the possibility of expanding litigation.

22                      **5.    The Settlement is the product of informed, non-collusive, and arm's-
                               length negotiations between experienced counsel.**

23          Courts routinely presume a settlement is fair where it is reached through arm's-length

24  bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where

25  counsel are well-qualified to represent the proposed class and collective in a settlement based on their

26  extensive class and collective action experience and familiarity with the strengths and weaknesses of

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.*, Case No. 3:18-cv-06741-LB

1    the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10;

2    *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8

3    (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

4        Here, the settlement was a product of non-collusive, arm's-length negotiations. Cottrell Decl.,

5    ¶ 94. The Parties participated in mediation before Jeff Ross, who is a skilled mediator with many

6    years of experience mediating employment matters. *Id.* The Parties then spent several months

7    negotiating the long form settlement agreement, with several rounds of meet and confer and

8    correspondence related to the terms and details of the Settlement, including in light of the adverse

9    financial effect of the COVID-19 pandemic on Defendants' business conditions. *Id.*, ¶¶ 94-95

10   Plaintiff is represented by experienced and respected litigators of representative wage and hour

11   actions, and these attorneys feel strongly that the proposed Settlement achieves an excellent result for

12   the Class Members. *See id.*, ¶ 96.

13              **E. The Class Representative Enhancement Payment Is Reasonable.**

14       Named plaintiffs in class action litigation are eligible for reasonable service awards. *See*

15   *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).[21]  The enhancement payment of up to

16   $15,000 for Plaintiff Villafan is intended to compensate Plaintiff for a broader release and for the

17   critical role she played in this case, and the time, effort, and risks she undertook in helping secure the

18   result obtained on behalf of the Class members.[22] Cottrell Decl., ¶ 97. In agreeing to serve as Class

19   and Collective representative, Plaintiff formally agreed to accept the responsibilities of representing

20   the interests of all Class Members. *Id.,* ¶ 98. Defendants do not oppose the requested payments to the

21   Plaintiff as reasonable service awards. *Id.,* ¶ 99.

22       Moreover, the service awards are fair when compared to the payments approved in similar

23   cases. *See, e.g.*, *Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF

24

25   [21] "Courts routinely approve incentive awards to compensate named plaintiffs for the services they
     provided and the risks they incurred during the course of the class action litigation." *Van Vranken v.*
26   *Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work
     in class action).
27   [22] Moreover, Plaintiff has agreed to a general release, unlike other Class Members. *See* Settlement
     Agreement, ¶ 4.21.

28

1  304 (N.D. Cal. Oct. 23, 2019) (approving $15,000 and $10,000 service awards in recent hybrid

2  FLSA/Rule 23 settlement); *Guilbaud v. Sprint/United Management Co., Inc.,* No. 3:13-cv-04357-

3  VC, Dkt. No. 181 (N.D. Cal. Apr. 15, 2016) (approving $10,000 service payments for each class

4  representative in FLSA and California state law representative wage and hour action); *Van Liew v.*

5  *North Star Emergency Services, Inc., et al.*, No. RG17876878 (Alameda Cty. Super. Ct., Dec. 11,

6  2018) (approving $15,000 and $10,000 service awards, respectively, to class representatives in

7  California Labor Code wage and hour class action).[23]

8      **F.  The Requested Attorneys' Fees and Costs are Reasonable.**

9         In their fee motion to be submitted with the final approval papers, Plaintiff's counsel will

10  request up to 33% of the Gross Settlement Amount, or $1,666,666.66, plus reimbursement of costs

11  up $40,000. Cottrell Decl., ¶ 100. Plaintiff's counsel will provide their updated lodestar information

12  with their fee motion, which will demonstrate the reasonableness of Plaintiff's Counsel's rates. *See*

13  *id.*, ¶¶ 100-101 (providing current lodestar and costs consistent with the Northern District's

14  Procedural Guidance for Class Action Settlements). On this basis, the requested attorneys' fees award

15  is reasonable. *Id.*; *see, e.g., Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1050-51 (9th Cir. 2002)

16  ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation,

17  provides a check on the reasonableness of the percentage award").

