UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ANGEL VILLAFAN, on behalf of themselves and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BROADSPECTRUM DOWNSTREAM SERVICES, INC.,<br><br>Defendant. | Case No. 18-cv-06741-LB<br><br>**PRELIMINARY APPROVAL ORDER**<br><br>Re: ECF No. 129 |

## INTRODUCTION

The plaintiffs — current and former nonexempt employees who provide safety and support services at Broadspectrum's oil refineries — challenge Broadspectrum's alleged failure to pay them for their off-the-clock work, provide meal-and-rest breaks, or reimburse expenses, in violation of federal and state wage-and-hours laws. It is a putative collective action under the Federal Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and a putative class action under Federal Rule of Civil Procedure 23.[1] The parties settled the case, and the plaintiffs moved for

---

[1] Second Am. Compl. ("SAC") – ECF No. 124. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 18-cv-06741-LB

preliminary approval of the class-action settlement and approval of the collective-action settlement.[2] The court grants the unopposed motion.

## STATEMENT

**1. The Lawsuit**

The plaintiff filed the lawsuit on November 6, 2018 and a first amended complaint ("FAC") on February 1, 2019 (with an FLSA claim, California Labor Code wage-and-hours claims, and a claim for penalties under California's Private Attorneys General Act ("PAGA").[3] They engaged in discovery, first through formal requests for production and interrogatories, and then (by agreement) through extensive informal discovery to prepare for mediation.[4] The plaintiffs deposed Broadspectrum's corporate representative under Federal Rule of Civil Procedure 30(b)(6), covering corporate organization and decision-making responsibilities, policies and practices for wage-and-hours issues, and other issues relevant to the class members' job duties, responsibilities, equipment, and off-the-clock work.[5] The plaintiff's counsel completed extensive outreach with the class and collective members covering topics relevant to the lawsuit.[6] As part of this process, Broadspectrum produced, and the plaintiff's counsel reviewed, over 1,140 documents, including policies, payroll records, and job-assignment documents.[7] Broadspectrum produced data that allowed the plaintiff's counsel to evaluate class and collective damages.[8]

The parties had multiple mediations with Jeff Ross, a respected wage-and-hours mediator, and ultimately accepted his mediator's proposal and settled the case.[9] As part of that settlement, they stipulated to the filing of a second amended complaint ("SAC") — which is the operative

---

[2] Mot. – ECF No. 129.
[3] Compl. – ECF No. 1; First Am. Compl. ("FAC") – ECF No. 16.
[4] Cottrell Decl. – ECF No. 129-1 at 9 (¶ 14).
[5] *Id.* (¶ 15).
[6] *Id.* at 10 (¶¶ 16–17).
[7] *Id.* (¶ 18).
[8] *Id.*
[9] Settlement Agreement – ECF No. 129-2 at 7 (¶ 7).

complaint — adding T.R.S.C. as a named defendant.[10] The parties delayed the settlement by 60 days to allow the defendants to fund it in light of the COVID-19 pandemic. As part of that process, they reduced the settlement fund from $5.5 million to $5 million.[11] The plaintiffs filed the unopposed motion for preliminary approval of the class-action settlement and approval of the FLSA collective settlement.[12] The court held a hearing on November 19, 2020. All parties consented to magistrate-judge jurisdiction.[13]

## 2. Proposed Settlement

### 2.1 Settlement Class

There are approximately 1,862 class members.[14] The class and collective definitions are as follows:

> The "California Class" or "Members of the California Class" means all current and former hourly, non-exempt employees of Broadspectrum or TRSC who performed work in California between November 6, 2014 through the date of Preliminary Approval, excluding (i) any staff, other administrative employees, and maintenance workers, and (ii) employees who have previously released all of their claims pursuant to the settlement agreement in *Kevin Woodruff v. Broadspectrum Downstream Services, Inc.*, 3:14-CV-04105-EMC. A "Class Member" is a member of the Class. There are approximately one thousand eight hundred and sixty-two (1,862) Class Members.
>
> . . .
>
> The "Collective" or "Collective Members" or "Opt-in Plaintiffs" is a certified collective action for settlement purposes only pursuant to 29 U.S.C. § 216(b), which includes all individuals who are or were employed by Broadspectrum or TRSC and filed a consent to join the Action at any time from and including November 6, 2015 through and including the date of Preliminary Approval.[15]

---

[10] SAC – ECF No. 124.

