Carolyn H. Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
Michelle S. Lim (SBN 315691)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Attorneys for Plaintiff and the Putative Class,
Collective, Aggrieved Employees, and
State of California

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL VILLAFAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>BROADSPECTRUM DOWNSTREAM SERVICES, INC., d/b/a BROADSPECTRUM AMERICAS, INC., d/b/a TRANSFIELD SERVICES, formerly TIMEC COMPANY, INC.; and T.R.S.C., INC.,<br><br>    Defendants. | Case No. 3:18-cv-06741-LB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>Date: April 8, 2021<br>Time: 9:30 a.m.<br>Courtroom: B, 15th Floor<br>Judge: Hon. Laurel Beeler<br><br>Complaint Filed:   11/06/2018<br>Trial Date:        None |

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on April 8, 2021, at 9:30 a.m. in Courtroom B, 15th Floor, before Hon. Laurel Beeler of the United States District Court, Northern District of California, Plaintiff Angel Villafan ("Plaintiff") moves the Court for final approval of the Stipulation of Class, Collective, and Representative Action Settlement (the "Settlement Agreement" or the "Settlement")[1] as to the California Class, and approval of the Settlement as to the Collective. The Settlement globally resolves all of the claims in these actions on a class and collective basis. In particular, Plaintiff moves for orders:

(1)    Granting final approval of the Settlement Agreement as to the California Class;

(2)    Certifying the California Class for settlement purposes;

(3)    Finally approving Plaintiff Villafan as Class Representative for the Class and Collective Representative for the Collective;

(4)    Finally approving Schneider Wallace Cottrell Konecky LLP as Counsel for the Class and Collective;

(5)    Finally approving payment of $30,130.00 from the Settlement to the Settlement Administrator, JND Legal Administration, as compensation for administering the Settlement;

(6)    Finally approving the following implementation schedule;

| | |
|---|---|
| Effective Date | (i) If there is an objection(s) to the settlement that is not subsequently withdrawn, then the date upon the expiration of time for appeal of the Court's Final Approval Order; or (ii) if there is a timely objection(s) and appeal by an objector(s), then after such appeal(s) is dismissed or the Court's Final Approval Order is affirmed on appeal; or (iii) if there are no timely objections to the settlement, or if any objections which were filed are withdrawn before the date of final approval, then the first business day after the Court's order granting Final Approval of the Settlement |
| Deadline for JND to calculate employer share of | Within 5 business days after the final |

---

[1] The Settlement was previously filed at ECF 129-2, and was preliminary approved by this Court on November 20, 2020. *See* ECF 134.

| taxes and provide Defendants with total employer tax contributions | Settlement Award calculations are approved |
| Deadline for Defendants to deposit the amount of Defendants' Payroll Taxes into the Qualified Settlement Account | Within 7 business days after the Settlement Administrator provides Defendants with the amount of total employer tax contributions due |
| Deadline for JND to make payments under the Settlement to Participating Individuals, the LWDA, Class Representatives, Plaintiffs' counsel, and itself | Within 30 days after the Effective Date or as soon as reasonably practicable |
| Check-cashing deadline | 180 days after issuance |
| Deadline for JND Legal Administration to tender uncashed check funds to cy pres recipient Legal Aid at Work or redistribute such uncashed funds to Participating Individuals who cashed their Settlement Award checks | As soon as practicable after check-cashing deadline |
| Deadline for JND to provide written certification of completion of administration of the Settlement to counsel for all Parties and the Court | As soon as practicable after redistribution of uncashed check funds to those Class Members who cashed their Individual Settlement Payment checks, or transfer to the *cy pres* recipient |

(7)    And entering final judgment with the terms of the Settlement.

Plaintiff brings this Motion pursuant to Federal Rules of Civil Procedure 23(e). The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Carolyn Hunt Cottrell, and all other records, pleadings, and papers on file in the consolidated and related actions and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiff also submits a Proposed Order Granting Final Approval of Class and Collective Action Settlement and a Proposed Judgment with her moving papers.

Date: March 3, 2021                    Respectfully submitted,


                                       */s/ Carolyn Hunt Cottrell*
                                       Carolyn Hunt Cottrell
                                       Ori Edelstein
                                       Michelle S. Lim
                                       SCHNEIDER WALLACE
                                       COTTRELL KONECKY LLP

                                       Attorneys for Plaintiff and the Putative Class, Collective, Aggrieved Employees, and State of California

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................... iii

I.      INTRODUCTION ...................................................................................................... 1

        A.      Factual Background .......................................................................... 3

        B.      Procedural History .......................................................................... 4

                1.      The Pleadings ..................................................................4

                2.      Plaintiff's Class Claims...................................................4

                3.      FLSA Conditional Certification......................................5

                4.      Discovery ........................................................................ 5

                5.      Mediation and Settlement................................................6

                6.      Preliminary Approval......................................................7

                7.      Notice of Settlement and Response of Class Members .................8

II.     TERMS OF THE SETTLEMENT ............................................................................ 9

        A.      Basic Terms and Value of the Settlement................................................ 9

        B.      Class and Collective Definitions.......................................................... 11

        C.      Allocation and Awards .......................................................................... 12

        D.      Scope of Release and Final Judgment .................................................... 14

        E.      CAFA Notice ......................................................................................... 15

III.    ARGUMENT............................................................................................................. 15

        A.      Ninth Circuit Precedent Favors and Encourages Class Settlements..................... 15

        B.      The Court Should Finally Approve the Settlement ................................. 16

                1.      The best practicable notice was provided to the Class Members in accordance with the process approved by the Court....................................17

                2.      The terms of the Settlement are fair, reasonable, and adequate...................18

                3.      The Parties have agreed to distribute settlement proceeds tailored to the Class and Collective and their respective claims..........................................20

                4.      The extensive informal discovery enabled the Parties to make informed decisions regarding settlement...........................................................21

i

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.*, Case No. 3:18-cv-06741-LB

5.    While Plaintiff recognizes the strength of their claims, there are substantial risks in proceeding with the litigation..........................................................21

6.    The settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel. ..................................................23

7.    Class Members approve of the Settlement....................................................23

C.    The Class Representative Service Awards Are Reasonable ................................ 24

D.    The Requested Attorneys' Fees and Costs Are Reasonable ............................... 24

E.    The Court Should Finally Certify the California Class ....................................... 24

1.    The Class is numerous and ascertainable....................................................25

2.    Plaintiff's claims raise common issues of fact or law..................................25

3.    Plaintiff's claims are typical of the claims of the Class...............................26

4.    Plaintiff and Class Counsel will adequately represent the Class. ................26

5.    The Rule 23(b)(3) requirements for class certification are also met. ...........26

IV.    CONCLUSION.................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*7-Eleven Owners for Fair Franchising*
    85 Cal.App.4th 1135 (2000) ...................................................................................... 19

*aff'd sub nom. Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992) ................................................................................... 19

*Amchem Prod., Inc. v. Windsor*
    521 U.S. 591 (1997) ................................................................................................... 27

*Balderas v. Massage Envy Franchising, LLP*
    2014 WL 3610945 (N.D. Cal. July 21, 2014) ............................................................ 18

*Bellinghausen v. Tractor Supply Co.*
    306 F.R.D. 245 (N.D. Cal. 2015) ............................................................................... 19

*Boyd v. Bechtel Corp.*
    485 F.Supp. 610 (N.D. Cal. 1979) ............................................................................. 21

*Carter v. Anderson Merchandisers, LP*
    (C.D. Cal. May 11, 2010)
    No. EDCV 08-0025-VAP OPX, 2010 WL 1946784 .................................................. 23

*Churchill Village, L.L.C. v. Gen. Elec.*
    361 F.3d 566 (9th Cir. 2004) ..................................................................................... 17

*Cody v. Hillard*
    88 F.Supp.2d 1049 (D.S.D. 2000) .............................................................................. 24

*Eddings v. Health Net, Inc.*
    (C.D. Cal. June 13, 2013)
    No. CV 10-1744-JST RZX, 2013 WL 3013867 ..................................................... 21, 22

*Franklin v. Kaypro Corp.*
    884 F.2d 1222 (9th Cir. 1989) ................................................................................... 15

*Fry v. Hayt, Hayt & Landau*
    198 F.R.D. 461 (E.D. Pa. 2000) ............................................................................ 25, 26

*Grunin v. Int'l House of Pancakes*
    513 F.2d 114 (8th Cir. 1975) ..................................................................................... 17

*Guilbaud v. Sprint Nextel Corp.*
(N.D. Cal. Apr. 15, 2016)
No. 3:13-CV-04357-VC, 2016 WL 7826649 ......................................................... 16

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ........................................................... 15, 23, 26

*Holmes v. Continental Can Co.*
706 F.2d 1144 (11th Cir. 1983) ................................................................ 20, 21

