UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ANGEL VILLAFAN, on behalf of themselves and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BROADSPECTRUM DOWNSTREAM SERVICES, INC., et al.<br><br>Defendant. | Case No. 18-cv-06741-LB<br><br>**ORDER GRANTING FINAL APPROVAL**<br><br>Re: ECF No. 138 |

## INTRODUCTION

The class members — current and former nonexempt employees who provide safety and support services at Broadspectrum's oil refineries — challenge Broadspectrum's alleged failure to pay them for their off-the-clock work, provide meal-and-rest breaks, or reimburse expenses, in violation of federal and state wage-and-hours laws. It is a putative collective action under the Federal Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, and a putative class action under Federal Rule of Civil Procedure 23.[1] The parties settled the case, and the court granted the plaintiff's unopposed motion for preliminary approval of the proposed settlement.[2] The plaintiff

---

[1] Second Am. Compl. – ECF No. 124. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Order – ECF No. 134.

ORDER – No. 18-cv-06741-LB

moved for, and the defendants did not oppose, final approval of the settlement and attorney's fees and costs.[3] The court held a fairness hearing on April 8, 2021 and approves the settlement.

## STATEMENT

### 1. The Lawsuit

The plaintiff filed the lawsuit on November 6, 2018 and a first amended complaint on February 1, 2019 (with an FLSA claim, California Labor Code wage-and-hours claims, and a claim for penalties under California's Private Attorneys General Act (PAGA)).[4] The parties engaged in discovery, first through formal requests for production and interrogatories, and then (by agreement) through extensive informal discovery to prepare for mediation.[5] The plaintiff deposed Broadspectrum's corporate representative under Federal Rule of Civil Procedure 30(b)(6), covering corporate organization and decision-making responsibilities, policies and practices for wage-and-hours issues, and other issues relevant to the class members' job duties, responsibilities, equipment, and off-the-clock work.[6] The plaintiff's counsel completed extensive outreach with the class and collective members covering topics relevant to the lawsuit.[7] As part of this process, Broadspectrum produced, and the plaintiff's counsel reviewed, over 1,140 documents, including policies, payroll records, and job-assignment documents.[8] Broadspectrum produced data that allowed the plaintiff's counsel to evaluate class and collective damages.[9]

The parties had multiple mediations with Jeff Ross, a respected wage-and-hours mediator, and ultimately accepted his mediator's proposal and settled the case.[10] As part of that settlement, they stipulated to the filing of a second amended complaint — which is the operative complaint —

---

[3] Mots. – ECF Nos. 138–39.

[4] Compl. – ECF No. 1; First Am. Compl. – ECF No. 16.

[5] Cottrell Decl. – ECF No. 129-1 at 9 (¶ 14).

[6] *Id*. (¶ 15).

[7] *Id*. at 10 (¶¶ 16–17).

[8] *Id*. (¶ 18).

[9] *Id*.

[10] Settlement Agreement – ECF No. 129-2 at 7 (¶ 7).

ORDER – No. 18-cv-06741-LB                         2

adding T.R.S.C. as a named defendant.[11] The parties delayed the settlement by 60 days to allow the defendants to fund it in light of the COVID-19 pandemic. As part of that process, they reduced the settlement fund from $5.5 million to $5 million (now $5,001,333.44 with accumulated interest).[12]

Following the plaintiff's unopposed motion and a hearing, the court preliminarily approved the settlement.[13] The plaintiff moved for final approval of the settlement and attorney's fees and costs.[14] The court held a fairness hearing on April 8, 2021.

## 2. Settlement

### 2.1 Settlement Class

There are 3,260 class members and collective members (3,208 class members and 52 opt-in plaintiffs who are not also class members).[15] The class and collective definitions are as follows:

> The "California Class" or "Members of the California Class" means all current and former hourly, non-exempt employees of Broadspectrum or TRSC who performed work in California between November 6, 2014 through the date of Preliminary Approval, excluding (i) any staff, other administrative employees, and maintenance workers, and (ii) employees who have previously released all of their claims pursuant to the settlement agreement in *Kevin Woodruff v. Broadspectrum Downstream Services, Inc.*, 3:14-CV-04105-EMC. A "Class Member" is a member of the Class.
>
> . . .
>
> The "Collective" or "Collective Members" or "Opt-in Plaintiffs" is a certified collective action for settlement purposes only pursuant to 29 U.S.C. § 216(b), which includes all individuals who are or were employed by Broadspectrum or TRSC and filed a consent to join the Action at any time from and including November 6, 2015 through and including the date of Preliminary Approval.[16]

---

[11] Second Am. Compl. – ECF No. 124.