18         The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the

19  total settlement value, with 25% considered the benchmark.[24] However, the exact percentage varies

---

[23] *See also Contreras v. Bank of America*, No. CGC-07-467749 (San Francisco Super. Ct., Sept. 3, 2010) (approving $10,000 service payment for each class representative); *Castellanos v. The Pepsi Bottling Group*, No. RG07332684 (Alameda Super. Ct., Mar. 11, 2010) (approving award of $12,500); *Novak v. Retail Brand Alliance, Inc.*, No. RG 05-223254 (Alameda Super. Ct., Sept. 22, 2009) (approving award of $12,500); *Hasty v. Elec. Arts, Inc.*, No. CIV 444821 (San Mateo Super. Ct., Sept. 22, 2006) (approving award of $30,000); *Meewes v. ICI Dulux Paints*, No. BC265880 (Los Angeles Super. Ct. Sept. 19, 2003) (approving service awards of $50,000, $25,000 and $10,000 to the named plaintiffs); *Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D. Cal. May 30, 2007) (approving service award of $20,000).

[24] *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-492 (E.D. Cal. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Hanlon*, 150 F.3d at 1029; *Staton*, 327 F.3d at 952; *see also, Chu v. Wells Fargo Investments, LLC*, Nos. C 05–4526 MHP, C 06–7924 MHP, 2011 WL 672645, at *4 (N. D. Cal. Feb.16,2011) percentage-of-the-fund method is appropriate where—as here—the amount of the settlement is fixed without any reversionary payment to the defendant).

depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Vasquez,* 266 F.R.D. at 491 (citing *Knight v. Red Door Salons, Inc.,* 2009 WL 248367 (N.D. Cal. 2009); *In re Activision Sec. Litig.,* 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")). In California, federal and state courts have customarily approved payments of attorneys' fees amounting to one-third of the common fund in comparable wage and hour class actions.[25]

In this case, given the excellent results achieved, the effort expended litigating the Action, including the difficulties attendant to litigating this case and exacerbated by the COVID-19 pandemic's effect on Defendants' business conditions, such an upward adjustment is warranted. Cottrell Decl., ¶ 102. There was no guarantee of compensation or reimbursement. *Id.* Rather, counsel undertook all the risks of this litigation on a completely contingent fee basis. *Id.* These risks were front and center. *Id.* Defendants' vigorous and skillful defense further confronted Plaintiff's counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case. *Id.*

Nevertheless, Plaintiff and their counsel committed themselves to developing and pressing Plaintiff's legal claims to enforce the employees' rights and maximize the class and collective recovery. *Id.,* ¶ 103. During the litigation, counsel had to turn away other less risky cases to remain sufficiently resourced for this one. *Id.* The challenges that Class Counsel had to confront and the risks they had to fully absorb on behalf of the class and collective here are precisely the reasons for multipliers in contingency fee cases. *See, e.g.,* *Noyes v. Kelly Servs., Inc.,* 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); Posner, ECONOMIC ANALYSIS OF THE LAW, 534, 567

---

[25] *See, e.g., Jones, et al. v. CertifiedSafety, Inc., et al.,* Case No. 3:17-cv-02229-EMC, ECF 232 (N.D. Cal. June 1, 2020) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Soto, et al. v. O.C. Communications, Inc., et al.,* Case No. 3:17-cv-00251-VC, ECF 304 (N.D. Cal. Oct. 23, 2019) (approving attorneys' fees of one-third of the gross settlement in recent hybrid FLSA/Rule 23 settlement); *Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.,* No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund); *Wren,* 2011 WL 1230826 (approving attorneys' fee award of just under 42% of common fund).

1    (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal services paid as they

2    are performed… because the risk of default (the loss of the case, which cancels the debt of the client

3    to the lawyer) is much higher than that of conventional loans").