[11] Cottrell Decl. – ECF No. 129-1 at 11 (¶¶ 22–23).

[12] Mot. – ECF No. 129.

[13] Consent Forms – ECF Nos. 7 & 10.

[14] Mot. – ECF No. 129 at 27.

[15] Settlement Agreement – ECF No. 129-2 at 3 (¶ 2.b–c).

ORDER – No. 18-cv-06741-LB            3

The parties stipulated to, and the court approved, conditional certification of the FLSA collective on June 11, 2019.[16] To date, 842 members have filed opt-in notices.[17]

### 2.2 Settlement Amount and Allocation

The total non-reversionary Gross Settlement Amount is $5,000,000, and the Net Settlement Amount recovered by the class is approximately $3,216,730.00 after the following deductions: (1) $31,500 to the Labor & Workforce Development Agency ("LWDA") for the PAGA claim; (2) up to $15,000 for an enhancement payment to the named plaintiff; (3) an estimated $30,130 for the claims administrator's expenses; and (4) attorney's fees of no more than one third of the Gross Settlement Amount (or $1,666,666.66) plus costs not to exceed $40,000.[18]

The class members will receive a settlement check without submitting a claim form.[19] Each member's settlement share will be calculated based on the number of weeks the member worked during the applicable limitations period (November 6, 2014 to the date of the preliminary approval (for California class members) and November 6, 2015 or three years before the date of the opt-in notice to the date of preliminary approval, whichever is earliest (for opt-in plaintiffs in all states other than California)).[20] Participating plaintiffs who worked for the defendants at any time in California from November 6, 2017 through the date of preliminary approval will receive an equal part of the net PAGA amount.[21] Each workweek is equal to one settlement share, but to reflect the increased value of state-law claims and differing rates of pay by state, a workweek in California is weighted more heavily: a California workweek is equal to three settlement shares, and a workweek for an opt-in plaintiff in any other state than California is equal to one settlement share.[22] If a Rule 23 class member who also is an opt-in plaintiff opts out of the Rule 23

---

[16] Stipulation and Order – ECF No. 26.

[17] Notice – ECF No. 114.

[18] Mot. – ECF No. 129 at 18–19.

[19] Settlement Agreement – ECF No. 129-2 at 16 (¶ 29).

[20] *Id.* at 17 (¶ 31.a).

[21] *Id.* at 17–18 (¶ 31.b).

[22] *Id.* at 17 (¶ 31.a.ii).

settlement, that plaintiff will receive credit for all workweeks nationwide for three years before the date of the filing of the opt-in notice to the date of preliminary approval.[23] In this circumstance, the workweeks will not be weighted, meaning, all workweeks are equal to one settlement share for the FLSA collective, even for work in California.[24]

The total number of settlement shares (as weighted) for all settling members will be added together, and the Net Settlement Amount will be divided by that amount to reach a per-share dollar figure.[25] The resulting per-share dollar figure will be multiplied by the number of each participating member's settlement shares (as weighted) to arrive at the Individual Settlement Payment.[26] The Class/Collective Notice will provide the estimated Individual Settlement Payment and the number of Workweeks for each member, assuming full participation in the settlement.[27] Those calculations will be based on employee workweek information that the defendants will provide to the Settlement Administrator, but members will be able to dispute their workweeks by submitting evidence.[28]

Settlement checks will be mailed within 30 days of the Effective Date (the first business day after a final approval order if there are no pending objections and otherwise after the appeal time expires, the appeal is dismissed, or the final approval order is affirmed) and are valid for 180 days after issuance.[29] Any funds from checks that expire or are returned as undeliverable will either (1) revert to the *cy pres* beneficiary Legal Aid at Work if less than $75,000 or (b) be redistributed to the participating members who negotiated their checks on a pro rata basis if $75,000 or more.[30]

In arriving at the assessment that the settlement amount is reasonable, the plaintiff's counsel did a damages assessment based on average rates of pay, assumed 10 minutes off-the-clock work