*Ikonen v. Hartz Mountain Corp.*
122 F.R.D. 258 (S.D. Cal. 1988) ...................................................................... 25

*In re Am. Bank Note Holographics, Inc.*
127 F.Supp.2d 418 (S.D.N.Y. 2001)................................................................. 23

*In re AT & T Mobility Wireless Data Services Sales Tax Litigation*
789 F.Supp.2d 935 (N.D. Ill. 2011) .............................................................. 20, 21

*In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*
289 F.R.D. 526 (N.D. Cal. 2012)...................................................................... 22

*In re Mego Financial Corp. Sec. Litig.*
213 F.3d 454 (9th Cir.2000) ............................................................................ 18

*In re Syncor ERISA Litig.*
516 F.3d 1095 (9th Cir. 2008) ......................................................................... 17

*In re Warfarin Sodium Antitrust Litig.*
212 F.R.D. 231 (D. Del. 2002) ......................................................................... 18

*In re Washington Pub. Power Supply Sys. Sec. Litig.*
720 F. Supp. 1379 (D. Ariz. 1989) ................................................................... 19

*Jones, et al. v. CertifiedSafety, et al.,*
3:2017-cv-02229, ECF 232 (N.D. Cal. June 1, 2020) ................................. 13, 16

*Kevin Woodruff v. Broadspectrum Downstream Services, Inc.,*
United States District Court Case Number 3:14-cv-04105-EMC..................... 11

*Kilbourne v. Coca-Cola Co.*
(S.D. Cal. July 29, 2015)
No. 14CV984-MMA BGS, 2015 WL 5117080.................................................. 22

*Langford v. Devitt*
127 F.R.D. 41 (S.D.N.Y. 1989) ....................................................................... 17

*Lewis v. Starbucks Corp.*
  No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ..........................21

*Linney v. Cellular Alaska P'ship*
  151 F.3d 1234 (9th Cir. 1998) ........................................................................................................19

*Ma v. Covidien Holding, Inc.*
  2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ...................................................................................18

*Mandujano v. Basic Vegetable Products, Inc.*
  541 F.2d 832 (9th Cir. 1976) ...................................................................................................17, 23

*Monterrubio v. Best Buy Stores, L.P.*
  291 F.R.D. 443 (E.D. Cal. 2013) ....................................................................................................21

*O'Connor v. Uber Techs., Inc.*
  (N.D. Cal. Sep. 13, 2019)
  No. 13-cv-03826-EMC, 2019 U.S. Dist. LEXIS 157070 ................................................................16

*Officers for Justice v. Civil Serv. Comm'n*
  688 F.2d 615 (9th Cir. 1982) ...............................................................................16, 17, 18, 20, 24

*Rinky Dink Inc. v. Elec. Merch. Sys. Inc.*
  (W.D. Wash. Dec. 11, 2015)
  No. C13-1347 JCC, 2015 WL 11234156 ........................................................................................19

*Romero v. Producers Dairy Foods, Inc.*
  235 F.R.D. 474 (E.D. Cal. 2006) ....................................................................................................25

*Soto, et al. v. O.C. Communications, Inc., et al.*
  (N.D. Cal. Oct. 23, 2019)
  Case No. 3:17-cv-00251-VC, ECF 304-305.............................................................................13, 16

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ..........................................................................................................16

*Stovall-Gusman v. W.W. Granger, Inc.*
  2015 WL 3776765 (N.D. Cal. June 17, 2015) ................................................................................18

*Torrisi v. Tucson Elec. Power Co.*
  8 F.3d 1370 (9th Cir. 1993) ............................................................................................................17

*Viceral v. Mistras Grp., Inc.*
  (N.D. Cal. Feb. 17, 2017)
  No. 15-cv-02198-EMC, 2017 U.S. Dist. LEXIS 23220 ............................................................16, 18

v

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.*, Case No. 3:18-cv-06741-LB

*Vikram v. First Student Mgmt., LLC*
   (N.D. Cal. Mar. 7, 2019)
   No. 17-CV-04656-KAW, 2019 WL 1084169 .............................................................. 18

*Wang v. Chinese Daily News, Inc.*
   737 F.3d 538 (9th Cir. 2013) ................................................................................ 25, 27

*Wren v. RGIS Inventory Specialists*
   (N.D. Cal. Apr. 1, 2011)
   No. C-06-05778 JCS, 2011 WL 1230826................................................................ 17, 23

*York v. Starbucks Corp*.
   (C.D. Cal. Nov. 23, 2011)
   No. CV 08-07919 GAF PJWX, 2011 WL 8199987 ..................................................... 22

**Statutes**

28 U.S.C. § 1715 ........................................................................................................ 12, 15

**Rules**

Fed.R.Civ. P. 23 ...................................................................................2, 12, 15, 16, 26, 27

Rule 30(b)(6) .................................................................................................................. 5

**Other Authorities**

Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*
   § 21.61 (4th ed. 2004) ................................................................................................ 15

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc.*, et al., Case No. 3:18-cv-06741-LB

## I.  INTRODUCTION

Plaintiff seeks final approval of the Settlement[1] in this class and collective action (the "Action") brought on behalf of Defendants'[2] current and former non-exempt employees who provide safety and support services at oil refinery locations of Defendants' clients throughout the United States, including in California. Plaintiff alleges that Defendants violated federal and California labor laws by failing to pay its non-exempt employees, including Safety Attendants, for all of their work, failing to provide them meal and rest periods, and failing to reimburse them for work-related expenses. The Settlement provides an exceptional recovery to resolve these workers' claims and brings closure to two years of intensive litigation, including conditional certification, mediation and exhaustive pre-mediation discovery and outreach, and extensive arm's-length negotiations between counsel.

The Settlement provides for a non-reversionary Gross Settlement Amount of $5,001,333.44, which includes interest gained on the $5,000,000.00 deposited by Defendants in an escrow account following preliminary approval. The Settlement resolves the claims of approximately 3,260 Class and Collective Members (3,208 Class Members and 52 Opt-In Plaintiffs who are not also Class Members).[3] This Settlement provides an excellent recovery to the Class and Collective for numerous wage and hour claims unlikely to have been prosecuted as individual actions. In particular, the average recovery for each of the Class Members is approximately $1,713.18 per Class Member who worked over two months – an exceptional amount considering that the typical Class Member worked

---

[1] The "Settlement" or "Settlement Agreement" refers to the Stipulation of Class, Collective, and Representative Action Settlement, filed at ECF 129-2.

[2] Defendants Broadspectrum Downstream Services, Inc. dba Broadspectrum Americas, Inc., dba Transfield Services, formerly Timec Company, Inc. ("Broadspectrum") and T.R.S.C., Inc. ("TRSC") (collectively, "Defendants").

[3] Plaintiff and members of the Class and Collective are referred to hereafter as "Safety Attendants" for ease of reading. The total number of Class Members and Collective Members was initially reported as 1,912 in Plaintiff's motion for preliminary approval. *See* ECF 129 (1,862 California Class members and 50 Opt-In Plaintiffs who are not also California Class members). The total number of these short-tenured Class Members has increased to over the course of the settlement negotiations. Declaration of Carolyn Hunt Cottrell ("Cottrell Decl.") ¶ 31. The Parties have discussed that Defendants provide further clarification regarding this increase to the Court via declaration. *Id*.

a relatively short tenure.[4]   As the Class Members' Individual Settlement Shares are based on their number of Workweeks, long-term Safety Attendants will receive larger recoveries under the Settlement. The Settlement provides for an average recovery of $646.07 per each of the 3,260 Class and Collective Members, reflecting an average of $50.32 for each workweek worked in California under the Settlement. *Id*. ¶ 60. The largest recovery for a Class Member under the Settlement is an impressive $10,884.18; 4 Class Members will receive over $10,000; 95 Class Members will receive over $5,000; and 429 Class Members will receive over $2,000. *Id*.

The Court granted preliminary approval of the Settlement as to the California Class and approval of the Settlement as to the Collective on November 20, 2020. *See* ECF 134. Following the Court's approval, notice of the Settlement was sent to the Class Members via U.S. Mail and email, on December 22, 2020. At this time, no objections have been filed, only one Class Member has opted out of the Settlement, and only 15 Class Members submitted disputes regarding their number of Workweeks, which have now been resolved. Declaration of Jennifer Keough Regarding Notice Administration ("Keough Decl."), ¶ 20.