[12] Cottrell Decl. – ECF No. 129-1 at 11 (¶¶ 22–23); Cottrell Decl. – ECF No. 139-1 at 10–11 (¶ 17).

[13] Minute Entry – ECF No. 133; Order – ECF No. 134.

[14] Mots. – ECF Nos. 138–39.

[15] Cottrell Decl. – ECF No. 138-1 at 19–20 (¶ 60). The initial estimate of the class size was 1,862. Order – ECF No. 134 at 3 (citing Settlement Agreement – ECF No. 129-2 at 3 (¶ 2.b)).

[16] Settlement Agreement – ECF No. 129-2 at 3 (¶ 2.b–c).

The parties stipulated to, and the court approved, conditional certification of the FLSA collective on June 11, 2019.[17] 842 members have filed opt-in notices.[18]

### 2.2  Settlement Amount and Allocation

The total non-reversionary Gross Settlement Amount is $5,000,000 plus interest, and the Net Settlement Amount is $3,230,033.24 after the following deductions: (1) $31,500 to the Labor & Workforce Development Agency (LWDA) for the PAGA claim; (2) up to $15,000 for an enhancement payment to the named plaintiff; (3) an estimated $30,130 for the claims administrator's expenses; and (4) attorney's fees of $1,666,666.66 (one third of the Gross Settlement Amount) plus costs of $26,670.10.[19]

The class members will receive a settlement check without submitting a claim form.[20] Each member's settlement share is calculated based on the number of weeks the member worked during the applicable limitations period (November 6, 2014 to the date of the preliminary approval (for California class members) and November 6, 2015 or three years before the date of the opt-in notice to the date of preliminary approval, whichever is earliest (for opt-in plaintiffs in all states other than California)).[21] Participating plaintiffs who worked for the defendants at any time in California from November 6, 2017 through the date of preliminary approval will receive an equal part of the net PAGA amount.[22] Each workweek is equal to one settlement share, but to reflect the increased value of state-law claims and differing rates of pay by state, a workweek in California is weighted more heavily: a California workweek is equal to three settlement shares, and a workweek for an opt-in plaintiff in any other state than California is equal to one settlement share.[23] If a Rule 23 class member who also is an opt-in plaintiff opts out of the Rule 23

---

[17] Stipulation and Order – ECF No. 26.

[18] Mot. – ECF No. 138 at 14 (843 opt-in notices); Cottrell Decl. – ECF No. 129-1 at 21 (¶ 74) (842 opt-in notices).

[19] Cottrell Decl. – ECF No. 138-1 at 13 (¶ 30).

[20] Settlement Agreement – ECF No. 129-2 at 16 (¶ 29).

[21] *Id.* at 17 (¶ 31.a).

[22] *Id.* at 17–18 (¶ 31.b).

[23] *Id.* at 17 (¶ 31.a.ii).

settlement, that plaintiff will receive credit for all workweeks nationwide for three years before the date of the filing of the opt-in notice to the date of preliminary approval.[24] In this circumstance, the workweeks will not be weighted, meaning, all workweeks are equal to one settlement share for the FLSA collective, even for work in California.[25]

The total number of settlement shares (as weighted) for all settling members will be added together, and the Net Settlement Amount will be divided by that amount to reach a per-share dollar figure.[26] The resulting per-share dollar figure will be multiplied by the number of each participating member's settlement shares (as weighted) to arrive at the Individual Settlement Payment.[27] The Class/Collective Notice will provide the estimated Individual Settlement Payment and the number of Workweeks for each member, assuming full participation in the settlement.[28] Those calculations will be based on employee workweek information that the defendants will provide to the Settlement Administrator, but members will be able to dispute their workweeks by submitting evidence.[29]

Settlement checks will be mailed within 30 days of the Effective Date (the first business day after a final approval order if there are no pending objections and otherwise after the appeal time expires, the appeal is dismissed, or the final approval order is affirmed) and are valid for 180 days after issuance.[30] Any funds from checks that expire or are returned as undeliverable will either (1) revert to the cy pres beneficiary Legal Aid at Work if less than $75,000 or (b) be redistributed to the participating members who negotiated their checks on a pro rata basis if $75,000 or more.[31]