4        Attorneys who litigate on a wholly or partially contingent basis expect to receive significantly

5    higher effective hourly rates in cases where compensation is contingent on success, particularly in

6    hard-fought cases where, like in the case at bar, the result is uncertain. Cottrell Decl., ¶ 104. This does

7    not result in any windfall or undue bonus. *Id.* In the legal marketplace, a lawyer who assumes a

8    significant financial risk on behalf of a client rightfully expects that his or her compensation will be

9    significantly greater than if no risk was involved (*i.e.,* if the client paid the bill on a monthly basis),

10   and that the greater the risk, the greater the "enhancement." *Id.* Adjusting court-awarded fees upward

11   in contingent fee cases to reflect the risk of recovering no compensation whatsoever for hundreds of

12   hours of labor simply makes those fee awards consistent with the legal marketplace, and in so doing,

13   helps to ensure that meritorious cases will be brought to enforce important public interest policies

14   and that clients who have meritorious claims will be better able to obtain qualified counsel. *Id.*

15       For these reasons, Plaintiff's counsel respectfully submits that a one-third recovery for fees is

16   modest and appropriate. *Id.,* ¶ 105. Class Counsel also requests reimbursement for their litigation

17   costs. *Id.,* ¶ 106. Class Counsel's efforts resulted in an excellent settlement, and the fee and costs

18   award should be preliminarily approved as fair and reasonable. *Id.,* ¶ 107.

19   **G.  The Proposed Notices of Settlement and Claims Process Are Reasonable.**

20       The Court must ensure that Class Members receive the best notice practicable under the

21   circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen*

22   *v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not guarantee any

23   particular procedure but rather requires only notice reasonably calculated "to apprise interested

24   parties of the pendency of the action and afford them an opportunity to present their objections."

25   *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d

26   1449, 1454 (9th Cir. 1994). A settlement notice "is satisfactory if it 'generally describes the terms of

27   the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

28

1    forward and be heard.'" *Churchill Village LLC*, 361 F.3d at 575.

2        The Notice of Settlement, attached as **Exhibit A** to the Settlement Agreement, and manner of

3    distribution negotiated and agreed upon by the Parties are "the best notice practicable." Cottrell Decl.,

4    ¶ 108; Fed. R. Civ. P. 23(c)(2)(B); *see* Procedural Guidance for Class Action Settlements (updated

5    Dec. 5, 2018). All Class Members have been identified and the Notice of Settlement will be mailed

6    directly to each Class Member and emailed to those for whom Defendants have an email address.

7    Cottrell Decl., ¶ 109. The proposed Notice are clear and straightforward, and provide information on

8    the nature of the action and the proposed Class and Collective, the terms and provisions of the

9    Settlement, and the monetary awards that the Settlement will provide Class Members. *Id.* In addition,

10   the Parties will provide a settlement website that provides a generic form of the Notice, the Settlement

11   Agreement, and other case related documents and contact information. *Id.*, ¶ 110.

12       The proposed Notice fulfills the requirement of neutrality in class notices. *Id.*, ¶ 111. *See*

13   Conte, NEWBERG ON CLASS ACTIONS, § 8.39 (3rd Ed. 1992). They summarize the proceedings

14   necessary to provide context for the Settlement Agreement and summarize the terms and conditions

15   of the Settlement, including an explanation of how the settlement amount will be allocated between

16   the Named Plaintiff, Class Counsel, the Settlement Administrator, and the Class Members, in an

17   informative, coherent and easy-to-understand manner, all in compliance with the Manual for

18   Complex Litigation's recommendation that "the notice contain a clear, accurate description of the

19   terms of the settlement." Cottrell Decl., ¶ 111; MANUAL FOR COMPLEX LITIGATION, Settlement

20   Notice, § 21.312 (4th ed. 2004).

21       The Notice clearly explain the procedures and deadlines for requesting exclusion from the

22   Settlement, objecting to the Settlement, the consequences of taking or foregoing the various options

23   available to Class Members, and the date, time and place of the Final Approval Hearing. Cottrell

24   Decl., ¶ 112. Pursuant to Rule 23(h), the proposed Notice also sets forth the amount of attorneys' fees

25   and costs sought by Plaintiff, as well as an explanation of the procedure by which Class Counsel will