---

[23] *Id*. at 17 (¶ 31.a.ii).
[24] *Id*. at 16–18 (¶¶ 29–31).
[25] *Id*. at 17 (¶ 31.a.iii).
[26] *Id*.
[27] Notice – Ex. A to Settlement Agreement – ECF No. 129-2 at 27–33.
[28] Settlement Agreement – ECF No. 129-1 at 12, 18 (¶¶ 21, 33).
[29] *Id*. at 4 (¶ 2.j), 19 (¶¶ 37–38).
[30] *Id*. at 19–20 (¶¶ 38–39).

and 25-percent missed meal-and-rest breaks (daily) and calculated the resulting substantive exposure both for the core unpaid wages claims and also considering meal-and-rest-break claims, derivative claims, and potential penalties.[31] The $5 million settlement amount is approximately 22 percent of $23 million (the estimated damages for the core unpaid wage claims) and 10.2 percent of the plaintiff's best-case scenario for $48.6 million (damages that include meal-and-rest breaks, derivative claims, and potential penalties).[32] Risks of litigation include the nature of the off-the-clock work, the different refineries and locations where the members work, and different job titles and assignments, which complicates certification efforts and proving claims on the merits.[33] Settlement results in immediate payment to class members in meaningful amounts (an average recovery of $1,682.38 per member or approximately $97.65 per workweek).[34]

**2.3   Release**

The scope of release depends on whether the participant is an opt-in plaintiff or a Rule 23 class member. The FLSA opt-in plaintiffs release their FLSA claims arising out of the same factual predicates of the actions, the California class members release their state-law claims related to the same factual predicates and the FLSA claims if they cash the checks (but will not release the FLSA claims if they are not opt-in plaintiffs and do not cash their checks), and the named plaintiff agrees to a general release.[35]

**2.4   Administration**

JND Legal Administration will administer the settlement for an estimated $30,152.[36] It will send the class notice by mail and email, calculate the settlement payments, calculate all payroll taxes, withholdings, and deductions, and issue the payments to class members, the LWDA,

---

[31] Cottrell Decl. – ECF No. 129-1 at 12–13 (¶¶ 29–38).

[32] *Id*. at 14 (¶ 39).

[33] *Id*. (¶ 40).

[34] *Id*. (¶ 41).

[35] Settlement Agreement – ECF No. 129-2 at 8 (¶ 15).

[36] *Id*. at 6 (¶ 2.y–z); *see* Cottrell Decl. – ECF No. 129-1 at 17–18 (¶¶ 54–56) (describing a settlement-administration process consistent with the Northern District's procedural guidance for class-action settlements).

counsel, the class representative, and applicable state and federal tax authorities.[37] It will prepare and file all tax returns and reporting.[38] It will establish a toll-free call center for any questions by members and a settlement website that will have the class, collective, and class/collective notices (in generic form), the settlement agreement, and all papers filed to obtain preliminary and final approval of the settlement.[39] Other administration procedures — including notice, administration, procedures for exclusion, and procedures for objections — are set forth in the settlement agreement.[40]

## ANALYSIS

### 1. Jurisdiction

The court has federal-question jurisdiction under 28 U.S.C. § 1331 for the FLSA claim and supplemental jurisdiction under 28 U.S.C. § 1367 for the state-law claims.

### 2. Conditional Certification of Settlement Class and Approval of FLSA Collective

#### 2.1 Conditional Certification of Settlement Class Under Rule 23

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because the court will not have the opportunity to adjust the class based on information revealed at trial. *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Espinosa v. Ahearn (In re Hyundai and Kia Fuel Econ. Litig.)*, 926 F.3d 539, 557 (9th Cir. 2019) (en banc).

Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable"; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or

---

[37] Settlement Agreement – ECF No. 129-2 at 10–12 (¶ 20.b–g).
[38] *Id*. at 18 (¶ 34).
[39] *Id*. at 10 (¶ 20.b).
[40] *Id*. at 10–14 (¶¶ 20–25).

defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *In re Hyundai and Kia*, 926 F.3d at 556. Also, the common questions of law or fact must predominate over any questions affecting only individual class members, and the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

The court finds preliminarily (and for settlement purposes only) that the Rule 23(a) factors — numerosity, commonality, typicality, and adequacy — support the certification of the class. It also finds preliminarily under Rule 23(b)(3) (and for settlement purposes only) that the common questions predominate over any questions affecting only individual members, and a class action is superior to other available methods.