Given the strong recovery and that the Settlement will provide significant monetary payments to laborers with modest incomes in the midst of an economic downturn, Class Counsel respectfully submits that the Court should approve the Settlement forthwith. By any measure, the Settlement provides a great benefit to the Class and Collective and an efficient outcome in the face of expanding litigation. It is fair, reasonable, and adequate in all respects. Accordingly, as set forth herein, Plaintiff respectfully submits that the Settlement should be finally approved.[5]

---

[4] Approximately 90% of the Class worked 1 year or less, 75% worked 6 months or less, and 50% worked 2 months or less. In particular, 1,526 Class Members worked less than 2 months during the Class period: 922 of the Class Members (116 of whom were also Opt-In Plaintiffs) worked one month or less for Defendants, receiving a recovery from $52.33 to $209.31, and an additional 604 Class members (66 of whom were also Opt-In Plaintiffs) worked one to two months for Defendants, ranging from $122.10 to $418.62 per individual recovery for each Class Member. Cottrell Decl., ¶ 60.
[5] In a separate motion filed concurrently with this motion, Plaintiff seeks approval of an award of attorneys' fees, costs, and service awards for the Named Plaintiff. Pursuant to the Northern District of California's Procedural Guidance for Class Action Settlements, this brief does not repeat that request nor the corresponding background information set forth in the fee, cost, and service award motion.

### A. Factual Background

Defendants serve the oil refinery industry, providing its clients, oil refinery operators throughout the United States, with personnel who specialize in planning, implementing, and executing safety protocols at refinery operations. Cottrell Decl., ¶ 7. The Class and Collective members, who are classified as non-exempt employees, carry out these safety duties at refinery operations throughout the United States, including in California, Washington, Minnesota, Illinois, Ohio, Alaska, and numerous other states. *Id*., ¶ 8. They provide support for the refinery companies' operations and protocols, including identifying, mitigating, and reporting potential safety hazards at their assigned worksites. *Id*.

Plaintiff alleges that Class Members—who work long and difficult hours, including shifts of 12 hours or more, up to seven days per week, often far away from their homes—experience wage and hour violations in their work with Defendants. *Id*., ¶ 9. In particular, Plaintiff alleges that the Class Members experience significant amounts of pre- and post-shift off-the-clock work, including unpaid, on-duty time traveling to the actual work location through the massive refinery complexes, donning and doffing protective gear, undergoing security inspections, filling out paperwork, attending safety meetings, and retrieving required equipment. *Id*., ¶ 10. Plaintiff also alleges that Class Members are required to undergo unpaid training sessions in California in order to begin working for Defendants. *Id*. Plaintiff further alleges that the Class Members cannot take timely, full, off-duty meal and rest periods, due to a lack of break relief and the need to traverse the refinery to get to designated break locations. *Id*. Moreover, Plaintiff alleges that the Class Members regularly travel to refineries around the country for multi-week assignments, but are not adequately reimbursed for travel and lodging expenses, and are required to pay out-of-pocket for equipment including fire-protective gear, gloves, and steel-toed boots. *Id*.

As a result of these alleged violations, Plaintiff alleges that Defendants systematically violate the Fair Labor Standards Act, as well as California labor law. *Id*., ¶ 11. Plaintiff alleges that throughout the relevant time period, Defendants eschewed their obligations to Plaintiff and Class Members by: (1) not paying Class Members proper minimum and overtime wages for work performed off-the-clock on a daily basis, as well as uncompensated training days; (2) failing to

provide Class Members with a reasonable opportunity to take meal and rest periods, and failing to compensate Class Members when such meal and rest periods are not taken; (3) failing to reimburse necessarily-incurred expenses; and (4) failing to issue accurate, itemized wage statements. ECF 124.

Defendants have at all times denied, and continue to deny, all of these allegations, including any liability for alleged failure to pay overtime compensation or any alleged wage payment, wage and hour or similar violation. Settlement, ¶ 9. Defendants further deny that Plaintiff's allegations are appropriate for class/collective and/or representative treatment for any purpose other than for settlement purposes only. Cottrell Decl., ¶ 12.

## B. Procedural History

### 1. The Pleadings

Plaintiff initiated this action against Defendant Broadspectrum on November 6, 2018 and filed an Amended Complaint on February 1, 2019. ECF 1, 15-16. Broadspectrum filed its Answer to the Complaint on January 1, 2019 and to the Amended Complaint on February 19, 2019. ECF 8, 17. Plaintiff alleges that Broadspectrum violated the Fair Labor Standards Act ("FLSA") and the wage and hour laws of California by failing to pay non-exempt employees their earned wages, failing to provide legally compliant meal and rest periods, and failing to reimburse for work-related expenditures. On this basis, Plaintiff brings claims against Broadspectrum on behalf of a putative FLSA collective and a putative California class, and for civil penalties under the California Labor Code Private Attorneys General Act ("PAGA").

As a result of the Settlement, the Parties agree that Plaintiff would amend the operative complaint to add Defendant TRSC as a Named Defendant. *See* Settlement, ¶ 12. On September 29, 2020, pursuant to the parties' stipulation, Plaintiff filed a motion for leave to file her Second Amended Complaint to add Defendant TRSC as a Named Defendant, which was granted by the Court on September 30, 2020. ECF 121-124.

### 2. Plaintiff's Class Claims

Plaintiff asserts claims on behalf of a California class, defined as: "All current and former hourly, non-exempt employees of Broadspectrum Downstream Services, Inc. in California during

the time period four years prior to the filing of this Complaint until the resolution of this action."

ECF 16, at p. 12. Pursuant to the Settlement, Defendant stipulated to certification of the California

Class for settlement purposes only. *See* Settlement, ¶ 11.

### 3. FLSA Conditional Certification

The Parties stipulated to conditional certification of the FLSA Collective, which was granted

on June 11, 2019.  ECF 26. Plaintiff asserts claims on behalf a nationwide Collective, defined as: "All

current and former hourly, non-exempt employees of Broadspectrum, Downstream Services, Inc. in

the United States during the time period three years prior to the filing of this Complaint until the

resolution of this action, excluding any office staff, other administrative employees, and maintenance

workers." ECF 26, at p. 7.  To date, 843 Safety Attendants filed opt-in forms in this action. *See* ECF

1131.

### 4. Discovery

Plaintiff propounded formal discovery requests on Broadspectrum, consisting of 130 requests

for production of documents and 14 special interrogatories, on April 5, 2019. Cottrell Decl., ¶ 13.

The Parties subsequently agreed to engage in mediation, and Plaintiff agreed to withdraw her formal

discovery requests in lieu of an informal discovery process for purposes of mediation. *Id.*

The Parties engaged in extensive informal discovery leading up to mediation, including a

deposition. On October 4, 2019, Plaintiff took a Rule 30(b)(6) deposition of David Dwight Matthews,

Broadspectrum's corporate representative and the President of Broadspectrum's parent company,

Ferrovial Oil Services Oil & Gas North America. *Id.*, ¶ 14. The deposition addressed topics including

Broadspectrum's corporate organization and decision-making responsibilities; its policies, practices,

procedures, and systems for wage and hour issues, compensation, timekeeping, and scheduling;

relevant investigations and reports; and the Class Members' job duties and responsibilities, the tools,

equipment and gear that they use, and any work that they perform outside of their scheduled shifts.

*Id.* Mr. Mathews testified that Ferrovial is responsible for developing the compensation policies and

practices for Refinery Workers employed by both Broadspectrum and Ferrovial's other subsidiary,

 TRSC, another company that employs Safety Attendants.  *Id.*

Plaintiff's counsel has additionally completed extensive outreach with Class and Collective Members, including over 160 in-depth interviews. *Id*., ¶ 15. The interviews covered topics including dates and locations of work, hours of work, pre-shift and post-shift off-the-clock work, meal and rest breaks, and reimbursement of work-related expenses. *Id*. Through the outreach process, Plaintiff garnered substantial factual background regarding the alleged violations, and prepared dozens of declarations, which Plaintiff's counsel utilized to build their case and to assess Defendants' potential exposure in this action. *Id*., ¶ 16. Multiple Class and Collective Members that completed interviews also provided additional documents to Plaintiff's counsel. *Id*.

Defendants additionally produced over 1,140 documents, including its general policies as well as time records, payroll records, and job assignment documents applicable to Plaintiff Villafan. *Id*., ¶ 17. Defendants also provided class-wide figures, including the total number of class members, average hourly rates, and additional data points, ahead the mediation, to enable Plaintiff's counsel to evaluate damages on a Class and Collective basis. *Id*. This discovery was produced on an informal basis to facilitate mediation. *Id*. Plaintiff's counsel completed an exhaustive review of such documents and used the information and data from them to prepare for mediation. *Id*.

### 5.   Mediation and Settlement

Plaintiff and Defendants first mediated this dispute on October 21, 2019 before Jeff Ross, a respected and experienced wage and hour mediator. Cottrell Decl., ¶ 18. This initial mediation was unsuccessful, and the parties continued to engage in numerous arm's-length negotiations facilitated by Mr. Ross. *Id*. On January 31, 2020, the Parties ultimately accepted a mediator's proposal issued by Mr. Ross, and executed a memorandum of understanding on February 21, 2020, which contained the essential terms of the instant Settlement, including an agreement that Defendants would pay an all-in, non-reversionary gross settlement amount of $5,500,000.00. *Id*., ¶ 19.