In arriving at the assessment that the settlement amount is reasonable, the plaintiff's counsel did a damages assessment based on average rates of pay, assumed 10 minutes off-the-clock work and 25-percent missed meal-and-rest breaks (daily) and calculated the resulting substantive

---

[24] *Id.* at 17 (¶ 31.a.ii).
[25] *Id.* at 16–18 (¶¶ 29–31).
[26] *Id.* at 17 (¶ 31.a.iii).
[27] *Id.*
[28] Notice – Ex. A to Settlement Agreement – ECF No. 129-2 at 27–33.
[29] Settlement Agreement – ECF No. 129-1 at 12, 18 (¶¶ 21, 33).
[30] *Id.* at 4 (¶ 2.j), 19 (¶¶ 37–38).
[31] *Id.* at 19–20 (¶¶ 38–39).

exposure both for the core unpaid wages claims and also considering meal-and-rest-break claims, derivative claims, and potential penalties.[32] The $5 million settlement amount is approximately 22 percent of $23 million (the estimated damages for the core unpaid wage claims) and 10.3 percent of the plaintiff's best-case scenario for $48.6 million (damages that include meal-and-rest breaks, derivative claims, and potential penalties).[33]

Under the settlement terms that the parties propose (with one-third of the settlement fund allocated to attorney's fees), the average recovery is $646.07 for each class and collective member, which is $50.32 for each workweek worked in California. The average recovery is $1,713.18 for each class member who worked over two months. The largest recovery for a class member is $10,884.18. Four class members will receive over $10,000, 95 will receive over $5,000, and 429 will receive over $2,000.[34] (At the preliminary-approval stage, based on a smaller expected class size of 1,862, the expected average payment per class member was $1,682.38, which is $97.65 per workweek.[35])

### 2.3  Release

The scope of release depends on whether the participant is an opt-in plaintiff or a Rule 23 class member. The FLSA opt-in plaintiffs release their FLSA claims arising out of the same factual predicates of the action, the California class members release their state-law claims related to the same factual predicates and the FLSA claims if they cash the checks (but will not release the FLSA claims if they are not opt-in plaintiffs and do not cash their checks), and the named plaintiff agrees to a general release.[36]

---

[32] Cottrell Decl. – ECF No. 129-1 at 12–13 (¶¶ 29–38).

[33] Cottrell Decl. – ECF No. 138-1 at 19 (¶ 59).

[34] *Id.* at 19–20 (¶ 60). Approximately 90 percent of the class worked one year or less, 75 percent worked six months or less, and 50 percent worked two weeks or less. 1,526 class members worked less than two months: 922 (116 also are opt-in plaintiffs) worked one month or less, receiving a recovery from $52.33 to $209.31, and an additional 604 class members (66 also are opt-in plaintiffs) worked one to two months, receiving a recovery from $122.10 to $418.62. *Id.*

[35] Order – ECF No. 134 at 6 (citing Cottrell Decl. – ECF No. 129-2 at 14 (¶ 41).

[36] Settlement Agreement – ECF No. 129-2 at 8 (¶ 15).

**2.4  Administration**

The court previously approved JND Legal Administration to administer the settlement in accordance with the procedures in the Settlement Agreement. JND complied with the procedures.

On December 15, 2020, JND received from defense counsel a list of 3,259 class members (consisting of 3,207 California class members and 668 FLSA opt-in members) with the following information: (1) names; (2) mailing addresses; (3) Social Security numbers, and (4) workweeks of individual Class Members.[37] JND updated 353 class members' address information using data from the National Change of Address database.[38] Starting December 22, 2020, it maintained a case-specific toll-free telephone number and a website.[39]

On December 22, 2020, JND mailed the class notices to 3,259 class members. 319 notices came back as undeliverable and without a forwarding address. JND identified new addresses for 230 undeliverable notices and remailed them. Five came back with forwarding addresses, and JND re-mailed the notices to those addresses. It emailed the notice to the 2,038 class members who had email addresses.[40]

JND calculated — and included in the notices — the individual Settlement Shares for each class member. The notices told the class members the settlement terms, their expected share, the February 20, 2021 deadline to submit objections, requests for exclusion, or disputes, the April 8, 2021 final approval hearing (at 9:30 a.m.), and the plaintiff's proposed attorney's fees, costs, and service award. The notice had the case website, the toll-free call-center number, and contact information for class counsel.[41]

---

[37] Keough Decl. – ECF No. 138-2 at 2 (¶ 4).