26   apply for them. *Id.* The Notices of Settlement clearly state that the Settlement does not constitute an

27   admission of liability by Defendants. *Id.* It makes clear that the final settlement approval decision has

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.*, Case No. 3:18-cv-06741-LB

1    yet to be made. *Id.,* ¶ 113. Accordingly, the Notice of Settlement complies with the standards of

2    fairness, completeness, and neutrality required of a settlement class notice disseminated under

3    authority of the Court. *See* Conte, NEWBERG ON CLASS ACTIONS, §§ 8.21 and 8.39 (3rd Ed. 1992);

4    MANUAL FOR COMPLEX LITIGATION, Certification Notice, § 21.311; Settlement Notice, § 21.312 (4th

5    ed. 2004).

6        Furthermore, reasonable steps will be taken to ensure that all Class Members receive the

7    Notice. Cottrell Decl., ¶ 114. Before mailing, Defendants will provide to the Settlement Administrator

8    a database that contains the names, last known addresses, last known email addresses (if any), and

9    social security numbers of each Class Member, along with the applicable number(s) of Workweeks

10   for calculating the respective settlement shares. *Id.* The Notices of Settlement will be sent by United

11   States Mail, and also via email to the maximum extent possible. The Settlement Administrator will

12   make reasonable efforts to update the contact information in the database using public and private

13   skip tracing methods. Within 10 days of receipt of the Class List from Defendants, the Settlement

14   Administrator will mail the Notices of Settlement to each Class Member. *Id.*

15       With respect to Class Notices returned as undeliverable, the Settlement Administrator will re-

16   mail any Notices returned to the Settlement Administrator with a forwarding address following

17   receipt of the returned mail. *Id.,* ¶ 115. If any Notice is returned to the Settlement Administrator

18   without a forwarding address, the Settlement Administrator will undertake reasonable efforts to

19   search for the correct address, including skip tracing, and will promptly re-mail the Settlement Notice

20   to any newly found address. *Id.*

21       Rule 23 Class Members will have 60 days from the mailing of the Notices of Settlement to

22   opt-out or object to the Settlement, consistent with the Northern District's Procedural Guidance for

23   Class Action Settlements. *Id.*, ¶ 116. Any Rule 23 Class Member who does not submit a timely request

24   to exclude themselves from the Settlement will be deemed a Participating Individual whose rights

25   and claims are determined by any order the Court enters granting final approval, and any judgment

26

27

28

the Court ultimately enters in the case.[26] *Id.* Administration of the Settlement will follow upon the Court's issuance of final approval of the Settlement. *Id.,* ¶ 26.g. The Settlement Administrator will provide Class Counsel and Defendants' Counsel with a report of all Settlement payments within 10 business days after the Notice Deadline (the opt-out and objection deadline). *Settlement,* ¶ 20.g, 2.r.

Because the proposed Notice of Settlement clearly and concisely describe the terms of the Settlement and the awards and obligations for Class Members who participate, and because the Notice will be disseminated in a way calculated to provide notice to as many Class Members as possible, the Notice of Settlement should be preliminarily approved.

## H. The Court Should Approve the Proposed Schedule.

The Settlement Agreement contains the following proposed schedule, which Plaintiff respectfully requests this Court approve:

| | |
|---|---|
| Date of preliminary approval of the Settlement as to Class and approval of the Settlement as to the Collective | |
| Deadline for Defendants to provide JND Legal Administration with the Class List | Within 10 business days after the Court's preliminary approval of the Settlement |
| Deadline for JND Legal Administration to mail the Notice of Settlement to Class Members | Within 10 business days after JND Legal Administration receives the Class List |
| Deadline for Rule 23 Class Members to postmark requests to opt-out or file objections to the Settlement | 60 days after Notice of Settlement are mailed |
| Deadline for JND Legal Administration to provide all counsel with a report showing (i) the names of Rule 23 Class Members and Opt In Plaintiffs; (ii) the Individual Settlement Payments owed to each Rule 23 Class Member and Opt In Plaintiff; (iii) the final number of Rule 23 Class Members who have submitted objections or valid letters requesting exclusion from the Settlement; and (iv) the number of undeliverable Notices of Settlement. | Within 10 business days after the opt out/objection deadline (the "Notice Deadline") |
| Deadline for filing of Final Approval Motion | At least 35 days before Final Approval Hearing |
| Deadline for JND Legal Administration to provide the Court and all counsel for the Parties with a statement detailing the Settlement | As soon as practicable |