First, there are approximately 1,862 class members.[41] The class is numerous. *Nelson v. Avon Prods.*, No. 14-cv-02276-BLF, 2015 WL 1778326, at *5 (N.D. Cal. Apr. 17, 2015).

Second, there are questions of law and fact common to the class that predominate over individual issues. The class and collective members perform the same job duties: safety duties pursuant to the defendants' standards and requirements. The defendants have uniform policies that apply to all members, and the wage-and-hours violations are a result of the defendants' standardized policies and procedures, including the following (1) the same hiring and training process; (2) timekeeping, payroll, and compensation policies; (3) meal-and-rest policies and practices; and (4) reimbursement policies.[42] Because the claims arise from the defendants' uniform practices applied to employees with the same job responsibilities, liability can be determined on a class-wide basis. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Betorina v. Ranstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *4 (N.D. Cal. Apr. 6, 2017).

Third, the claims of the representative plaintiff are typical of the claims of the class. The representative plaintiff and all class members allege wage-and-hours violations based on similar

---

[41] Cottrell Decl. – ECF No. 129-1 at 19 (¶ 62).
[42] *Id.* at 19 (¶ 63).

facts. They possess the same interest and suffer from the same injury. *Betorina*, 2017 WL 1278758, at *4.

Fourth, the representative plaintiff fairly and adequately protects the interests of the class. The factors relevant to a determination of adequacy are (1) the absence of potential conflict between the named plaintiff and the class members, and (2) counsel chosen by the representative party who is qualified, experienced, and able to vigorously conduct the litigation. *In re Hyundai and Kia*, 926 F.3d at 566 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). The court is satisfied that the factors exist here: the named plaintiff has shared claims and interests with the class (and no conflicts of interest) and has retained qualified and competent counsel who have prosecuted the case vigorously. *Id.*; *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1021–22.

Finally, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The class members have relatively small monetary claims, and the class action resolves many substantially identical claims efficiently, avoiding a waste of resources, to advance the individual members' interests.

In sum, the prerequisites of Fed. R. Civ. P. 23(a) and (b)(3) are met. The court conditionally certifies the class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only and for the purpose of giving the class notice of the settlement and conducting a final approval hearing.

### 2.2   FLSA Class

The FLSA authorizes opt-in representative actions where the complaining parties are "similarly situated" to other employees. 29 U.S.C. § 216(b); *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1042 (2016). On June 11, 2019, the court approved conditional certification of the FLSA collective and now confirms that approval.[43] 842 members have filed opt-in notices.[44] As discussed above, the class representative is similarly situated to other collective members.

---

[43] Stipulation and Order – ECF No. 26.

[44] Notice – ECF No. 114.

### 3. Preliminary Approval of Settlement

The approval of a class-action settlement has two stages: (1) the preliminary approval, which authorizes notice to the class; and (2) a final fairness hearing, where the court determines whether the parties should be allowed to settle the class action on the agreed-upon terms.

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *In re Hyundai and Kia*, 926 F.3d at 556. A court may approve a proposed class-action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1026–27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: "[(1)] the strength of the plaintiff's case; [(2)] the risk, expense, complexity, and likely duration of further litigation; [(3)] the risk of maintaining class-action status throughout trial; [(4)] the amount offered in settlement; [(5)] the extent of discovery completed and the stage of the proceeding; [(6)] the experience and views of counsel; [(7)] the presence of a government participant; and [(8)] the reaction of the class members to the proposed settlement." *Id.* at 1026 (citation omitted).

When parties "negotiate a settlement agreement before the class has been certified, "settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Roes, 1–2 v. SFBSC Management*, 944 F.3d 1035, 1043 (9th Cir. 2019) (quoting *Dennis v. Kellogg*, 697 F.3d, 858, 864 (9th Cir. 2012)). "Specifically, 'such settlement agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Id*. at 1049 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011)).