Throughout the mediation process, the Parties engaged in serious and arm's-length negotiations, culminating in the mediator's proposal. *Id.,* ¶ 20. After the mediation, counsel for the Parties worked to finalize the proposed long-form settlement agreement and corresponding notice documents, subject to the Court's approval, and finalized said documents without execution by March

23, 2020. *Id.*

On April 3, 2020, however, Defendant represented to Plaintiff a need to delay the settlement by approximately sixty days to allow sufficient time to fund the settlement in light of the COVID-19 outbreak. *Id.,* ¶ 21; ECF 108. Given the unprecedented impact of the COVID-19 crisis, the Parties extensively met and conferred over how to clear any obstacles presented by the pandemic, including deferred payment, stay of this action, and structured funding, but were unable to do so for several months. Cottrell Decl., ¶ 21; ECF 112, 115. In July 2020, Defendants represented that the COVID-19 pandemic caused severe impact on its business conditions, including its ability to borrow to fund continued business operations, and proposed reducing the gross settlement amount to a mere fraction of the initially agreed-upon amount. Cottrell Decl.*,* ¶ 21. Ultimately, following further exhaustive meet and confer efforts, the Parties agreed that Defendants would fund an all-in, non-reversionary gross settlement amount of settlement of $5,000,000.00, including all interest earned, which Defendants funded $5,000,000.00 on October 28, 2020, through the parties' agreed-upon escrow agent, Citibank. *Id.,* ¶ 22.

As the Settlement is complex, involving hybrid Rule 23 and FLSA claims, numerous Defendants, and multiple negotiations, the drafting process was lengthy. After an initial draft was completed, multiple sets of subsequent edits were required to arrive at an agreement that was acceptable to all Parties and counsel, along with a separate drafting and revision process for the Notice of Settlement, as well as the escrow agreement. *See id.,* ¶ 23.

Counsel for the Parties advised the Court of the status of the drafting process, culminating in a stipulation that set finalized deadlines for the completion of the Settlement Agreement and filing the instant motion. *See* ECF 98, 108, 112, 115. The Settlement Agreement was fully executed on September 22, 2020. Cottrell Decl.*,* ¶ 24.

### 6. Preliminary Approval

Plaintiff filed her motion for preliminary approval of the Settlement on October 9, 2020. *See* ECF 129. At the preliminary approval hearing on November 19, 2020, the Court discussed the Settlement with Class Counsel and Defendants' Counsel, and subsequently ordered that the Parties should satisfy CAFA requirements. Cottrell Decl. ¶ 25. The Court then issued its Order granting

1    Plaintiff's motion for preliminary approval on November 20, 2020. *See* ECF 134.

2                    **7.    Notice of Settlement and Response of Class Members**

3           JND Legal Administration ("JND") is responsible for distributing the Notices of Settlement,

4    calculating individual settlement payments, calculating all applicable payroll taxes, withholdings and

5    deductions, preparing and issuing all disbursements to be paid to Class Members, the Class

6    Representatives, Class Counsel, the LWDA, any applicable local, state, and federal tax authorities,

7    and handling inquiries and/or disputes from Class Members. Cottrell Decl. ¶ 26. JND is also

8    responsible for the timely preparation and filing of all tax returns, and making the timely and accurate

9    payment of all necessary taxes and withholdings. *Id*. JND established a case website,

10   http://www.broadspectrumsettlement.com/, which provides Settlement documents and information

11   and allows for the submission of electronic inquiries. *Id*. ¶ 27; Keough Decl.¶ 13.   JND also

12   established a toll-free call center to field questions, address updates, and other inquiries from Class

13   Members. Keough Decl.¶ 11.

14          Following the Court's order, JND received the Class List from Defendants on December 15,

15   2020. Keough Decl. ¶ 4. The data contained the names, last known mailing addresses, last known

16   personal email addresses, Workweeks in each of the various jurisdictions, and other personal

17   information for 3,259 Safety Attendants. *Id*. JND sent the Notices of Settlement to these workers on

18   December 22, 2020 via U.S. Mail and via email to all email addresses for the Safety Attendants. *Id*.

19   ¶¶ 7, 9.   One Class Member was originally not included on Defendants' Class List, and JND

20   subsequently mailed notice to that individual. *Id.* ¶ 6. As emails were sent to 2,038 email addresses,

     robust electronic notice was disseminated in addition to hard copy notice. *Id*. ¶ 9.

21          In order to include such information on the Notices, JND first calculated the Individual

22   Settlement Shares for every Safety Attendant using the Workweek data provided by Defendants. *See*

23   *id*. ¶ 22. The Notices informed the Class Members of: the Settlement terms; their expected share; the

24   February 20, 2021 deadline to submit objections, requests for exclusions, or disputes; the April 8,

25   2021 final approval hearing at 9:30 a.m.; and that Plaintiff would seek attorneys' fees, costs, and

26   service awards and the corresponding amounts. *Id*., Ex. A; *see also* ECF 129-2. JND included the

27   URL for the case website, the toll-free call center number, and the names and contact information for

28

Class Counsel in the Notices of Settlement. *Id*., Ex. A.

As of March 3, 2021, 319 hard-copy Notices have been returned to JND as undeliverable. *Id*. ¶ 8. JND performed skip-tracing and other techniques to identify current addresses, and 235 Notices were successfully re-mailed, leaving 84 hard-copy notices undelivered after remailing. *See id*. Out of 2,038 email Notices sent, 625 were undeliverable, and 13 email Notices were re-emailed to Class Members requesting an email version of the Notice. Keough Decl. ¶ 10.  The deadline for Class Members to opt-out, object, and dispute their reported Workweeks expired February 20, 2021. *Id.* ¶¶ 15, 17, 19; Cottrell Decl. ¶ 28.

To date, with the notice period complete, not a single objection has been filed and only one Class Member has opted out of the Settlement. Cottrell Decl. ¶ 28; Keough Decl. ¶¶ 16, 18, Ex. B. Moreover, only 15 Class Members have disputed the Workweek figures reported in their Notices.[6] Keough Decl. ¶ 20. Following final approval of the Settlement, JND will issue checks to the Class Members. *Id.*

## II.  TERMS OF THE SETTLEMENT

### A.  Basic Terms and Value of the Settlement

Defendants have agreed to pay a non-reversionary Gross Settlement Amount of $5,000,000 plus interest to settle all aspects of the case. Cottrell Decl., ¶ 29.  Defendants paid $5,000,000 into an interest-bearing escrow account, using Citibank as the escrow agent, following the execution of the Settlement on September 22, 2020. *Id.* Pursuant to the Settlement, neither Plaintiff nor Defendants may remove any portion of the Gross Settlement Amount once it has been deposited into the interest-bearing account.  *Id.* Upon final approval of the Settlement, the escrow administrator will transfer all funds, including all interest earned, into the Settlement Administrator's Qualified Settlement Fund, from which all distributions will be made. *Id.* According the Citibank, the current total of the Gross Settlement Amount as of March 2, 2021, including all interest accrued since deposit, is

---

[6] The disputes have been resolved following the gathering of additional data and information by Defendant for each dispute and meet and confer. Cottrell Decl. ¶ 28. Twelve disputes were rejected because the individual was not within the purview of the Class and did not opt in as a FLSA opt-in plaintiff. *See* Keough Decl. ¶ 20.  Three disputes were accepted. *Id.*

$5,001,333.44. *Id.*

The Net Settlement Amount, which is the amount available to pay settlement awards to the Class Members, is defined as the Gross Settlement Amount less: the payment made to the California Labor & Workforce Development Agency ("LWDA") pursuant to PAGA ($31,500.00)[7]; any enhancement payments awarded to the Class Representatives (up to $15,000.00 for Plaintiff Villafan); the Settlement Administrator's fees and costs ($30,130.00); and any attorneys' fees and costs awarded to Plaintiff's counsel (fees of up to one third of the Gross Settlement Amount, or approximately $1,666,666.66, plus costs in the amount of $26,670.10).[8] *Id.* ¶ 30; *see also* Keough Decl. ¶ 23.