[38] *Id*. (¶ 5).

[39] *Id*. at 3–4 (¶¶ 11–14).

[40] *Id*. at 3 (¶¶ 7–10).

[41] *Id*. at 5–6 (¶ 22) & Ex. A to *id*. – ECF No. 138-2 at 8–14.

As of March 4, 2021, JND had received one opt-out request and no objections.[42] 15 class members disputed the calculations, and JND resolved three disputes in favor of the class members and 12 in favor of the defendant (based on the records).[43]

## ANALYSIS

### 1. Jurisdiction

The court has federal-question jurisdiction under 28 U.S.C. § 1331 for the FLSA claim and supplemental jurisdiction under 28 U.S.C. § 1367 for the state-law claims.

### 2. Certification of Settlement Class

#### 2.1 Rule 23

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because the court will not have the opportunity to adjust the class based on information revealed at trial. *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (en banc).

Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *In re Hyundai*, 926 F.3d at 556; *Staton*, 327 F.3d at 953. Also, the common questions of law or fact must predominate over any questions affecting only individual class members, and the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

---

[42] *Id.* at 4 (¶ 16).
[43] *Id.* at 5 (¶ 20).

The court finds that the Rule 23(a) factors — numerosity, commonality, typicality, and adequacy — support the certification of the class. It also finds under Rule 23(b)(3) that the common questions predominate over any questions affecting only individual members, and a class action is superior to other available methods.

First, there are approximately 3,260 class members.[44] The class is numerous. *Nelson v. Avon Prods.*, No. 14-cv-02276-BLF, 2015 WL 1778326, at *5 (N.D. Cal. Apr. 17, 2015).

Second, there are questions of law and fact common to the class that predominate over individual issues. The class and collective members perform the same job duties: safety duties pursuant to the defendants' standards and requirements. The defendants have uniform policies that apply to all members, and the wage-and-hours violations are a result of the defendants' standardized policies and procedures, including the following (1) the hiring and training process; (2) timekeeping, payroll, and compensation policies; (3) meal-and-rest policies and practices; and (4) reimbursement policies.[45] Because the claims arise from the defendants' uniform practices applied to employees with the same job responsibilities, liability can be determined on a class-wide basis. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Betorina v. Ranstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *4 (N.D. Cal. Apr. 6, 2017).

Third, the claims of the representative plaintiff are typical of the claims of the class. The plaintiff and all class members allege wage-and-hours violations based on similar facts. They possess the same interest and suffer from the same injury. *Betorina*, 2017 WL 1278758, at *4.

Fourth, the plaintiff fairly and adequately protects the interests of the class. The factors relevant to a determination of adequacy are (1) the absence of potential conflict between the named plaintiff and the class members, and (2) counsel chosen by the representative party who is qualified, experienced, and able to vigorously conduct the litigation. *In re Hyundai*, 926 F.3d at 566 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). The factors exist here: the plaintiff has shared claims and interests with the class (and no conflicts of interest) and has retained qualified

---

[44] Cottrell Decl. – ECF No. 138-1 at 19–20 (¶ 60).
[45] *Id.* at 17 (¶ 49).

and competent counsel who have prosecuted the case vigorously. *Id.*; *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1021–22.

Finally, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The class members have relatively small monetary claims, and the class action resolves many substantially identical claims efficiently, avoiding a waste of resources, to advance the individual members' interests.

In sum, the prerequisites of Fed. R. Civ. P. 23(a) and (b)(3) are met. The court certifies the class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only.

### 2.2 FLSA Class

The FLSA authorizes opt-in representative actions where the complaining parties are "similarly situated" to other employees. 29 U.S.C. § 216(b); *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1042 (2016). On June 11, 2019, the court approved conditional certification of the FLSA collective and now confirms that approval.[46] As discussed above, the plaintiff is similarly situated to other collective members.