---

[26] However, Rule 23 Class Members who are not the Named Plaintiff or Opt-In Plaintiffs will only release FLSA claims (related to their work in California) if they endorse or cash their Individual Settlement Payment checks.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.,* Case No. 3:18-cv-06741-LB

| | |
|---|---|
| Administration Costs and its administration of the Notice of Settlement process | |
| Final Approval Hearing | At least 30 days after Notice Deadline |
| Effective Date | (i) If there is an objection(s) to the settlement that is not subsequently withdrawn, then the date upon the expiration of time for appeal of the Court's Final Approval Order; or (ii) if there is a timely objection(s) and appeal by an objector(s), then after such appeal(s) is dismissed or the Court's Final Approval Order is affirmed on appeal; or (iii) if there are no timely objections to the settlement, or if any objections which were filed are withdrawn before the date of final approval, then the first business day after the Court's order granting Final Approval of the Settlement |
| Deadline for JND Legal Administration to calculate the employer share of taxes and provide Defendants with the total amount of Defendants' Payroll Taxes | Within 5 business days after final Settlement Award calculations are approved |
| Deadline for Defendants to pay the Gross Settlement Amount in the Interest-Bearing Escrow Account | Within 10 business days after execution of the Settlement Agreement |
| Deadline for Interest-Bearing Escrow Administrator to transfer the Gross Settlement Amount into the Qualified Settlement Account | Within 10 business days after Court's Final Approval Order |
| Deadline for JND Legal Administration to make payments under the Settlement to Participating Individuals, the LWDA, Class Representative, Plaintiff's counsel, and itself | Within 30 days after the Effective Date or as soon as reasonably practicable |
| Check-cashing deadline | 180 days after issuance |
| Deadline for JND Legal Administration to tender uncashed check funds to cy pres recipient Legal Aid at Work or redistribute such uncashed funds to Participating Individuals who cashed their Settlement Award checks | As soon as practicable after check-cashing deadline |
| Deadline for JND Legal Administration to provide written certification of completion of administration of the Settlement to counsel for all Parties and the Court | As soon as practicable after check-cashing deadline |

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant preliminary approval of the Settlement Agreement as to the Rule 23 Class and approval of the Settlement Agreement as to the Collective, in accordance with the schedule set forth herein.

Date: October 9, 2020

Respectfully submitted,

/s/ *Ori Edelstein*
Carolyn H. Cottrell
Ori Edelstein
Michelle S. Lim
SCHNEIDER WALLACE
COTTRELL KONECKY LLP

Attorneys for Plaintiff and the Putative Class, Collective, Aggrieved Employees, and State of California

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.,* Case No. 3:18-cv-06741-LB

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that I electronically filed the foregoing document with the Clerk of the Court

3  for the United States District Court, Northern District of California, by using the Court's CM/ECF

4  system on October 9, 2020.

5      I certify that all participants in the case are registered CM/ECF users and that service will be

6  accomplished by the Court's CM/ECF system.

7

Dated: October 9, 2020                Respectfully submitted,
8
9                                      */s/ Ori Edelstein*
                                       Carolyn H. Cottrell
10                                     Ori Edelstein
                                       Michelle S. Lim
11                                     SCHNEIDER WALLACE
                                       COTTRELL KONECKY LLP
12
                                       Attorneys for Plaintiff and the Putative Class,
13                                     Collective, Aggrieved Employees, and State of
                                       California
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.*, Case No. 3:18-cv-06741-LB