The court has evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that preliminary approval is appropriate. Overall, the settlement appears fair. The settlement agreement was the result of an adversarial, non-collusive, and arms-

length negotiation process. It provides good value, given the risks of litigation, the parties' disputes about damages, and the value of money to the plaintiffs now.[45] As discussed above, counsel reached the settlement only after obtaining discovery sufficient to allow a robust damages assessment. It ensures that longer-tenured employees receive a greater recovery, and it tracks differences in substantive aw and penalty claims by weighting the workweek shares more heavily for work performed in California.[46] Also, off-the-clock claims can be difficult to certify because they can involve individualized determinations. *In re AutoZone, Inc., Wage & Hours Emp't. Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), *aff'd*, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019).

For the same reasons, the court approves the settlement of the FLSA collective action.

The PAGA allocation is within the range of reasonable settlements. *See, e.g.*, *Viceral v. Mistras Grp.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *8–9 (N.D. Cal. Oct. 11, 2016).

The court will address attorney's fees at the final fairness hearing. *Hanlon*, 150 F.3d at 1029 (twenty-five percent is a benchmark in common-fund cases); *cf. Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (25-percent benchmark, though a starting point for analysis, may be inappropriate in some cases; fees must be supported by findings).

**4. Appointment of Class Representative, Class Counsel, and Claims Administrator**

The court appoints the named plaintiff Angel Villafan as collective representative for the collective and (provisionally) as the class representative. The plaintiff is an adequate representative of the other members and has claims that are typical of the members' claims

The court appoints Schneider Wallace Cottrell Konecky LLP as counsel for the collective and provisionally appoints them as class counsel for settlement purposes only. *See* Fed. R. Civ. P. 23(a) & (g)(1). They have the requisite qualifications, experience, and expertise in prosecuting class and collective actions.

---

[45] Cottrell Decl. – ECF No. 129-1 at 25 (¶¶ 94–96).
[46] *Id*. at 22 (¶ 79).

The court approves the retention of JND Legal Administration as the settlement administrator. The administrator will administer the settlement in accordance with the terms in the settlement agreement.

### 5. Class Notice

The court approves the class notice and plan. The court finds that the class notice provides the best notice practicable, satisfies the notice requirements of Rule 23, adequately advises class members of their rights under the settlement agreement, and meets the requirements of due process. *In re Hyundai and Kia*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (internal quotation marks omitted) (quoting *Rodriguez*, 563 F.3d at 962). The notice fairly, plainly, accurately, and reasonably provide class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the classes; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the release of the claims should they remain class members; (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) the date, time, and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards.[47]

### 6. Service Awards

District courts must evaluate proposed awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (citation omitted). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to

---

[47] Settlement Notice, Ex. A to Settlement Agreement – ECF No. 129-2 at 26–33.

make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59 (citation omitted). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice . . . ." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). The Ninth Circuit also has emphasized that district courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164.

The court defers consideration of the award until the final approval hearing.

### 7. *Cy Pres* Award

The *cy pres* distribution appears to account for and have a substantial nexus to the nature of the lawsuit, the objectives of the statutes, and the interests of the silent class members. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819–22 (9th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038–41 (9th Cir. 2011). The court defers the consideration of any *cy pres* award to the final approval hearing.

### 8. Compliance with Class Action Fairness Act

"The Class Action Fairness Act of 2005 (CAFA) added an additional component to settlement notice, namely that certain government officials — whether or not themselves class members — must receive notice of *any class action* settled in federal court." *Newberg on Class Actions*, § 8:18 (emphasis added). In other non-CAFA cases, the parties have sent the notice. At the hearing, the parties said that they will provide notice of the settlement — which is deemed filed as of the date of this order — and other information showing compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the appropriate federal and state officials. Any final settlement approval will be more than 90 days after service as required by 28 U.S.C. § 1715.