The negotiated, non-reversionary Gross Settlement Amount of $5,001,333.44 represents approximately 22% of the approximately $23 million that Plaintiff calculated for the core unpaid wages claims based on Plaintiff's assessment of a best-case-scenario. Cottrell Decl. ¶ 59. When adding meal and rest break, derivative claims, and potential penalties, the Gross Settlement Amount represents approximately 10.3% of Defendants' total potential exposure of $48.6 million. *Id.* The cash-in-hand recoveries that Class Members will receive compare favorably to these theoretical maximums. *Id.* ¶ 60. As the Class Members' Individual Settlement Shares are based on their number of Workweeks, long-term Safety Attendants will receive larger recoveries under the Settlement. *Id.* The Settlement provides for an average recovery of $646.07 per each of the 3,260 Class and Collective Members, reflecting an average of $50.32 for workweek worked in California and $44.91 for workweeks worked outside of California under the Settlement. [9] *Id.*; Keough Decl. ¶ 22. The

[7] The Parties agree to allocate $42,000.00 of the Gross Settlement Amount to the settlement of the PAGA claims, which the Parties believe in good faith is a fair and reasonable apportionment. Settlement, ¶ 27.c. The Settlement Administrator shall pay 75%, or $31,500.00, of this amount to the LWDA, and 25%, or $10,500.00, the "Net PAGA Amount," shall remain as part of the Net Settlement Amount. Settlement, ¶¶ 2.p, 27.c.

[8] The finalized attorneys' costs are $26,670.10, a decrease from the $40,000 estimate provided in Plaintiff's preliminary approval motion. Cottrell Decl. ¶ 30.

[9] With the weighting factors discussed herein, Class Members are paid three times the FLSA Workweek for each California Workweek. The majority of the Workweeks covered by the Settlement are California Workweeks. The weighting factors recognize that the stronger wage and hour laws of certain states would result in enhanced recoveries compared to states with no wage and hour

largest recovery for a Class Member under the Settlement is an impressive $10,884.18; 4 Class Members will receive over $10,000; 95 Class Members will receive over $5,000; and 429 Class Members will receive over $2,000. Cottrell Decl. ¶ 60.

This is further reasonable because the typical Class Member worked a relatively short tenure. *Id.* ¶ 60. Approximately 90% of the Class worked 1 year or less, 75% worked 6 months or less, and 50% worked 2 months or less. *Id.* In particular, 1,526 Class Members worked less than 2 months during the Class period: 922 of the Class Members (116 of whom were also Opt-In Plaintiffs) worked one month or less for Defendants, receiving a recovery from $52.33 to $209.31, and an additional 604 Class members (66 of whom were also Opt-In Plaintiffs) worked one to two months for Defendants, ranging from $122.10 to $418.62 per individual recovery for each Class Member. *Id.* Indeed, for the remaining Class Members who worked more than two months for Defendants, such Class Members will receive an average individual recovery of $1,713.18. *Id.*

**B. Class and Collective Definitions**

An individual is eligible to share in the proposed Settlement if he or she belongs to any of the following[10]:

▪ The "**California Rule 23 Class**" means all current or former hourly, non-exempt employees of Broadspectrum or TRSC who performed work in California between November 6, 2014 through the date of Preliminary Approval, excluding (i) any staff, other administrative employees, and maintenance workers, and (ii) employees who have previously released all of their claims pursuant to the settlement agreement in *Kevin Woodruff v. Broadspectrum Downstream Services, Inc.,* United States District Court Case Number 3:14-cv-04105-EMC.

▪ **Opt-In Plaintiffs** are all individuals who are or were employed by Broadspectrum or TRSC and on whose behalf Plaintiff's counsel has filed a consent to join the FLSA collective in the

---

protections beyond the FLSA. Cottrell Decl. ¶ 61. Class Members who are also Aggrieved Employees will also each receive an additional equal share of the Net PAGA Amount of $10,500.00. *Id.* ¶ 60, n. 4.

[10] The class definitions slightly differ from those presented in the operative complaint. *See* Settlement, ¶¶ 2.b, 2.f.; Cottrell Decl., ¶ 31-32. They are to be certified for settlement purposes only under Federal Rule of Civil Procedure 23. Settlement, ¶ 11.

Action at any time from and including November 6, 2015 through and including the date of Preliminary Approval.

### C. Allocation and Awards

The Net Settlement Amount to be paid to Class Members is approximately $3,220,866.68, which includes all interest accrued on the Gross Settlement Amount while it was held in escrow. Cottrell Decl. ¶ 33. Class Members will each receive a settlement award check without the need to submit a claim form.[11] *Id.* ¶ 34. Each Class Member's settlement share will be determined based on the total number of weeks that the respective Class Member worked for Defendants during the applicable limitations period(s). *Id.* ¶¶ 34-36. Specifically, each Class Member will be credited for the number of weeks that he or she worked for Defendants at any time (1) from November 6, 2014 to the date of Preliminary Approval for California Class Members; and (2) if the Participating Individual is an Opt-In Plaintiff, in all states other than California, from November 6, 2015 or three years preceding the date that Plaintiff's counsel filed a Consent to Join form on behalf of the Opt-In Plaintiff to the date of Preliminary Approval, whichever is earliest. Settlement, ¶ 31.a, Ex. A. Participating Individuals who also worked for Defendants at any time from November 6, 2017 in California through the date of Preliminary Approval will also receive an equal portion of the Net PAGA Amount. *Id.,* ¶ 31.b.

Each workweek will be equal to one settlement share, but to reflect the increased value of state law claims and differing average rates of pay by state, workweek during which work was performed in California will be weighted more heavily. Cottrell Decl., ¶ 36. Specifically, workweek during which work was performed in California will be equal to three settlement shares and workweek during which an Opt-In Plaintiff performed work in any state other than California will

---

[11] Class Members are not required to submit an Opt-In Form to receive payment under the Settlement for their work in California during the relevant time periods. However, only Opt-In Plaintiffs will be credited for work in other states, as the damages for work in those states are attributable to FLSA claims only. Class Members may opt out of the Rule 23 component of the Settlement, but those who are Opt-In Plaintiffs may not opt out of the FLSA component of the Settlement. Settlement, ¶ 23.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.,* Case No. 3:18-cv-06741-LB

be equal to one settlement share.[12] Settlement, ¶ 31.a.ii.  In the event that a Rule 23 Class Member, who is also an Opt-In Plaintiff, opts out of the Rule 23 component of the Settlement, he or she will receive credit under the Settlement for all of his or her Workweeks nationwide from the three years preceding the date that Plaintiff's counsel filed his or her Opt-In Form to the date of Preliminary Approval. In this circumstance, none of the Workweeks will be subject to any weighting (i.e., all Workweeks will be equal to one settlement share on an FLSA basis), even for work in California. *See id.*, ¶¶ 29-31.

The total number of settlement shares (as weighted) for all Participating Individuals will be added together and the Net Settlement Amount will be divided by that total to reach a per share dollar figure. *Id*, ¶ 31.a.iii. The resulting per share dollar figure will then be multiplied by each Participating Individual's number of settlement shares (as weighted) to determine his or her Individual Settlement Payment. *Id*. The Class/Collective Notice provided the estimated Individual Settlement Payment and number of Workweeks for each Class Member, assuming full participation in the Settlement. *Id.*, at Ex. A. Settlement Award and eligibility determinations are based on employee workweek information that Defendants will provide to the Settlement Administrator; however Class Members will be able to dispute their workweeks by submitting evidence that they worked more workweeks than shown by Defendants' records. *Id*, ¶¶ 21, 33.

Settlement Awards will be paid to Class Members by the Settlement Administrator within 30 days after the occurrence of the "Effective Date." *Id.*, ¶ 37. Settlement Award checks will remain valid for 180 days from the date of their issuance. *Id.*, ¶ 38. Any funds from checks that are returned as undeliverable or are not negotiated within 180 calendar days after issuance will either: (a) if less than $75,000.00, revert to the Parties' agreed-upon *cy pres* beneficiary, Legal Aid at Work, or (b); if $75,000.00 or greater, be redistributed to the Participating Individuals who negotiated their checks

---

[12] Plaintiff performed an in-depth analysis of Workweek weightings and the underlying state law provisions to develop the weightings. Cottrell Decl., ¶ 46.  Additionally, courts in this district recently granted final approval of a hybrid FLSA/Rule 23 wage and hour settlement that incorporated a workweek weighting of three for California state law claims and a workweek weighting of one for FLSA-only Workweeks. *See Jones, et al. v. CertifiedSafety, et al.,* 3:2017-cv-02229, ECF 232 (N.D. Cal. June 1, 2020) (Chen, J.); *Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 299 at 10:11-14, 305 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.,* Case No. 3:18-cv-06741-LB

on a *pro rata* basis. *Id.*, ¶ 39; Cottrell Decl., ¶ 38. Upon completion of administration of the Settlement, the Settlement Administrator will provide a Post-Distribution Accounting in accordance with the Northern District's Procedural Guidance. *See* Settlement, ¶ 39.c; Cottrell Decl., ¶ 39.