### 3. Approval of Settlement

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *In re Hyundai*, 926 F.3d at 556. A court may approve a proposed class-action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiff's fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1026–27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: "[(1)] the strength of the plaintiff's case; [(2)] the risk, expense, complexity, and likely duration of further litigation; [(3)] the risk of maintaining class-action

---

[46] Stipulation and Order – ECF No. 26; Order – ECF No. 134 at 9.

status throughout trial; [(4)] the amount offered in settlement; [(5)] the extent of discovery completed and the stage of the proceeding; [(6)] the experience and views of counsel; [(7)] the presence of a government participant; and [(8)] the reaction of the class members to the proposed settlement." *Id.* at 1026 (citation omitted).

When parties "negotiate a settlement agreement before the class has been certified, "settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Roes, 1–2 v. SFBSC Mgmt.,* 944 F.3d 1035, 1043 (9th Cir. 2019) (quoting *Dennis v. Kellogg*, 697 F.3d, 858, 864 (9th Cir. 2012)). "Specifically, 'such settlement agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Id*. at 1049 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011)).

The court has evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that it is free of collusion and approval is appropriate. Overall, and with the court's adjustment of fees (discussed below), the settlement appears fair. The settlement agreement was the result of an adversarial, non-collusive, and arms-length negotiation process. It provides good value, given the risks of litigation, the parties' disputes about damages, and the value of money to the plaintiffs now.[47] As discussed above, counsel reached the settlement only after obtaining discovery sufficient to allow a robust damages assessment. (The damages analysis is set forth in the Statement). The settlement ensures that longer-tenured employees receive a greater recovery, and it tracks differences in substantive aw and penalty claims by weighting the workweek shares more heavily for work performed in California.[48] Also, off-the-clock claims can be difficult to certify because they can involve individualized determinations. *In re AutoZone, Inc., Wage & Hours Emp't. Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), *aff'd*, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019). The pandemic — and the defendant's resulting

---

[47] Cottrell Decl. – ECF No. 129-1 at 25 (¶¶ 94–96).

[48] *Id*. at 22 (¶ 79).

financial condition — also complicated settlement and required an adjustment to the gross settlement amount. The funds were put into an escrow account, thereby preserving the class's access to them.[49] These pandemic-related facts also support the fairness of the settlement.

For the same reasons, the court approves the settlement of the FLSA collective action.

The PAGA allocation is within the range of reasonable settlements. *See, e.g.*, *Viceral v. Mistras Grp.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *8–9 (N.D. Cal. Oct. 11, 2016).

### 4. Class Representative, Class Counsel, and Claims Administrator

The court previously appointed Angel Villafan as the collective and class representative. She has claims that are typical of the members of the class generally, and she is an adequate representative of the class members. It also appointed Schneider Wallace Cottrell Konecky LLP as class counsel for settlement purposes only. *See* Fed. R. Civ. P. 23(a) & (g)(1). They have the requisite qualifications, experience, and expertise in prosecuting class actions.

The court approves JND's costs of $30,130, which will be paid out of the Gross Wage Settlement Amount.[50]

### 5. Class Notice

The class administrator provided notice to the members of the class in the form that the court approved previously. The notice met the legal prerequisites: it was the best notice practicable, satisfied the notice requirements of Rule 23, adequately advised class members of their rights under the settlement agreement, met the requirements of due process, and complied with the court's order regarding court notice. The form of notice fairly, plainly, accurately, and reasonably provided class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the

---

[49] *Id.* at 21–22 (¶ 78).
[50] *Id.* at 17 (¶ 54).

release of the claims; (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) the date and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards.[51]

### 6. CAFA Notices

Notice of the settlement showing compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, was provided to the appropriate federal and state officials on January 8, 2021.[52] The court's final approval hearing is more than 90 days after service as required by 28 U.S.C. § 1715(d). The necessary PAGA notices have been provided.

### 7. Service Awards

The settlement proposes a service award to Ms. Villafan of $15,000. The court approves $10,000, double the presumptive award of $5,000.

District courts must evaluate proposed awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (citation omitted). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citation omitted). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice . . . ." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). District courts "must be vigilant in scrutinizing all

---

[51] Class Notice, Ex. A to Keough Decl. – ECF No. 138-2 at 8–15.
[52] Cottrell Decl. – ECF No. 138-1 at 11–12 (¶ 25).

incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164. In this district, a $5,000 incentive award is presumptively reasonable. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases).