## 9. Procedures for Final Approval Hearing

### 9.1 Deadlines[48]

| Event | Date |
|---|---|
| Preliminary Approval Order Filed | November 19, 2020 |
| Defendants to provide class list to JND Legal Administration | Within 10 business days after the court's preliminary approval of the settlement |
| JND Legal Administration to mail the Notice of Settlement to Class Members | Within 10 business days after JND Legal Administration receives the Class List |
| Deadline for Rule 23 Class Members to postmark requests to opt-out or file objections to the Settlement | 60 days after Notices of Settlement are mailed |
| JND Legal Administration to provide all counsel with a report showing (i) the names of Rule 23 Class Members and Opt-In Plaintiffs; (ii) the Individual Settlement Payments owed to each Rule 23 Class Member and Opt-In Plaintiff; (iii) the final number of Rule 23 Class Members who have submitted objections or valid letters requesting exclusion from the Settlement; and (iv) the number of undeliverable Notices of Settlement. | Within 10 business days after the opt out/objection deadline (the "Notice Deadline") |
| Deadline for filing of Final Approval Motion (to be heard with the fees motion at the Final Approval Hearing) | 35 days before Final Approval Hearing |
| Deadline for JND Legal Administration to provide the Court and all counsel for the Parties with a statement detailing the Settlement Administration Costs and its administration of the Notice of Settlement process | As soon as practicable |
| Final Approval Hearing | April 8, 2021, at 9:30 a.m. (which is at least 30 days after Notice Deadline) |

---

[48] The deadlines are from the proposed order at ECF No. 129-3.

United States District Court
Northern District of California

| Effective Date | (i) If there is an objection(s) to the settlement that is not subsequently withdrawn, then the date upon the expiration of time for appeal of the Court's Final Approval Order; or (ii) if there is a timely objection(s) and appeal by an objector(s), then after such appeal(s) is dismissed or the Court's Final Approval Order is affirmed on appeal; or (iii) if there are no timely objections to the settlement, or if any objections which were filed are withdrawn before the date of final approval, then the first business day after the Court's order granting Final Approval of the Settlement |
|---|---|
| Deadline for JND Legal Administration to calculate the employer share of taxes and provide Defendants with the total amount of Defendants' Payroll Taxes | Within 5 business days after final Settlement Award calculations are approved |
| Deadline for Defendants to pay the Gross Settlement Amount in the Interest-Bearing Escrow Account | Within 10 business days after execution of the Settlement Agreement |
| Deadline for Interest-Bearing Escrow Administrator to transfer the Gross Settlement Amount into the Qualified Settlement Account | Within 10 business days after Court's Final Approval Order |
| Deadline for JND Legal Administration to make payments under the Settlement to Participating Individuals, the LWDA, Class Representative, Plaintiff's counsel, and itself | Within 30 days after the Effective Date or as soon as reasonably practicable |
| Check-cashing deadline | 180 days after issuance |
| Deadline for JND Legal Administration to tender uncashed check funds to cy pres recipient Legal Aid at Work or redistribute such uncashed funds to Participating Individuals who cashed their Settlement Award checks | As soon as practicable after check-cashing deadline |
| Deadline for JND Legal Administration to provide written certification of completion of administration of the Settlement to counsel for all Parties and the Court | As soon as practicable after check-cashing deadline |

**9.2    Objections and Exclusions**

The court adopts the procedures in the settlement agreement and in the class notice.

**9.3    Other Orders**

Pending further order of the court, all proceedings are stayed except those contemplated in this order and in the Settlement Agreement, and all deadlines except the Final Approval Hearing are vacated. If the court does not file a final approval order and judgment, the proposed Settlement subject to this order and all evidence and proceedings in connection with the Settlement will be null and void. The court may, for good cause, extend any of the deadlines set forth in this order or adjourn or continue the Final Approval Hearing without further notice to the Class.

## CONCLUSION

The court grants the plaintiffs' motion and (1) conditionally certifies the provisional California class for settlement purposes only, preliminarily approves the settlement, and authorizes the notice as set forth in this order, (2) confirms its June 11, 2019 order conditionally certifying the collective and approves the settlement of the FLSA collective, (3) approves JND Legal Administration as the Settlement Administrator, (4) provisionally appoints the named plaintiff Angel Villafan as class representative and provisionally appoints Schneider Wallace Cottrell Konecky LLP as class counsel, (5) appoints the named plaintiff as the collective representative and Schneider Wallace Cottrell Konecky LLP as counsel for the collective, (6) orders the procedures in this order (including all dates in the chart), and (7) orders the parties and the settlement administrator to carry out their obligations in the settlement agreement.

This disposes of ECF No. 129.

**IT IS SO ORDERED.**

Dated: November 20, 2020

LAUREL BEELER
United States Magistrate Judge