### D.  Scope of Release and Final Judgment

The releases contemplated by the proposed Settlement are dependent upon whether the Participating Individual is an Opt-In Plaintiff and/or a Rule 23 Class Member, and are tethered to the factual allegations. Opt-In Plaintiffs will release any and all claims under the FLSA based on or arising out of the same factual predicates of the Actions. *Id.*, ¶ 15.a. Rule 23 Class Members will release any and all claims under California law, based on or arising out of the same factual predicates of the Actions, the Complaints, and/or the allegations in the Complaints, including all claims that were or could have been raised in the Actions and any other wage and hour claims for damages, premiums, penalties, interest, attorneys' fees, and equitable relief. *Id.*, ¶ 15.b. As to Rule 23 Class Members who are not Opt-In Plaintiffs, those who negotiate their Rule 23 Settlement Checks will also release any and all claims under the FLSA arising from or related to their work for Defendants in the applicable Rule 23 state(s), based on these same factual predicates. *Id.*, ¶ 15.c. If such a Rule 23 Class Member does not deposit his or her check, he or she will not release any claims under the FLSA. *Id.*, ¶ 15.d.

The releases are effective upon final approval of the Settlement. *Id.*, ¶ 15. The release timing extends through the date of preliminary approval, and the Released Parties are Defendants and their related persons and entities. *Id.*, ¶¶ 15-16, 2.w. The Class Representative also agreed to a general release. *Id.*, ¶ 18.

### E.  CAFA Notice

Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, Defendants served CAFA notice on the U.S. Attorney General and all applicable state Attorney Generals on January 8, 2021.[13]  Cottrell Decl., ¶ 25.

### III. ARGUMENT

#### A.  Ninth Circuit Precedent Favors and Encourages Class Settlements

A certified class action may only be settled with Court approval. *See* Fed. R. Civ. P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which objecting class members may be heard, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Rule 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified; and (2) that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(a), (e)(2); *Hanlon*, 150 F.3d at 1020.

Federal law strongly favors and encourages settlements, especially in class actions. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits."). Moreover, when reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product

---

[13] Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, Defendants is required to serve upon the appropriate state official of each state in which a class member resides and the appropriate federal official, a notice of the proposed settlement within 10 days after the Settlement is filed. *See* Procedural Guidance for Class Action Settlements (updated Dec. 5, 2018).

1  of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement,

2  taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv.*

3  *Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court of Appeals will rarely overturn approval of a

4  class action settlement unless "the terms of the agreement contain convincing indications that the

5  incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the

6  outcome of the negotiations and that the district court was wrong in concluding otherwise." *Staton v.*

7  *Boeing Co.,* 327 F.3d 938, 960 (9th Cir. 2003).

8      Applying this standard of review to other federal and California wage and hour class actions,

9  this Court and others in this District have previously approved settlements similar to that reached in

10  this case.[14] Likewise, in its November 20, 2020 order, the Court already finally approved the

11  Settlement with respect the Collective Members and conditionally certified the California Class and

12  preliminarily approved the Settlement with respect to these Class Members.[15] *See* ECF 134.

13  Accordingly, the only step that remains is final approval of the Settlement as to the California Class.

14  Consistent with the precedent of this Circuit and this Court's own decisions, the Settlement should

15  be finally approved.

16      **B.  The Court Should Finally Approve the Settlement**

17      In deciding whether to approve a proposed class action settlement, the Court must find that

18  the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for*

19

20  [14] *See Jones, et. al. v. CertifiedSafety, et al.,* 3:2017-cv-02229, ECF 232 (N.D. Cal. June 1, 2020) (Chen, J.) (granting final approval of settlement that included FLSA, California, Washington,

21  Minnesota, Illinois, Ohio, and Alaska class claims); *O'Connor v. Uber Techs., Inc.,* No. 13-cv-03826-EMC, 2019 U.S. Dist. LEXIS 157070, at *12 (N.D. Cal. Sep. 13, 2019) (granting final approval of a

22  settlement that included both FLSA and California Labor Code claims); *Viceral v. Mistras Grp., Inc.,* No. 15-cv-02198-EMC, 2017 U.S. Dist. LEXIS 23220, at *2 (N.D. Cal. Feb. 17, 2017) (same); *Soto,*

23  *et al. v. O.C. Communications, Inc., et al.,* Case No. 3:17-cv-00251-VC, ECF 299 at 10:11-14, 305 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.) (same; included both California and Washington Rule 23

24  Classes, with workweek weighting); *Guilbaud v. Sprint Nextel Corp.,* No. 3:13-CV-04357-VC, 2016 WL 7826649, at *1 (N.D. Cal. Apr. 15, 2016).

25  [15] Plaintiff acknowledges that, in the event that the Settlement is not approved by the Court, class and

26  collective certification would be contested by Defendants, and Defendants fully reserve and do not

27  waive any arguments and challenges regarding the propriety of class and collective action certification.

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.,* Case No. 3:18-cv-06741-LB

*Justice*, 688 F.2d at 625. Included in this analysis are considerations of: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Importantly, courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the Court should find that the Settlement is fair, reasonable, and adequate, and finally approve it as to the California Class.

### 1. The best practicable notice was provided to the Class Members in accordance with the process approved by the Court.

Pursuant to the Court's November 20, 2020 preliminary approval order, JND sent the Court-approved Notice of Settlement to the Class and Collective Members in accordance with the terms of the Settlement. Cottrell Decl., ¶ 27; Keough Decl. ¶¶ 7-10. The Notices were sent via U.S. Mail and email, and the Settlement Administrator created a case website where Class Members can view the Settlement and all accompanying court filings. Keough Decl. ¶¶ 7-13.

Notice of a class action settlement is adequate where the notice is given in a "form and manner that does not systematically leave an identifiable group without notice." *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 835 (9th Cir. 1976).  The notice should be the best "practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993). Sending individual notices to settlement class members' last-known addresses constitutes the requisite effort. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975); *Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989) ("[N]otice mailed by first class mail has been approved

1   repeatedly as sufficient notice of a proposed settlement.").

2       The Settlement Administrator followed all of the procedures set forth in the Court-approved

3   notice plan. Reasonable steps have been taken to ensure that all Class Members receive the Notice.

4   *See supra* Section III.G. Ultimately, of the 3,260 notices distributed via U.S. Mail, 84 notices (2.5%)

5   were undeliverable following skip-tracing and other techniques. *See* Keough Decl. ¶ 8; Cottrell Decl.

6   ¶ 27.  Moreover, the dissemination of notice via email in addition to U.S. Mail increases the likelihood

7   that Class Members successfully receive the notice. Cottrell Decl. ¶ 27. The Notices provided

8   reasonable estimates of Class Members' recovery. *See* Keough Decl., Ex. A. Accordingly, the notice

9   process satisfies the "best practicable notice" standard.

10          **2.  The terms of the Settlement are fair, reasonable, and adequate.**

11      In evaluating the fairness of a proposed settlement, courts compare the settlement amount

12  with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp.*

13  *Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000). Courts routinely approve settlements that provide a

14  fraction of the maximum potential recovery. *See, e.g., Officers for Justice*, 688 F.2d at 623; *Vikram*

15  *v. First Student Mgmt., LLC*, No. 17-CV-04656-KAW, 2019 WL 1084169, at *5 (N.D. Cal. Mar. 7,

16  2019) (approving gross settlement amount that represents "30.6% of the California labor law

17  violations and PAGA penalties"); *Viceral*, 2016 WL 5907869, at *7 (Chen, J.) (approving wage and

18  hour settlement which represented 8.1% of the total verdict value).[16] "Even a small percentage of the

19  maximum possible recovery can be a reasonable settlement. Dollar amounts are judged not in

20  comparison with possible recovery in the best of all possible worlds, but rather in light of the strengths

21  and weaknesses of plaintiffs' case." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 258 (D.

22  Del. 2002).

23

---

24  [16] *See also Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17,

25  2015) ("10% gross and 7.3% net figures are 'within the range of reasonableness'"); *Balderas v.*
    *Massage Envy Franchising, LLP*, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (gross

26  settlement amount of 8% of maximum recovery and net settlement amount of 5%); *Ma v. Covidien*
    *Holding, Inc.*, 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the

27  action" is within the range of reasonableness).

28

1    Thus, it is well-settled that a proposed settlement is not to be measured against a hypothetical

2    ideal result that might have been achieved. *See, e.g.*, *7-Eleven Owners for Fair Franchising*, 85

3    Cal.App.4th 1135, 1150 (2000) (citing *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th

4    Cir. 1998) with approval). "Notably, [a court must consider whether] a substantial portion of

5    Defendant's total potential liability exposure would not translate into awards to class members at all.

6    . . . [For example, where] the estimated potential liability is comprised of PAGA penalties, [] these

7    large penalties do not necessarily translate into take-home awards for members of the class…."