Ms. Villafan spent over 200 hours working on the case, helping to achieve recoveries for the class and incurring a reputational risk.[53] Under the circumstances, $10,000 (twice the presumptive $5,000) is justified. *See, e.g., Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7–8 (N.D. Cal. Feb. 6, 2012) (awarding $12,500 where the plaintiff spent "more than 100 hours on this case (which included being deposed twice)" and the defendant "pursued disclosure of her private information"); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. at 326, 335–36 (N.D. Cal. 2014) (awarding $10,000 where the plaintiff was deposed, attended a four-day mediation (which required her to travel and miss work), and spent "more than 200 hours assisting in the case"); *Bellinghausen.*, 306 F.R.D. at 267–68 (awarding $15,000 where the plaintiff spent 73 hours on the case, attended mediation, and was rejected by potential employers because of his status as class representative); *Bolton v. U.S. Nursing Corp.*, No. 12-cv-4466-LB, 2013 WL 5700403, at *6 (N.D. Cal. Oct. 18, 2013) (approving $10,000 in incentive award where the average recovery is $595.91 but "the largest settlement recovery is estimated to be $4,602.67, and 204 class members will receive more than $1,500").

### 8. Attorney's Fees and Costs

The plaintiff's counsel asks for $1,666,666.66 in attorney's fees (one-third of the settlement fund) and $26,670.10 in costs.[54] The court awards both.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

---

[53] Villafan Decl. – ECF No. 139-2 at 3 (¶¶ 10–12), 4–5 (¶¶ 20–25).
[54] Mot. – ECF No. 139 at 2.

Fee provisions in class-action settlements must be reasonable. *In re Bluetooth.*, 654 F.3d at 941. The court is not bound by the parties' settlement agreement as to the amount of fees. *Id.* at 942–43. The court must review fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (cleaned up).

When counsel recovers a common fund that confers a "substantial benefit" on a class of beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002). In common-fund cases, courts may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *Id.*; *Hanlon*, 150 F.3d at 1029.

Where the settlement involves a common fund, courts typically award attorney's fees based on a percentage of the settlement fund. The Ninth Circuit has established a "benchmark" that fees should equal 25 percent of the settlement, although courts diverge from the benchmark based on factors that include "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco, Inc.*, No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, at *2 (E.D. Cal. Mar. 25, 2013); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33-percent fee award); *In re Pac. Enter. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995).

Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed. *Young v. Polo Retail, LLC*, No. C-02-4547-VRW, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) ("district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount being made available) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)).

If the court applies the percentage method, it then typically calculates the lodestar as a "cross-check to assess the reasonableness of the percentage award." *See, e.g.*, *Weeks v. Kellogg Co.*, No.

CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters., Inc.*, 111 Cal. App. 3d 215, 226–27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id.*; *accord Laffitte v. Robart Half Internet, Inc.*, 1 Cal. 5th 480, 503–06 (2016) (holding, under California law, that "the percentage method to calculate [attorney's] fee in a common fund case" is appropriate and the trial court has "discretion to conduct a lodestar cross-check on a percentage fee").

Based on counsel's submissions, the fee award is appropriate as a percentage of the common fund and is supported by a lodestar cross-check, given the results obtained, the lack of objections to the settlement, and the counsel's litigating the case on a contingency basis.[55] *Cf. e.g., Bellinghausen*, 306 F.R.D. at 259–65 (N.D. Cal. Mar. 20, 2015) (approving attorney's fees equal to the benchmark 25 percent of the common fund); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966-LB, 2013 WL 3988771, at *4–5 (N.D. Cal. Aug. 2, 2013) (awarding 33 percent of the settlement fund as attorney's fees "given the extensive litigation in the case[,] [] the successful results achieved[,]" and the contingency risk); *Villalpando v. Excel Direct Inc.*, Nos. 12-cv-04137-JCS, 13-cv-03091-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016) (awarded one-third of the settlement fund as reasonable attorney's fees because of "the contingent risk, [c]ounsel's documented lodestar, the complex and protracted nature of the case, and strong result for the case").