8    *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015). Moreover, the Court

9    may consider the defendant's financial resources and ability to pay a larger settlement when deciding

10   whether to approve a class settlement. *See, e.g., Rinky Dink Inc. v. Elec. Merch. Sys. Inc.*, No. C13-

11   1347 JCC, 2015 WL 11234156, at *4 (W.D. Wash. Dec. 11, 2015) (considering defendants' ability

12   to pay a larger settlement); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379,

13   1387 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)

14   (analyzing defendant's ability to pay a judgment larger than the amount provided by the proposed

15   settlement in settlement approval context).

16    A review of the Settlement reveals the fairness, reasonableness, and adequacy of its terms.

17   Cottrell Decl. ¶ 58. The Gross Settlement Amount of $5,001,333.44, resulting in a Net Settlement

18   Amount of approximately $3,220,866.68, will result in fair and just relief to the Class Members. *Id.*[17]

19   The Gross Settlement Amount represents approximately 22% of the approximately $23 million that

20   Class Counsel have calculated for the core unpaid wage claims. *Id*. ¶ 59. Moreover, the Gross

21   Settlement Amount represents approximately 10.3% of Defendants' total potential exposure of $48.6

22   million. *Id*.

23

---

24   [17] The terms of the original settlement agreement from March 2020 (for a gross settlement amount of $5,500,000) were likewise fair, reasonable, and adequate at the time the parties initially agreed to

25   them. Given the adverse effect of the COVID-19 pandemic on Defendants' financial conditions, *see supra,* Section I.B.5, the terms of the Settlement are even more fair, reasonable, and adequate.  The

26   Parties have exhaustively negotiated the terms of the Settlement, and Class Counsel has ensured the protection of the Class and Collective's interest by securing the settlement fund into escrow to avoid

27   any potential further impact by the current economic downturn.  Cottrell Decl., ¶ 58, n. 3.

28

The Settlement provides for an average recovery of $646.07 per each of the 3,260 Class and Collective Members, reflecting an average of $50.32 for workweek worked in California and $44.91 for workweeks worked outside of California under the Settlement. *Id*. ¶ 60. The largest recovery for a Class Member under the Settlement is an impressive $10,884.18; 4 Class Members will receive over $10,000; 95 Class Members will receive over $5,000; and 429 Class Members will receive over $2,000. *Id*. These results are well within the reasonable standard when considering the difficulty and risks presented by pursuing further litigation. *Id*. The final settlement amount takes into account the substantial risks inherent in any class action wage-and-hour case, as well as the procedural posture of the Actions and the specific defenses asserted by Defendants, many of which are unique to this case. *Id*. ¶¶ 67-68, 72, 74; *See Officers for Justice*, 688 F.2d at 623.

### 3. The Parties have agreed to distribute settlement proceeds tailored to the Class and Collective and their respective claims.

In an effort to ensure fairness, the Parties have agreed to allocate the settlement proceeds amongst Class Members in a manner that recognizes that amount of time that the particular Class Member worked for Defendants in the applicable limitations period. The allocation method, which is based on the number of Workweeks, will ensure that longer-tenured workers receive a greater recovery. Moreover, the allocation tracks the differences in substantive law and penalty claims by weighting the Workweek shares more heavily for work performed in California. Cottrell Decl. ¶ 61. The allocation was made based on Class Counsel's assessment to ensure that employees are compensated accordingly and in the most equitable manner. *Id*. To the extent that any Class Member is *both* a FLSA Opt In Plaintiff and a member of a Rule 23 Class, these workers will only receive a recovery based on their workweeks as a Rule 23 Class Member for their work in California. *Id*. ¶ 62. Such workers will not receive a "double recovery."

A class action settlement need not benefit all class members equally. *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983); *In re AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42 (N.D. Ill. 2011). Rather, although disparities in the treatment of class and collective members may raise an inference of

unfairness and/or inadequate representation, this inference can be rebutted by showing that the unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT & T,* 789 F.Supp.2d at 979-80. Plaintiff provides rational and legitimate bases for the allocation method here, and the Parties submit that it should be approved by the Court.

### 4.  The extensive informal discovery enabled the Parties to make informed decisions regarding settlement.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal. 1979); *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties engaged in extensive informal discovery, deposition of Defendants' corporate witness pursuant Fed. R. Civ. P. 30(b)(6), and nearly 200 class and collective interviews that have enabled both sides to assess the claims and potential defenses in this action. Cottrell Decl. ¶¶ 15-17. The Parties were able to accurately assess the legal and factual issues that would arise if the cases proceeded to trial(s). *Id*. ¶ 63. In addition, in reaching this Settlement, Plaintiff's counsel relied on their substantial litigation experience in similar wage and hour class and collective actions. Cottrell Decl. ¶¶ 5-6, 64; Plaintiff's counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendants' compensation policies and practices on Class Members' pay. *Id*. ¶ 65. Ultimately, facilitated by mediator Jeff Ross, the Parties used this information and discovery to fairly resolve the litigation. *Id*. ¶ 66.

### 5.  While Plaintiff recognizes the strength of their claims, there are substantial risks in proceeding with the litigation.

"Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class." *Eddings v. Health*

*Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867, at *3 (C.D. Cal. June 13, 2013). The monetary value of the proposed Settlement represents a fair compromise given the risks and uncertainties posed by continued litigation. Cottrell Decl. ¶ 67. If the Actions were to go to trial as a class and collective action (which Defendants would vigorously oppose if this Settlement Agreement were not approved), Class Counsel estimates that fees and costs would exceed $5,000,000. *Id.* ¶ 69. Litigating the class and collective action claims would require substantial additional preparation and discovery. *Id.* It would require depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. *Id.*

Recovery of the damages and penalties previously referenced would also require complete success and certification of all of Plaintiff's claims, an uncertain feat in light of developments in wage and hour and class and collective action law as well as the legal and factual grounds that Defendants have asserted to defend this action. *Id.* ¶¶ 67-74. While Plaintiff is confident in her ability to certify and successfully litigate the alleged claims on the merits, Plaintiff asserts a putative Rule 23 Class along with a FLSA Collective. Off-the-clock claims are difficult to certify for class treatment, given that the nature, cause, and amount of the off-the-clock work may vary based on the individualized circumstances of the worker. *See, e.g., In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), aff'd, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019); *Kilbourne v. Coca-Cola Co.*, No. 14CV984-MMA BGS, 2015 WL 5117080, at *14 (S.D. Cal. July 29, 2015); *York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWX, 2011 WL 8199987, at *30 (C.D. Cal. Nov. 23, 2011).

Moreover, the Covid-19 pandemic emphasizes the inherent risk undertaken by Class Counsel in litigating this case. Cottrell Decl. ¶ 70. Plaintiff and Class Counsel faced the real risk that Defendants' deteriorating financial health due to the COVID-19 pandemic could make any recovery impossible. *Id.*[18]

---

[18] The Parties have discussed that Defendants provide further clarification regarding their financial condition to the Court via declaration. *Id.*

1

2

3

4

In contrast to litigating this suit, resolving this case by means of the Settlement will yield a prompt, certain, and very substantial recovery for the Class Members. *Id*. ¶ 75. Such a result will benefit the Parties and the court system. *Id*. It will bring finality to over two years of arduous litigation and eight separate Actions, and will foreclose the possibility of expanding litigation.

5

6

### 6.   The settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel.

7

8

9

10

11

12

13

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where counsel are well-qualified to represent the proposed class and collective in a settlement based on their extensive class and collective action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

14

15

16

17

18

19

20

21

22

Here, the settlement was a product of non-collusive, arm's-length negotiations. Cottrell Decl. ¶ 76. The Parties participated in one lengthy mediation before Jeff Ross, who is a skilled mediator with many years of experience mediating employment matters. *Id.* The Parties then spent several months negotiating the long form settlement agreement once faced with advent of the COVID-19 pandemic and its adverse effect on Defendants' financial condition, with several rounds of meet and confer and correspondence related to the terms and details of the Settlement. *Id.* ¶¶ 76-77. Plaintiff is represented by experienced and respected litigators of representative wage and hour actions, and these attorneys feel strongly that the proposed Settlement achieves an exceptional result for the Class Members. *Id.* ¶ 78.

23

### 7.   Class Members approve of the Settlement.

24

25

26

27

The Ninth Circuit and other federal courts have made clear that the number or percentage of class members who object to or opt out of the settlement is a factor of great significance. *See Mandujano*, 541 F.2d at 837; *see also In re Am. Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps the

28

1    most significant factor to be weighed in considering its adequacy."). Courts have found that a

2    relatively low percentage of objectors or opt outs is a very strong sign of fairness that factors heavily

3    in favor of approval. *See, e.g., Cody v. Hillard*, 88 F.Supp.2d 1049, 1059-60 (D.S.D. 2000) (approving

4    the settlement in large part because only 3% of the apparent class had objected to the settlement).