As to the lodestar cross-check, the billing rates are normal and customary (and thus reasonable) for lawyers of comparable experience doing similar work.[56] *Cuviello v. Feld Entm't, Inc.*, No. 13-cv-04951-BLF, 2015 WL 154197, at *2–3 (N.D. Cal. Jan. 12, 2015) ("court has broad discretion in

---

[55] Cottrell Decl. – ECF No. 139-1 at 2–8 (¶¶ 1–7).
[56] *Id.* at 13–14 (¶¶ 26–30).

setting the reasonable hourly rates used in the lodestar calculation") (citation omitted); *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001) (court can rely on its own experience); *accord Open Source Sec. v. Perens*, 803 F. App'x 73, 77 (9th Cir. 2020). Counsel provided billing records justifying the hours worked in the case and allowing a conclusion about the multiplier, which falls within the range of multipliers that courts approve. *Vizcaino*, 290 F.3d at 1051 n.6 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied").

The court awards the requested one-third of the common fund ($1,666,666.66) in fees. An upward adjustment of the benchmark is warranted in this case based on the results achieved, the small settlement fund, the contingent nature of the representation, and support from the lodestar cross-check. *Thieriot v. Celtic Ins. Co.*, No. C 10-04462-LB, 2011 WL 1522385, at *5–6 (N.D. Cal. April 21, 2011).

The court awards the reasonable out-of-pocket costs of $26,670.10. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Counsel has expended $26,670.10 in litigation cost to date, which is less than the $40,000 estimated by the Settlement Agreement.[57]

In sum, the court awards $1,666,666.66 in attorney's fees and $26,670.10 in costs.

### 9. Cy Pres Award

The court approves the cy pres award to Legal Aid at Work. It accounts for and has a nexus to the nature of the lawsuit, the objectives of the statute, and the interest of the silent class members. *Lane v. Facebook, Inc.*, 696 F.3d 811, 818–22 (9th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038–41 (9th Cir. 2011).

---

[57] *Id.* at 16 (¶¶ 41–43).

# CONCLUSION

The court (1) certifies the class and the FLSA collective for settlement purposes only, (2) approves the settlement and authorizes the distribution of funds set forth above, (3) confirms the appointments of the class representative, class counsel, and JND Legal Administration, (4) approves $1,666,666.66 in attorney's fees, $26,670.10 in costs, $30,130 for JND's administration costs, a $10,000 service award to the class representative, and the PAGA payment to the LWDA, and (5) orders the parties and JND to carry out their obligations in the settlement agreement.

The court approves the following implementation schedule (set forth in the motion):

| | |
|---|---|
| Effective Date | (i) If there are any objections to the settlement that are not subsequently withdrawn, then the date upon the expiration of time for appeal of the court's final approval order; or (ii) if there is a timely objection and appeal by an objector, then after such appeal is dismissed or the final approval order is affirmed on appeal; or (iii) if there are no timely objections to the settlement, or if any objections which were filed are withdrawn before the date of final approval, then the first business day after the court's order granting final approval of the settlement |
| Deadline for JND to calculate employer share of taxes and provide the defendants with total employer tax contributions | Within 5 business days after the final settlement award calculations are approved |
| Deadline for the defendants to deposit the amount of the defendants' payroll taxes into the Qualified Settlement Account | Within 7 business days after the settlement administrator provides the defendants with the amount of total employer tax contributions due |
| Deadline for JND to make payments under the settlement agreement to participating individuals, the LWDA, class representatives, class counsel, and itself | Within 30 days after the Effective Date or as soon as reasonably practicable |
| Check-cashing deadline | 180 days after issuance |
| Deadline for JND Legal Administration to tender uncashed check funds to cy pres recipient Legal Aid at Work or redistribute such uncashed funds to participating individuals who cashed their settlement checks | As soon as practicable after check-cashing deadline |
| Deadline for JND to provide written certification of completion of administration of the settlement to counsel for all parties and the court | As soon as practicable after redistribution of uncashed check funds to those class members who cashed their settlement checks or transfer to the cy pres recipient |

The court also orders that, pending further order of the court, all proceedings in the case are stayed, except for those actions contemplated in this order and in the settlement agreement.

The court will enter separate judgment in the form proposed by counsel in ECF No. 138-4. This disposes of ECF Nos. 138 and 139.

**IT IS SO ORDERED.**

Dated: April 8, 2021

LAUREL BEELER
United States Magistrate Judge