5      To date, no Class Members have objected to the Settlement, and only one Class Member has

6    opted out of the Settlement, resulting in a less than 0.05% opt-out rate. *See* Cottrell Decl. ¶ 28. In

7    addition, all Plaintiff Villafan, as Class Representative, supports the terms of the Settlement. *Id.*; *see*

8    *also* Declaration of Plaintiff Angel Villafan in Support of Service Award. This shows widespread

9    support for the Settlement among Class Members, and gives rise to a presumption of fairness.

10   ### C.  The Class Representative Service Awards Are Reasonable

11     In approving the Settlement, the Court must determine whether "the settlement, taken as a

12   whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. In

13   addition to the terms and details of the Settlement discussed above, the Settlement also establishes a

14   service award of up to $15,000 for Plaintiff Villafan. Plaintiff sets forth her arguments in support of

15   the service awards in full in their accompanying Motion for an Award of Attorneys' Fees and Costs

16   and for Service Awards. Plaintiff does not repeat those arguments here. The Court should grant final

17   approval to the requested service awards as reasonable.

18   ### D.  The Requested Attorneys' Fees and Costs Are Reasonable

19     Likewise in evaluating the Settlement, the Court should evaluate Plaintiff's request for

20   attorneys' fees and costs pursuant to the terms of the Settlement. In their fee motion, Class Counsel

21   request one-third of the Gross Settlement Amount, for a total of $1,666,666.66, plus reimbursement

22   in reasonable costs in the amount of $26,670.10. Cottrell Decl. ¶ 30. Plaintiff sets forth her arguments

23   in support of the fee and costs request in full in her accompanying Motion for an Award of Attorneys'

24   Fees and Costs and for Service Awards. Plaintiff does not repeat those arguments here. The Court

25   should grant final approval to the requested fees and costs as reasonable.

26   ### E.  The Court Should Finally Certify the California Class

27     In its November 20, 2020 order granting preliminary approval of the Settlement, the Court

28

1    granted conditional certification of the provisional California Class. ECF 134. Now that notice has

2    been effectuated, the Court should finally certify the class in its Final Approval Order. The California

3    Class meets all of the requirements for final approval as set forth below.

### 1.    The Class is numerous and ascertainable.

5    First, the numerosity prerequisite demands that a class be large enough that joinder of all

6    members would be impracticable. Fed. R. Civ. P. 23(a)(1). While there is no exact numerical cut-off,

7    courts have routinely found numerosity satisfied with classes of at least forty members. *See, e.g.,*

8    *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy*

9    *Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). The approximately 3,208 members of the

10   California Class render the class so large as to make joinder impracticable. Cottrell Decl. ¶ 47.

### 2.    Plaintiff's claims raise common issues of fact or law.

12   The commonality requirement of Rule 23(a)(2) "is met if there is at least one common

13   question or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Plaintiff

14   "need not show that every question in the case, or even a preponderance of questions, is capable of

15   classwide resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven

16   a single common question" can satisfy the commonality requirement of Rule 23(a)(2). *Id.*

17   Plaintiff contends that common questions of law and fact predominate here, satisfying

18   paragraphs (a)(2) and (b)(3) of Rule 23, as alleged in the operative complaints. Cottrell Decl. ¶ 48.

19   Defendants have uniform policies applicable to all Safety Attendants. *Id.* ¶ 49. Specifically, Plaintiff

20   alleges that Safety Attendants all perform essentially the same job duties—performing safety duties

21   pursuant to Defendants' standards and requirements. Plaintiff alleges that the wage and hour

22   violations are in large measure borne of Defendants' standardized policies, practices, and procedures,

23   creating pervasive issues of fact and law that are amenable to resolution on a class-wide basis. In

24   particular, Safety Attendants are subject to the same: hiring and training process; timekeeping,

25   payroll, and compensation policies; meal and rest period policies and practices; and reimbursement

26   policies. *Id.* Plaintiff's other derivative claims will rise or fall with the primary claims. *Id.* Because

27   these questions can be resolved at the same juncture, Plaintiff contends the commonality requirement

28

1   is satisfied for the Class. *Id.*

2   ### 3.   Plaintiff's claims are typical of the claims of the Class.

3   "Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the

4   members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, a

5   representative's claims are 'typical' if they are reasonably coextensive with those of absent class

6   members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiff

7   contends that her claims are typical of those of all other Class Members. Cottrell Decl. ¶ 50. She was

8   subject to the alleged illegal policies and practices that form the basis of the claims asserted in this

9   case. *Id.* Interviews with Class Members and review of timekeeping and payroll data confirm that the

10  employees throughout the United States were subjected to the same alleged illegal policies and

11  practices to which Plaintiff was subjected. *Id.* ¶ 51. Thus, the typicality requirement is also satisfied.

12  *Id.*

13  ### 4.   Plaintiff and Class Counsel will adequately represent the Class.

14  To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show "(1)

15  that the putative named plaintiff has the ability and the incentive to represent the claims of the class

16  vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between

17  the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiff's

18  claims are in line with the claims of the Class, and Plaintiff's claims are not antagonistic to the claims

19  of Class Members. Cottrell Decl. ¶ 52. Plaintiff has prosecuted this case with the interests of the Class

20  Members in mind. *Id.* Moreover, Plaintiff's counsel has extensive experience in class action and

21  employment litigation, including wage and hour class actions, and do not have any conflict with the

22  Class. *Id.* ¶¶ 5-6, 53.

23  ### 5.   The Rule 23(b)(3) requirements for class certification are also met.

24  Under Rule 23(b)(3), Plaintiff must demonstrate that common questions "predominate over

25  any questions affecting only individual members" and that a class action is "superior to other available

26  methods for fairly and efficiently adjudicating the controversy." "The predominance analysis under

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.,* Case No. 3:18-cv-06741-LB

1  Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and

2  'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"

3  *Wang,* 737 F.3d at 545.

4    Plaintiff contends the common questions raised in this action predominate over any

5  individualized questions concerning the Class. Cottrell Decl. ¶ 54. The Class is entirely cohesive

6  because resolution of Plaintiff's claims hinge on the uniform policies and practices of Defendants,

7  rather than the treatment the Class Members experienced on an individual level. *Id.* If the Class

8  Members proceeded on their claims as individuals, their many individual suits would require

9  duplicative discovery and duplicative litigation, and each Class Member would have to personally

10 participate in the litigation effort to an extent that would never be required in a class proceeding. *Id.*

11 Thus, Plaintiff contends that the class action mechanism would efficiently resolve numerous

12 substantially identical claims at the same time while avoiding a waste of judicial resources and

13 eliminating the possibility of conflicting decisions from repetitious litigation and arbitrations. *Id.* The

14 class action mechanism, therefore, is a superior method of adjudication compared to a multitude of

15 individual suits. *Id*. ¶ 55-56.

16    The issues raised by the present case are much better handled collectively by way of a

17 settlement. *Id*. ¶ 57. Manageability is not a concern in the settlement context. *Amchem Prod., Inc. v.*

18 *Windsor*, 521 U.S. 591, 593 (1997). The Settlement presented by the Parties provides finality, ensures

19 that workers receive redress for their relatively modest claims, and avoids clogging the legal system

20 with numerous cases. Cottrell Decl. ¶ 57. Accordingly, class treatment is efficient and warranted, and

21 the Court should conditionally finally certify the California Class for settlement purposes.

22    **IV. CONCLUSION**

23    For the foregoing reasons, Plaintiff respectfully requests that this Court grant this Motion for

24 final approval and enter the accompanying proposed Order.

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Villafan v. Broadspectrum Downstream Services, Inc., et al.,* Case No. 3:18-cv-06741-LB

Date: March 4, 2021                    Respectfully submitted,


                                       /s/ *Carolyn H. Cottrell*
                                       Carolyn H. Cottrell
                                       Ori Edelstein
                                       Michelle S. Lim
                                       SCHNEIDER WALLACE
                                       COTTRELL KONECKY LLP

                                       Attorneys for Plaintiff and the Putative Class,
                                       Collective, Aggrieved Employees, and State of
                                       California


## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States District Court, Northern District of California, by using the Court's CM/ECF system on March 4, 2021.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.


Dated: March 4, 2021                   Respectfully submitted,


                                       /s/ *Carolyn H. Cottrell*
                                       Carolyn H. Cottrell
                                       Ori Edelstein
                                       Michelle S. Lim
                                       SCHNEIDER WALLACE
                                       COTTRELL KONECKY LLP

                                       Attorneys for Plaintiff and the Putative Class,
                                       Collective, Aggrieved Employees, and State of
                                       California